## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YUNFAN FAN, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>      v.<br><br>XIAO-I CORPORATION, HUI YUAN, WEI WENG, WENJING CHEN, XIAOMEI WU, JUN XU, ZHONG LIN, H. DAVID SHERMAN, GREGORY K. LEE, and GKL CORPORATE/SEARCH, INC.,<br><br>               Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Yunfan Fan ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Xiao-I Corporation ("Xiao-I" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Xiao-I American depository shares ("ADSs") pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about March 9, 2023 (the "IPO" or "Offering"); and/or (b) Xiao-I securities between March 9, 2023 and July 12, 2024, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Xiao-I, through its subsidiaries, operates as a global artificial intelligence ("AI") company.  The Company is incorporated in the Cayman Islands and headquartered in the People's Republic of China (the "PRC" or "China").  As a holding company with no material operations of its own, Xiao-I conducts most of its operations through its subsidiary Shanghai Xiao-I Robot Technology Co., Ltd. ("Shanghai Xiao-i"), which comprises the Company's AI business.

3.      According to Xiao-I, "Shanghai Xiao-i has become a leading [AI] company by building on its wide technology commercialization, brand recognition and culture of innovation in China."  Leading up to and following the IPO, Xiao-I consistently represented that Shanghai Xiao-i's purported industry-leading AI technologies and robust research and development ("R&D") resources distinguished the Company from its competitors.

4.      Under Xiao-I and its subsidiaries' organizational structure, the Company transfers cash and other assets between itself and Shanghai Xiao-i through various intermediaries.  The Company's ability to do so, however, is limited as a result of certain of its Chinese shareholders' non-compliance with applicable foreign exchange rules promulgated by China's State

Administration of Foreign Exchange ("SAFE"), particularly the "Circular on Issues Concerning Foreign Exchange Administration over the Overseas Investment and Financing and Roundtrip Investment by Domestic Residents via Special Purpose Vehicles" ("Circular 37"). Circular 37 imposes certain registration requirements on Chinese residents that contribute domestic assets or interests to offshore companies, known  special purpose vehicles ("SPVs"), as well as on foreign investment enterprises established by way of round-tripping ("Circular 37 Registration").

5.      On December 20, 2022, Xiao-I filed a registration statement on Form F-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on March 8, 2023 (the "Registration Statement").

6.      On or about March 9, 2023, Xiao-I conducted its IPO, issuing 5.7 million of its ADSs to the public at the Offering price of $6.80 per ADS for proceeds of over $36 million to the Company after applicable underwriting discounts and commissions, and before expenses.

7.      On March 13, 2023, Xiao-I filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

8.      In conjunction with the IPO, Xiao-I ADSs began publicly trading on the Nasdaq Stock Market ("NASDAQ"). Accordingly, Xiao-I is subject to the NASDAQ's listing requirements, including, *inter alia*, that its ADSs maintain a minimum closing bid price of  $1.00 per share (the "Minimum Bid Price Requirement"), as well as the U.S.'s Generally Accepted Accounting Principles ("GAAP"), which are a set of accounting rules, standards, and procedures that public companies trading in the U.S. must follow when preparing their financial statements.

9.      The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements

made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had downplayed the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with Circular 37 Registration, including the Company's inability to use Offering proceeds for intended business purposes; (ii) Xiao-I failed to comply with GAAP in preparing its financial statements; (iii) Defendants overstated Xiao-I's efforts to remediate material weaknesses in the Company's financial controls; (iv) Xiao-I was forced to incur significant R&D expenses to effectively compete in the AI industry; (v) Xiao-I downplayed the significant negative impact that such expenses would have on the Company's business and financial results; (vi) accordingly, Xiao-I overstated its AI capabilities, R&D resources, and overall ability to compete in the AI market; (vii) as a result of all the foregoing, there was a substantial likelihood that Xiao-I would fail to comply with the NASDAQ's Minimum Bid Price Requirement; and (viii) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

10.    On July 27, 2023, the SEC issued a letter to Xiao-I to address, *inter alia*, the Company's failure to comply with GAAP in preparing its financial statements in its 2022 annual report, as well as the need for more explicit disclosures in the report's risk factors section concerning certain of the Company's Chinese shareholders' non-compliance with Circular 37 Registration, particularly with respect to the Company's inability to use Offering proceeds for intended business purposes.

11.     On September 25, 2023, Xiao-I issued a press release announcing its unaudited, unreviewed financial results for the first half of 2023, including, *inter alia*, a net loss of $18.8 million for the first half of 2023, compared to a net income of $0.6 million for the same period of 2022.  In discussing these results, Xiao-I revealed that its "[t]otal operating expenses were US$34.1 million in the first half of 2023, representing an increase of ***355%*** year over year from US$7.5 million for the same period of 2022", noting that although "selling, general and administrative expenses demonstrated improved efficiency with larger business scales, they couldn't offset the increase in [R&D] expenses, which grew by ***708%*** year over year" (emphases added).

12.     On this news, Xiao-I's ADS price[1] fell $0.30 per ADS, or 14.22%, to close at $1.81 per ADS on September 25, 2023.

13.     On October 20, 2023, Xiao-I issued a press release announcing its unaudited, reviewed financial results for the first half of 2023.  Therein, the Company reiterated that it had suffered a net loss of $18.8 million and total operating expenses of $34.1 million for the first half of 2023, again citing Xiao-I's inability to "offset the increase in [R&D] expenses, which grew by 708% year over year," while further revealing that the increase in R&D "was primarily driven by the significantly [*sic*] increase of professional service fee[s], including the purchase of supercomputing service fees, data services, intelligent computing technology services and software outsourcing, etc. mainly from four third parties for the requirement of [a] big data model development project and other cloud platform products."  The Company further explained that, "[i]n November 2022, OpenAI launched the ChatGPT, which opened up a new situation of [AI]" and that, "[u]nder such background, the Company increased investment in AI+ Industrial Internet

---

[1] Xiao-I's historical closing ADS prices and their declines in value, as referenced herein, reflect their prices prior to a change that the Company effected in the ratio of its ADSs to its ordinary shares that had the same effect as a one-for-nine reverse ADS split, which took effect on August 23, 2024.

research and development, including the research and procurement of intelligent collaborative platform, digital twin platform, data intelligence platform, industrial enterprise services and research and judgment platform and other platform products."

14.      On this news, Xiao-I's ADS price fell $0.03 per ADS, or 1.79%, to close at $1.65 per ADS on October 20, 2023.

15.      On April 30, 2024, Xiao-I issued a press release announcing its unaudited full year ("FY") 2023 financial results, including, *inter alia*, FY 2023 revenues of $59.2 million, missing consensus estimates by $30.08 million, as well as a net loss of $27 million for FY 2023, compared to a net loss of $6 million for FY 2022.  In discussing these results, the Company revealed that its "[t]otal operating expenses were US$61.3 million in 2023, representing an increase of *80.7%* year over year from US$33.9 million for the same period of 2022", again noting that although "the selling, general, and administrative expenses demonstrated improved efficiency with larger business scales, they couldn't offset the increase in [R&D] expenses, which grew by *118.3%* year over year" (emphases added).

16.      On this news, Xiao-I's ADS price fell $0.08 per ADS, or 6.15%, to close at $1.22 per ADS on April 30, 2024.

17.      Then, on July 15, 2024, Xiao-I issued a press release announcing "that it received a notification letter dated July 11, 2024 (the 'Deficiency Letter') from the Listing Qualifications Department of [t]he [NASDAQ], indicating that the Company is no longer in compliance with the minimum bid price requirement as set forth in Nasdaq Listing Rule 5450(a)(1) as the Company's closing bid price per [ADS] . . . has been below $1.00 for a period of 30 consecutive business days."

18.    On this news, Xiao-I's ADS price fell 2.28% to close at approximately $0.67 per ADS on July 15, 2024.

19.    As of the time this Complaint was filed, the price of Xiao-I ADSs continues to trade below the $6.80 per share Offering price, damaging investors.

20.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

21.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77o), as well as Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

22.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Xiao-I ADSs trade on the NASDAQ, which is located in this District.

24.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

25.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Xiao-I ADSs pursuant and/or traceable to the Offering Documents issued in connection with the IPO and/or Xiao-I securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

26.     Defendant Xiao-I is incorporated in the Cayman Islands with principal executive offices located at 5/F, Building 2, No. 2570, Hechuan Road, Minhang District, Shanghai, China 201101.  The Company's ADSs trade in an efficient market on the NASDAQ under the ticker symbol "AIXI."

27.     Defendant Hui Yuan ("Yuan") has served as Xiao-I's Chairman of the Board of Directors (the "Board") and Chief Executive Officer at all relevant times.  Defendant Yuan signed or authorized the signing of the Registration Statement filed with the SEC.

28.     Defendant Wei Weng ("Weng") has served as Xiao-I's Chief Financial Officer at all relevant times.  Defendant Weng signed or authorized the signing of the Registration Statement filed with the SEC.

29.     Defendants Yuan and Weng are collectively referred to herein as the "Exchange Act Individual Defendants."

30.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Xiao-I's SEC filings, press releases, and other market communications. The Exchange Act Individual Defendants were provided with copies of Xiao-I's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their

positions with Xiao-I, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

31.     Xiao-I and the Exchange Act Individual Defendants are collectively referred to herein as the "Exchange Act Defendants."

32.     Defendant Wenjing Chen ("Chen") has served as a Director on Xiao-I's Board at all relevant times. Defendant Chen signed or authorized the signing of the Registration Statement filed with the SEC.

33.     Defendant Xiaomei Wu ("Wu") was named as a Director-nominee of Xiao-I at the time of the IPO. Defendant Wu signed or authorized the signing of a written consent, filed with the Registration Statement pursuant to the SEC's Rule 438 promulgated under the Securities Act (17 CFR § 230.438) ("Rule 438"), to be named as a Director-nominee in the Registration Statement.

34.     Defendant Jun Xu ("Xu") was named as a Director-nominee of Xiao-I at the time of the IPO. Defendant Xu signed or authorized the signing of a written consent, filed with the Registration Statement pursuant to Rule 438, to be named as a Director-nominee in the Registration Statement.

35.     Defendant Zhong Lin ("Lin") was named as a Director-nominee of Xiao-I at the time of the IPO. Defendant Lin signed or authorized the signing of a written consent, filed with the Registration Statement pursuant to Rule 438, to be named as a Director-nominee in the Registration Statement.

36.     Defendant H. David Sherman ("Sherman") was named as a Director-nominee of Xiao-I at the time of the IPO.  Defendant Sherman signed or authorized the signing of a written consent, filed with the Registration Statement pursuant to Rule 438, to be named as a Director-nominee in the Registration Statement.

37.     Defendant Gregory K. Lee ("Lee") was, at the time of the IPO, Xiao-I's duly authorized U.S. representative.  Defendant Lee signed or authorized the signing of the Registration Statement filed with the SEC on his own behalf and on behalf of GKL Corporate/Search, Inc. ("GKL"), Defendant Lee's employer.

38.     Defendant GKL was Xiao-I's authorized U.S. representative for purposes of the IPO.  Defendant Lee, who signed the Registration Statement, was an employee of Defendant GKL. As a result, Defendant GKL is liable for the securities law violations committed by Defendant Lee in its capacity as employer and as a control person under the Securities Act.

39.     The Exchange Act Individual Defendants and Defendants Chen, Wu, Xu, Lin, Sherman, and Lee are collectively referred to herein as the "Securities Act Individual Defendants."

40.     As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Xiao-I ADSs in the IPO for their own benefit and the benefit of the Company.  The Securities Act Individual Defendants were key members of the IPO working group and executives of the Company who pitched investors to purchase the shares sold in the IPO.

41.     Xiao-I, GKL, and the Securities Act Individual Defendants are collectively referred to herein as the "Securities Act Defendants."

42.     The Exchange Act and Securities Act Defendants are sometimes, in whole or in part, collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

43.     Xiao-I, through its subsidiaries, operates as a global AI company.  The Company is incorporated in the Cayman Islands and headquartered in China.  As a holding company with no material operations of its own, Xiao-I conducts most of its operations through its subsidiary Shanghai Xiao-i, a variable interest entity ("VIE") in China that comprises the Company's AI business.

44.     According to Xiao-I, "Shanghai Xiao-i has become a leading [AI] company by building on its wide technology commercialization, brand recognition and culture of innovation in China."  Leading up to and following the IPO, Xiao-I consistently represented that Shanghai Xiao-i's purported industry-leading AI technologies and robust R&D resources distinguished the Company from its competitors.

45.     Xiao-I has the full and exclusive right to manage and direct all cash flow and assets of Shanghai Xiao-i and to direct and administrate its financial affairs and daily operation.  This is accomplished via a series of contractual arrangements between another of the Company's subsidiaries, Zhizhen Artificial Intelligent Technology (Shanghai) Co. Ltd. ("WFOE"), a wholly foreign-owned enterprise and limited liability company, and Shanghai Xiao-i and its subsidiaries.

46.     Xiao-I's ability to transfer cash and other assets, including IPO proceeds, between itself, WFOE, and Shanghai Xiao-i is limited by applicable Chinese foreign exchange laws and regulations.  One such regulation, Circular 37, imposes certain registration requirements on Chinese residents that contribute domestic assets or interests to offshore companies, known  SPVs, as well as on foreign investment enterprises established by way of round-tripping.  Prior to and following the IPO, certain of Xiao-I's shareholders that were Chinese residents failed to comply

with Circular 37 Registration, thereby subjecting the Company to potential restrictions on its and/or its subsidiaries' foreign exchange activities.

47. On December 20, 2022, Xiao-I filed the Registration Statement on Form F-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on March 8, 2023.

48. On or about March 9, 2023, Xiao-I conducted its IPO, issuing 5.7 million of its ADSs to the public at the Offering price of $6.80 per ADS for proceeds of over $36 million to the Company after applicable underwriting discounts and commissions, and before expenses.

49. On March 13, 2023, Xiao-I filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

50. In conjunction with the IPO, Xiao-I ADSs began publicly trading on the NASDAQ. Accordingly, Xiao-I is subject to the NASDAQ's listing requirements, including, *inter alia*, the Minimum Bid Price Requirement, as well as GAAP accounting rules, standard, and procedures.

**Materially False and Misleading Statements Issued in the Offering Documents**

51. The Offering Documents purported to warn of risks that "may" occur because of certain of Xiao-I's shareholders' non-compliance with Circular 37 Registration, while simultaneously downplaying the same, stating, in relevant part:

> ***Some of our shareholders are not in compliance with the PRC's regulations relating to offshore investment activities by PRC residents, and as a result, the shareholders may be subject to penalties if we are not able to remediate the non-compliance.***
>
> * * *
>
> Some of our beneficial owners, who are PRC residents, have not completed the Circular 37 Registration . . . . The Chinese resident shareholders' failure to comply with Circular 37 registration ***may*** result in restrictions being imposed on part of foreign exchange activities of . . . offshore [SPVs], including restrictions on its ability to receive registered capital as well as additional capital from Chinese

> resident shareholders who fail to complete Circular 37 registration . . . . In addition, the failure of the Chinese resident shareholders to complete Circular 37 registration may subject each of the shareholders to fines less than RMB50,000. We cannot assure you that each of our Chinese resident shareholders will in the future complete the registration process as required by Circular 37.

(First emphasis in original.)  Plainly, the foregoing risk warning was a generic catch-all provision that was not tailored to Xiao-I's actual known risks regarding certain of its Chinese shareholders' non-compliance with Circular 37 Registration, much less that such non-compliance could prevent the Company from using the Offering proceeds for intended business purposes.

52.    With further regard to these Chinese Xiao-I shareholders' non-compliance with Circular 37 Registration, the Offering Documents stated, *inter alia*:

> If our shareholders who are PRC residents or entities do not complete their registration with the local SAFE branches, our PRC subsidiary may be prohibited from distributing its profits and proceeds from any reduction in capital, share transfer or liquidation to us, and we may be restricted in our ability to contribute additional capital to our PRC subsidiary. Moreover, failure to comply with the SAFE registration described above could result in liability under PRC laws for evasion of applicable foreign exchange restrictions.

53.    With respect to Xiao-I's purported efforts to remediate material weaknesses in its financial controls, the Offering Documents stated, in relevant part:

> We are working to remediate . . . material weaknesses [in our financial controls] and are taking steps to strengthen our internal control. Specifically, we are working to develop and implement a staffing plan for hiring additional accounting and finance personnel in 2023, hire additional qualified resources with appropriate knowledge and expertise to handle complex accounting issues and effectively prepare financial statements and conduct regular and continuous GAAP accounting and financial reporting training programs for our financial reporting and accounting personnel . . . . We plan to adopt measures to improve our internal file management procedures and an effective recognition procedure by (i) establishing internal document management policies and systems, (ii) continuing our efforts to implement necessary review and controls at relevant levels and all important documents and contracts will be submitted to the office of our chief administrative officers for retention and review, and (iii) establishing standard procedures to recognize revenue and costs based on the contracts service periods.

54.    Notwithstanding material weaknesses in Xiao-I's financial controls, the Offering Documents contained various representations regarding Xiao-I's compliance with GAAP in preparing the Company's financial statements, stating, *inter alia*, that "[o]ur consolidated financial statements are prepared and presented in accordance with [GAAP]" and that "Xiao-I treats the PRC entities as its consolidated affiliated entities under U.S. GAAP, and have consolidated the financial results of these entities in Xiao-I's consolidated financial statements in accordance with U.S. GAAP."

55.    The Offering Documents also touted that, through Shanghai Xiao-i, the Company had differentiated AI capabilities and robust R&D resources that enabled it to not only compete in, but "lead[]," the AI industry.   For example, in discussing Shanghai Xiao-i's purported "competitive advantages" that "distinguish Shanghai Xiao-i from its competitors," the Offering Documents stated, *inter alia*:

[Shanghai Xiao-i's] Pioneer Position in AI Technology and Focus on [R&D:]

- It believes that it pioneered the industry's first cognitive intelligence and narrow [AI] technology and have built on its culture of innovation.

- Since its establishment in 2001, Shanghai Xiao-i has focused on developing cognitive intelligence technologies based on its natural language processing and "AI" implementation in businesses, enjoying a privileged reputation in the "AI" industry. As a leading AI technology and industrialization service platform in China, through years of operation, it has established cooperation with many leading companies amongst various industry verticals according to Frost & Sullivan. Its industry leadership is built on its pioneering research to commercialize AI technology.

- Its first-mover advantage in natural language processing has made it a pioneer in formulating AI industry standards and creating more than 500 patents granted or pending . . . .

- Shanghai Xiao-i is a pioneer in AI + with over 20 years of development and innovation with 4 R&D centers, 280+ engineers, 50+ external experts, and 10+ university partners.

56.    With further respect to Shanghai Xiao-i's AI capabilities and robust R&D resources, the Offering Documents stated, *inter alia*:

> For more than 20 years, Shanghai Xiao-i has applied its aggregation platform to form a number of mature application fields designed to address the business needs of various fields, including (1) AI + Contact Center, (2) AI + Finance, (3) AI + Urban Public Service, (4) AI + Construction, (5) AI + Metaverse, (6) AI + Manufacturing and (7) AI + Smart Healthcare.

> Its technologies are based, in significant part, upon its proprietary intellectual property portfolio. As of December 1, 2022, Shanghai Xiao-i has applied for 554 patents, 281 of which have been granted and it has obtained 225 registered trademarks and 130 computer software copyrights . . . . It continues to develop and improve its intellectual property portfolio through its in-depth [R&D] department. As of December 1, 2022, it has 277 R&D personnel, accounting for about 62.5% of its personnel, including 189 with Bachelor's degrees, 23 with Master's degrees and 5 with Doctorates.

57.    The statements referenced in ¶¶ 51-56 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) Defendants had downplayed the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with Circular 37 Registration, including the Company's inability to use Offering proceeds for intended business purposes; (ii) Xiao-I failed to comply with GAAP in preparing its financial statements; (iii) Defendants overstated Xiao-I's efforts to remediate material weaknesses in the Company's financial controls; (iv) Xiao-I was forced to incur significant R&D expenses to effectively compete in the AI industry; (v) Xiao-I downplayed the significant negative impact that such expenses would have on the Company's business and financial results; (vi) accordingly, Xiao-I overstated its AI capabilities, R&D resources, and overall ability to compete in the AI market; (vii) as a result of all the foregoing,

there was a substantial likelihood that Xiao-I would fail to comply with the NASDAQ's Minimum Bid Price Requirement; and (viii) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

**Materially False and Misleading Statements Issued During the Class Period**

58.    The Class Period begins on March 9, 2023, when Xiao-I's ADSs began publicly trading on the NASDAQ pursuant to the materially false and misleading statements or omissions contained in the Offering Documents, as referenced in ¶¶ 51-56, *supra*.

59.    On April 24, 2023, Xiao-I issued a press release announcing that it had entered into a strategic partnership with Guizhou Chinadatapay Network Technology Co., Ltd. ("Chinadatapay") "to fuel Xiao-I's growth as a global leader in cognitive intelligence by combining Xiao-I's cognitive intelligence capabilities and Chinadatapay's big data expertise" (the "April 24 Press Release").  The April 24 Press Release stated, in relevant part:

> This partnership aims for Xiao-I and Chinadatapay to demonstrate the power of integrating massive data sets with state-of-the-art algorithms and accelerate the advancement of industry-specific, big data-based large-scale models through intelligent data analysis, model training, and application development enabled by Xiao-I's cognitive intelligence technology and Chinadatapay's extensive data resources.
>
> Chinadatapay, a leader in China's domestic data industry, provides consistently innovative data security solutions and has connected data from across over 50 industries and enterprises with nearly 300 successful deployments. With the support of Chinadatapay's big data capabilities, Xiao-I aims to further expand its technology leadership and broaden its market applications.

60.    The April 24 Press Release also quoted Defendant Yuan as stating, in relevant part, that "[a]s we have already established a strong track record in implementing AI-powered solutions across multiple sectors including finance, government, healthcare, education, and transportation, we now look ahead to having this partnership empower us in driving digital transformation across

numerous industries and fortifying our position as a leader in the global cognitive intelligence

market by leveraging cognitive intelligence technology and big data."

61.    On April 26, 2023, Xiao-I issued a press release announcing its unaudited FY 2022

financial results, which quoted Defendant Yuan as stating, in relevant part:

> We achieved significant progress by making record investments in AI technology
> R&D, improving our product and service capabilities, expanding our partnership
> ecosystem, and continuing our strong momentum. As we enter 2023, we are
> experiencing tailwinds from increased demand for our products and services due to
> macroeconomic recovery and greater recognition and interest in robotics and AI
> technology. We are confident that our advanced AI technology and commitment to
> our mission and strategies will enable us to meet the diverse user needs across
> broader industry verticals and capture *sustainable* growth in this expansive market.

(Emphasis added.)

62.    On April 28, 2023, Xiao-I filed an annual report on Form 20-F with the SEC,

reporting the Company's financial and operating results for the quarter and year ended December

31, 2022 (the "2022 20-F").  The 2022 20-F contained substantively the same statements as

referenced in ¶¶ 55-56, *supra*, regarding Xiao-I's AI capabilities and ability to effectively compete

in the AI market, as well as the Company's robust R&D resources, while adding that, "[a]s of

March 31, 2023, we have 214 R&D personnel, accounting for about 60.8% of our personnel,

including 143 with bachelor's degrees, 17 with master's degrees and 7 with doctorates."

63.    In addition, the 2022 20-F purported to warn of risks that "*may*" occur "*if*" the

Company "fail[s] to meet the continued listing requirements of Nasdaq[, which] *could* result in a

delisting of the [Company's] ADSs," while simultaneously downplaying the same, stating, in

relevant part:

> *If*, after listing, we fail to satisfy the continued listing requirements of Nasdaq, such
> as [*inter alia*] . . . the minimum closing bid price requirement, Nasdaq *may* take
> steps to delist the ADSs. Such a delisting would likely have a negative effect on the
> price of the ADSs and would impair your ability to sell or purchase the ADSs when
> you wish to do so.

(Emphases added.)  Plainly, the foregoing risk warning was a generic catch-all provision that was not tailored to Xiao-I's actual known risks regarding the substantial likelihood that the Company would become non-compliant with the NASDAQ's Minimum Bid Price Requirement.

64.    Appended as exhibits to the 2022 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Exchange Act Individual Defendants certified that the 2022 20-F "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report"; and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report[.]"

65.    The statements referenced in ¶¶ 55-56 and 59-64 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Xiao-I was forced to incur significant R&D expenses to effectively compete in the AI industry; (ii) Xiao-I downplayed the significant negative impact that such expenses would have on the Company's business and financial results; (iii) accordingly, Xiao-I overstated its AI capabilities, R&D resources, and overall ability to compete in the AI market; (iv) as a result of all the foregoing, there was a substantial likelihood that Xiao-I would fail to comply with the NASDAQ's Minimum Bid Price Requirement; and (v) as a result, Xiao-I's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

66.     On July 27, 2023, the SEC issued a letter to Xiao-I regarding the 2022 20-F (the "SEC Letter").  The SEC Letter took issue with, *inter alia*, the Company's failure to comply with GAAP in preparing its financial statements, as well as the need for more explicit disclosures in the 2022 20-F's risk factors section concerning certain of Xiao-I's Chinese shareholders' non-compliance with Circular 37 Registration, particularly with respect to the Company's inability to use Offering proceeds for intended business purposes, stating, in relevant part:

> We note your disclosure [in the 2022 20-F] that the WFOE is unable to open a new capital account with banks within China, and currently, you are unable to use most of the IPO proceeds for product development and company operations because you are unable to transfer the funds from Xiao-I Corporation to the WFOE and then to [Shanghai Xiao-i]. Previously, in your [Registration Statement], the heading for this risk factor indicated that as a result of non-compliance, the shareholders may be subject to penalties. Further, the description of the risks may imply that restrictions on foreign exchange activities and ability to receive registered capital are limited to interactions between the WFOE and the shareholders that failed to complete Circular 37 registration. ***Please revise this risk factor and throughout your filing to clarify the risks and potential impact to the company and the PRC operating entities as a result of PRC resident shareholders that do not comply with Circular 37 registration, including explicit discussion of the potential inability to use offering proceeds for business development and operations as intended.***
>
> * * *
>
> You disclose that you intend to use the net offering proceeds from [the IPO] for research and development, investment in technology infrastructure, marketing and branding, and other capital expenditure, and other general corporate purpose. ***Please revise [this disclosure] to prominently disclose that you are currently unable to use most of the IPO proceeds for the intended product development and company operations because you are unable to transfer the funds from Xiao-I Corporation to the WFOE and then to [Shanghai Xiao-i].***
>
> * * *
>
> ***Please revise to state separately the cost of products sold and cost of services for the periods presented.*** Refer to Rule 5-03(b)(2) of Regulation S-X.

(Emphases added.)

67.    On September 25, 2023, during pre-market hours, Xiao-I issued a press release announcing its unaudited and unreviewed financial results for the first half of 2023 (the "Preliminary 1H23 Earnings Release"). Therein, the Company reported a net loss of $18.8 million for the first half of 2023, compared to a net income of $0.6 million for the same period of 2022. In discussing these results, Xiao-I revealed that its "[t]otal operating expenses were US$34.1 million in the first half of 2023, representing an increase of ***355%*** year over year from US$7.5 million for the same period of 2022", noting that although "selling, general and administrative expenses demonstrated improved efficiency with larger business scales, they couldn't offset the increase in [R&D] expenses, which grew by ***708%*** year over year" (emphases added).

68.    On this news, Xiao-I's ADS price fell $0.30 per ADS, or 14.22%, to close at $1.81 per ADS on September 25, 2023. Despite this decline in Xiao-I's ADS price, the Company's securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of the Exchange Act Defendants' continued misstatements and omissions regarding, *inter alia*, Xiao-I's R&D resources and expenses and ability to effectively compete in the AI market, as well as the significant negative impact that the foregoing was likely to have on the Company's business, financial results, and, accordingly, its ability to comply with the NASDAQ's Minimum Bid Price Requirement.

69.    For example, the Preliminary 1H23 Earnings Release quoted Defendant Yuan as stating, in relevant part:

Our results speak volumes, as we achieved an outstanding 106% increase in net revenues during the first half of this year, reaching a record-breaking $26.5 million. This remarkable performance ***underscores the value of our continuous investments in cutting-edge AI technology*** that are effectively aligned with the growing digital transformation demands of various businesses.[]

[]***Our commitment to innovation is exemplified by our unparalleled R&D investment in the first half of 2023, which surpasses our entire investment for the***

*previous year.* More importantly, we have significantly expanded our product and service portfolio with the introduction of our *distinguished* large language model, Hua Zang. This *innovative* offering is expected to be seamlessly applied across a wide array of industries swiftly *with cost-efficiency*, opening up new horizons for our clients. In addition to our product innovations, we have also made substantial strides in our global expansion. This includes the establishment of a U.S. subsidiary and active participation in a local exhibition. These concerted efforts *place us in a good position to lead the global AI industry* into a future full of immense opportunities and transformative solutions to drive our continued growth.

(Emphases added.)

70.    The statements referenced in ¶ 69 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Xiao-I was forced to incur significant R&D expenses to effectively compete in the AI industry; (ii) Xiao-I downplayed the significant negative impact that such expenses would have on the Company's business and financial results; (iii) accordingly, Xiao-I overstated its AI capabilities, R&D resources, and overall ability to compete in the AI market; (iv) as a result of all the foregoing, there was a substantial likelihood that Xiao-I would fail to comply with the NASDAQ's Minimum Bid Price Requirement; and (v) as a result, Xiao-I's public statements were materially false and misleading at all relevant times.

71.    On October 20, 2023, during pre-market hours, Xiao-I issued a press release announcing its unaudited financial results for the first half of 2023 (the "Updated 1H23 Earnings Release"). Therein, the Company reiterated that it suffered a net loss of $18.8 million and total operating expenses of $34.1 million for the first half of 2023, again citing Xiao-I's inability to "offset the increase in [R&D] expenses, which grew by 708% year over year," while further revealing that the increase in R&D "was primarily driven by the significantly [*sic*] increase of

professional service fee[s], including the purchase of supercomputing service fees, data services, intelligent computing technology services and software outsourcing, etc. mainly from four third parties for the requirement of [a] big data model development project and other cloud platform products."  The Company further explained that, "[i]n November 2022, OpenAI launched the ChatGPT, which opened up a new situation of [AI]" and that, "[u]nder such background, the Company increased investment in AI+ Industrial Internet research and development, including the research and procurement of intelligent collaborative platform, digital twin platform, data intelligence platform, industrial enterprise services and research and judgment platform and other platform products."

72.    On this news, Xiao-I's ADS price fell $0.03 per ADS, or 1.79%, to close at $1.65 per ADS on October 20, 2023.  Despite this decline in Xiao-I's ADS price, the Company's securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of the Exchange Act Defendants' continued misstatements and omissions regarding, *inter alia*, Xiao-I's R&D resources and expenses and ability to effectively compete in the AI market, as well as the significant negative impact that the foregoing was likely to have on the Company's business, financial results, and, accordingly, its ability to comply with the NASDAQ's Minimum Bid Price Requirement.

73.    For example, the Updated 1H23 Earnings Release contained the same statements made by Defendant Yuan in the Preliminary 1H23 Earnings Release, as referenced in ¶ 69, *supra*, regarding, *inter alia*, the purported "value of [Xiao-I's] continuous investments in cutting-edge AI technology," "unparalleled R&D investment in the first half of 2023," and "good position to lead the global AI industry."

74.    The statements referenced in ¶ 73 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Xiao-I was forced to incur significant R&D expenses to effectively compete in the AI industry; (ii) Xiao-I downplayed the significant negative impact that such expenses would have on the Company's business and financial results; (iii) accordingly, Xiao-I overstated its AI capabilities, R&D resources, and overall ability to compete in the AI market; (iv) as a result of all the foregoing, there was a substantial likelihood that Xiao-I would fail to comply with the NASDAQ's Minimum Bid Price Requirement; and (v) as a result, Xiao-I's public statements were materially false and misleading at all relevant times.

75.    On April 30, 2024, during pre-market hours, Xiao-I issued a press release announcing its unaudited FY 2023 financial results (the "FY23 Earnings Release").  Therein, the Company reported FY 2023 revenues of $59.2 million, missing consensus estimates by $30.08 million, as well as a net loss of $27 million for FY 2023, compared to a net loss of $6 million for FY 2022.  In discussing these results, the Company revealed that its "[t]otal operating expenses were US$61.3 million in 2023, representing an increase of *80.7%* year over year from US$33.9 million for the same period of 2022", noting that although "the selling, general, and administrative expenses demonstrated improved efficiency with larger business scales, they couldn't offset the increase in [R&D] expenses, which grew by *118.3%* year over year" (emphases added).

76.    On this news, Xiao-I's ADS price fell $0.08 per ADS, or 6.15%, to close at $1.22 per ADS on April 30, 2024.  Despite this decline in Xiao-I's ADS price, the Company's securities continued trading at artificially inflated prices throughout the remainder of the Class Period

because of the Exchange Act Defendants' continued misstatements and omissions regarding, *inter alia*, Xiao-I's ability to comply with the NASDAQ's Minimum Bid Price Requirement.

77.    For example, on April 30, 2024, Xiao-I filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2023 (the "2023 20-F"). The 2023 20-F contained the same statements as referenced in ¶ 63, *supra*, purporting to warn of risks that "may" occur "if" the Company failed to comply with the NASDAQ's Minimum Bid Price Requirement, while simultaneously downplaying the same.

78.    Appended as exhibits to the 2023 20-F were substantively the same SOX certifications as referenced in ¶ 64, *supra*, signed by the Exchange Act Individual Defendants.

79.    The statements referenced in ¶¶ 77-78 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) there was a substantial likelihood that the Company would fail to comply with the NASDAQ's Minimum Bid Price Requirement for a sustained period; and (ii) as a result, Xiao-I's public statements were materially false and misleading at all relevant times.

### The Truth Fully Emerges

80.    On July 15, 2024, during pre-market hours, Xiao-I issued a press release announcing "that it received a notification letter dated July 11, 2024 (the 'Deficiency Letter') from the Listing Qualifications Department of [t]he [NASDAQ], indicating that the Company is no longer in compliance with the minimum bid price requirement as set forth in Nasdaq Listing Rule

5450(a)(1) as the Company's closing bid price per [ADS] . . . has been below $1.00 for a period of 30 consecutive business days."

81.    On this news, Xiao-I's ADS price fell 2.28% to close at approximately $0.67 per ADS on July 15, 2024.

82.    As of the time this Complaint was filed, the price of Xiao-I ADSs continues to trade below the $6.80 per share Offering price, damaging investors.

83.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Regulation S-K Items 105 and 303**

84.    Throughout the Class Period, Xiao-I's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations. Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Xiao-I to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered." Defendants' failures to disclose the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with Circular 37 Registration, Xiao-I's failure to comply with GAAP, that Defendants had overstated Xiao-I's efforts to remediate material weaknesses in its financial controls, that Xiao-I was forced to incur significant R&D expenses to effectively compete in the AI industry, the significant negative impact that such expenses would have on the Company's business and financial results, the true state of Xiao-I's AI capabilities, R&D resources, and overall ability to compete in the AI market, and the substantial likelihood that Xiao-

I would fail to comply with the NASDAQ's Minimum Bid Price Requirement violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

85.    For similar reasons, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required the Company to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Defendants' failures to disclose the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with Circular 37 Registration, Xiao-I's failure to comply with GAAP, that Defendants had overstated Xiao-I's efforts to remediate material weaknesses in its financial controls, that Xiao-I was forced to incur significant R&D expenses to effectively compete in the AI industry, the significant negative impact that such expenses would have on the Company's business and financial results, the true state of Xiao-I's AI capabilities, R&D resources, and overall ability to compete in the AI market, and the substantial likelihood that Xiao-I would fail to comply with the NASDAQ's Minimum Bid Price Requirement violated Item 303 because these issues represented known trends and uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

## SCIENTER ALLEGATIONS

86.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in

a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

87.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Xiao-I ADSs pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Xiao-I securities during the Class Period; and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

88.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Xiao-I securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Xiao-I or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

89.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

90.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

91.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Xiao-I;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Xiao-I to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Xiao-I securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

92.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

93.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Xiao-I securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Xiao-I securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

94.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

95.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

96.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

97.    This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

98.    During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Xiao-I securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Xiao-I securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

99.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Xiao-I securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Xiao-I's finances and business prospects.

100.     By virtue of their positions at Xiao-I, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

101.     Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of Xiao-I, the Exchange Act Individual Defendants had knowledge of the details of Xiao-I's internal affairs.

102.     The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Xiao-I.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Xiao-I's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Xiao-I securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Xiao-I's business and financial condition

which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Xiao-I securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

103.    During the Class Period, Xiao-I securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Xiao-I securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Xiao-I securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Xiao-I securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

104.    By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

105.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period,

upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

106.   Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

107.   During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Xiao-I, and conducted and participated, directly and indirectly, in the conduct of Xiao-I's business affairs.  Because of their senior positions, they knew the adverse non-public information about Xiao-I's misstatement of income and expenses and false financial statements.

108.   As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Xiao-I's financial condition and results of operations, and to correct promptly any public statements issued by Xiao-I which had become materially false or misleading.

109.   Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Xiao-I disseminated in the marketplace during the Class Period concerning Xiao-I's results of operations.   Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Xiao-I to engage in the wrongful acts complained of herein.  The Exchange Act Individual Defendants, therefore, were "controlling persons" of Xiao-I within the meaning of Section 20(a) of the Exchange Act.  In this

capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Xiao-I securities.

110.    Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Xiao-I.  By reason of their senior management positions and/or being directors of Xiao-I, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Xiao-I to engage in the unlawful acts and conduct complained of herein.  Each of the Exchange Act Individual Defendants exercised control over the general operations of Xiao-I and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

111.    By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Xiao-I.

## COUNT III

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

112.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

113.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

114.    The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

115.    Xiao-I is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

116.    As issuer of the shares, Xiao-I is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

117.   None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

118.   By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

119.   Plaintiff acquired Xiao-I shares pursuant and/or traceable to the Offering Documents for the IPO.

120.   Plaintiff and the Class have sustained damages.  The value of Xiao-I ADSs has declined substantially subsequent to and because of Defendants' violations.

## COUNT IV

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

121.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

122.   This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

123.   The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Xiao-I within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Xiao-I to engage in the acts described herein.

124.   The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

125.    By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: October 15, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein

60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*