

**Brenda Szydlo**
Partner

May 13, 2025

<u>**VIA ECF**</u>

The Honorable Gregory H. Woods
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:**    *Shiyao v. Xiao-I Corporation, et al.*, **No. 1:24-cv-07837-GHW**

Dear Judge Woods:

We represent Lead Plaintiff Qiao Shiyao ("Plaintiff") in this above-referenced securities class action for violations of Sections 11 and 15 of the Securities Act; and Sections 10(b) and 20(a) of the Securities Exchange Act. In accordance with Rule 2(E)(i) of Your Honor's Individual Rules of Practice in Civil Cases, we write in opposition to Defendants' three pre-motion submissions to dismiss the action (ECF Nos. 55-57).[1] For the reasons stated herein, their motions should be denied.[2]

Xiao-I, through its subsidiaries, operates as a global artificial intelligence ("AI") company headquartered in China. As a holding company with no material operations, Xiao-I conducts most of its operations through its subsidiary, Shanghai Xiao-I Robot Technology Co. On December 20, 2022, Xiao-I filed a Registration Statement with the SEC in connection with its IPO, which was declared effective on March 8, 2023. On or about March 9, 2023, Xiao-I conducted its IPO and raised over $36 million in proceeds. ¶¶58, 60-61.

The Registration Statement and Xiao-I's 2022 20-F annual report contained materially misleading statements downplaying the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with China's Circular 37 Registration, *including the Company's potential inability to use the IPO proceeds for its intended business*

---

[1] Unless otherwise defined, all capitalized terms have the meanings as provided in the Amended Class Action Complaint ("AC") (ECF No. 37). All internal citations and quotation marks are omitted, and all emphasis has been added unless stated otherwise. "¶_" refer to paragraphs in the AC.

[2] Plaintiff reserves the right to make additional arguments in opposing Defendants' motion to dismiss.

Hon. Gregory H. Woods
May 13, 2025
Page 2

*purposes*. Additionally, Defendants' failure to disclose the scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with Circular 37 Registration violated Item 105 of SEC Regulation S-K, which required Xiao-I to provide under the caption "Risk Factors" a discussion of the material factors that make an investment in the Company or offering speculative or risky and concisely explain how each risk affects the Company or the securities being offered. The Registration Statement and 2022 20-F also failed to disclose Xiao-I's cost of revenues by identifiable product or service in contravention of Section 210.5-03(b)(2) of Regulation S-X, which rendered Xiao-I's affirmative statements regarding "cost of revenues" materially misleading "half-truth" statements. Xiao-I's obfuscation of pertinent gross margin measures left investors in the dark as to which of Xiao-I's revenue segments were least/most profitable and called into question whether management had been/were being transparent. ¶¶95-101, 145-58.

The truth began to emerge on July 27, 2023, when the SEC issued a letter to Xiao-I regarding its 2022 20-F. The SEC Letter (i) took issue with the Company's failure to comply with Regulation S-X in preparing its financial statements included in the 2022 20-F; (ii) asked why technology development services ("TDS") was not included as a separate line of business in the Registration Statement but was included separately, just a month later, in the 2022 20-F; and (iii) requested more explicit disclosures in the 2022 20-F risk factors section concerning certain shareholders' non-compliance with Circular 37, including explicit discussion of the potential inability to use IPO proceeds. On August 10, 2023, Xiao-I filed its SEC Letter reply and Amended 2022 20-F. The Amended 2022 20-F, which disclosed revenues and cost of revenue information pursuant to Regulation S-X for the years ended December 31, 2020, 2021 and 2022, afforded newfound insight into the Company's gross margins by revenue. It revealed that the gross margins for the Company's TDS line of business were significantly lower than the gross margins for its sale of software products for the periods presented. Xiao-I's reply also explained why the Company broke TDS revenue into a separate line item in its 2022 20-F. It disclosed that the lower margin TDS line of business represents "the Company's future revenue growth source." The Amended 2022 20-F also clarified the risk factor regarding non-compliance with Circular 37 and the potential inability to use the IPO proceeds. The exchange between the Xiao-I and the SEC regarding this risk disclosure cast doubt on the Xiao-I's transparency and negatively affected investor confidence (notwithstanding news about the Company's ability to transfer the IPO proceeds to a new bank account for its intended use). In response to the disclosures, Xiao-I's ADS price fell $3.07 over the following two trading days, or 38%, to close at $4.97 on August 14, 2023. ¶¶15-22, 102-09.

Additionally, on September 25, 2023, the Company filed a Form 6-K along with a press release announcing, *inter alia*, revenues and cost of revenues for the first six months of 2022 and 2023. The disclosures on September 25, 2023 show that for the six months ending June 30, 2022, while Xiao-I reported higher revenues from TDS than in sales of software products, the gross margin was significantly higher in sales of software products. The gross margin from the sale of software products was 87.81% compared to 57.73% for TDS for the same period. On this news, Xiao-I's ADS price fell $0.30, or 14.22%, to close at $1.81 on September 25, 2023. ¶¶23-24, 110-15.

Hon. Gregory H. Woods
May 13, 2025
Page 3

"Section 11 imposes strict liability on issuers and signatories, and negligence liability on underwriters" for registration statements that contain material misrepresentations or omissions. *In re Tufin Software Techs. Ltd. Sec. Litig.*, 2022 WL 596861, at *5 (S.D.N.Y. Feb. 25, 2022) (Woods, J.). Plaintiff need not allege scienter, reliance or loss causation for Section 11 claims. *Id.* at *5. Furthermore, the PSLRA's heightened pleading standard does not apply to Securities Act cases. *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 338, 352 (S.D.N.Y. 2003). Rule 8(a)'s pleading standard, which requires plaintiff to offer only a short and plain statement of the claim showing that the pleader is entitled to relief, applies to Plaintiff's Securities Act claims because Plaintiff "adequately distinguish[es] [her] Securities Act claims [from her Exchange Act claims] by creating a structural and descriptive separation of those claims from the fraud claims in the same complaint," thus "relieving [Plaintiff] of the heightened pleading requirements of Rule 9(b)." *See Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *9 (S.D.N.Y. Sept. 10, 2012). Here, as in *SkyPeople*, "[t]he Securities Act claims are found in the first half of the complaint; [and] the Exchange Act allegations … are found in the second half of the complaint." *Id.* at *8. Additionally, "the scienter allegations, quite deliberately, are not introduced until after the Securities Act claims are fully pled and are not incorporated by reference into the Securities Act claims." *Id.*; ¶¶31-32, 123, 132, 159-67. Moreover, the Securities Act portion of the Complaint specifically disclaims fraud and states that those claims are based solely on negligence and strict liability. *Id.* at *9; ¶¶32, 136. "[C]ourts have consistently held that Section 11 … [is] subject to notice pleading where, as here, the division between the claims is clear." *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017).[3]

Section 210.5-03(b)(2) of Regulation S-X required the Company to state separately in its statement of comprehensive income the amount of "*cost of tangible goods sold*," "*cost of services*" and "*expenses applicable to other revenues*." 17 C.F.R. § 210.5-03(b)(2). Despite the clear requirements of Section 210.5-03(b)(2), the Company failed to disclose this cost information in the Registration Statement and 2022 20-F, which rendered the Company's affirmative statements regarding "cost of revenues" materially misleading "half-truth" statements. *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 288 (E.D.N.Y. 2023) ("[O]ne of the potential bases for liability under Sections 11 … and Section 10(b) … is an omission in contravention of an affirmative legal disclosure obligation."). Defendants contend the information was not material (ECF No. 55 at 2) but the Complaint explains otherwise.

> Th[e] required information allows investors to make determinations about the gross margin in each of [the] entity's particular product or service lines…. Gross margin is an important financial metric to investors because it provides unfiltered insight into whether an entity has the ability to make money from the very thing it purports to be in business to do – produce goods, or provide services. This measure is especially important for [Emerging Growth Companies] [like Xiao-I] because while such entities may be subject to non-recurring start-up, research and development, or marketing expenses to get the endeavor off the ground, as well as

---

[3] Defendants' reliance on *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) is misplaced as the court in *SkyPeople* explained why *Rombach* does not require the application of Rule 9(b) here. *SkyPeople*, 2012 WL 3957916, at *7-9.

600 Third Avenue, New York, NY 10016    Main: 212.661.1100    Direct: 646.581.9941

NEW YORK    CHICAGO    LOS ANGELES    LONDON    PARIS    TEL AVIV

Hon. Gregory H. Woods
May 13, 2025
Page 4

associated capital expenditures, gross margin provides insight into whether the business endeavor itself – i.e., the making of products or the provision of services – is indeed profitable and may be expected to be in the long run.

¶¶69-70. Additionally, the SEC took issue with the Company's failure to comply with Section 210.5-03(b)(2) of Regulation S-X in preparing its financial statements included in the 2022 20-F. As such, the information was indeed material.

With respect to the alleged materially misleading statements downplaying the true severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with China's Circular 37 Registration, Defendants argue that the Registration Statement, which purported to warn of risks, disclosed that non-compliance might result in penalties for shareholders and the disclosures provided investors with sufficient information about the risks. ECF 55 at 2 ("The Company had no obligation to enumerate every conceivable consequence of the disclosed non-compliance risk."). They are wrong as these disclosures were inadequate and misleading. The heading for the risk factor indicated that as a result of non-compliance with Circular 37, *certain shareholders* may be subject to penalties. There was no mention about the Company's potential inability to use IPO proceeds for its intended business purposes, such as research and development, which would be devastating to this financially strapped AI Company. ¶¶89, 161. *See In re Didi Glob. Inc. Sec. Litig.*, 2024 WL 1119483, at *8 (S.D.N.Y. Mar. 14, 2024) (finding risk disclosures were inadequate because they made no mention of a specific risk that the company, in proceeding with the IPO, was defying the Chinese government's directives). Additionally, Defendants' failure to disclose the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with Circular 37 Registration violated Item 105 of SEC Regulation S-K, as stated above. ¶89. Furthermore, even after the Company first disclosed information about its "current[]" inability "to use most of the IPO proceeds," in its 2022 20-F (¶90), the SEC instructed the Company to "revise this risk factor and throughout your filing *to clarify the risks and potential impact* to the Company and the PRC operating entities as a result of PRC resident shareholders that do not comply with Circular 37 registration, including explicit discussion of the potential inability to use offering proceeds." ¶92.

Scienter is sufficiently pled for purposes of Plaintiff's Section 10(b) claim against CEO Yuan, CFO Weng and the Company (the "Exchange Act Defendants"). A strong inference of scienter arises if "a reasonable person would deem the inference of scienter … at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324-26 (2007). "The question is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter …." *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *9 (S.D.N.Y. June 16, 2020) (Woods, J.) (emphasis in original). Xiao-I required huge sums of money for R&D to compete in the AI industry[4] and was in dire straits and desperate for a capital infusion prior to the IPO. ¶¶160-66. For the six months

---

[4] Indeed, on September 25, 2023, the Company filed a Form 6-K with an attached press release stating that for the six months ended June 30, 2023, research and development expenses "*grew by 708% year over year*" (from $3,669,196 for the six months ended June 30, 2022 to $29,649,703). ¶165.

Hon. Gregory H. Woods
May 13, 2025
Page 5

ended June 30, 2022, the Company incurred negative cash flows from operations of $6.8 million, had an accumulated deficit of $72 million and only $1.52 million in cash and cash equivalents as of June 30, 2022, and *concluded there was substantial doubt about its ability to continue as a going concern*.[5] The 2022 20-F and Amended 2022 20-F, both filed after the IPO, also show Xiao-I was desperate for capital prior to the IPO. ¶163. For the year ended December 31, 2022, the Company incurred negative cash flows from operations of $10.2 million, had an accumulated deficit of $78.5 million, and had only $1.03 million in cash and cash equivalents as of December 31, 2022.[6] *See Acer Therapeutics*, 2020 WL 3268495, at *11 (stating "courts have found allegations of motive adequate where the company[] needed to fundraise to survive" and "[a]n executive at a company that will go belly up if it fails to fundraise has different incentives from a generic corporate insider"). Additionally, the fact that the Registration Statement, signed by CEO Yuan and CFO Weng, contained a (misleading) risk warning due to non-compliance with China's Circular 37 means that the Exchange Act Defendants were aware of the potential problems stemming from the rule, including the potential inability to use the IPO proceeds. The Exchange Act Defendants merely argue the "Company had no obligation to enumerate every conceivable consequence of the disclosed non-compliance risk." ECF No. 55 at 2. Indeed, the IPO proceeds were so important to the Company that top management – CFO Yuan and CFO Weng – had to be aware of matters central to the business's operation. *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *5 (S.D.N.Y. Feb. 5, 2024). Moreover, the fact that Xiao-I disclosed the *revenue information for each of its products and services lines of business* pursuant to Section 210.5-03(b)(1) of Regulation S-X in both the Registration Statement and 2022 20-F (signed by CEO Yuan) but failed to disclose the *costs of revenues for those very same products or services* pursuant to (b)(2), suggests that the Exchange Act Defendants considered Section 210.5-03(b) as a whole prior to the IPO, and intentionally or recklessly chose not to comply with (b)(2). ¶¶159-67.

Loss causation is also adequately pled for purposes of Plaintiff's Section 10(b) claim. To plead loss causation, a complaint "must simply give Defendants some indication of the actual loss suffered and…a plausible causal link between the loss and the alleged misrepresentations." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187 (2d Cir. 2015). A plaintiff "may do so [ ] by alleging [ ] the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud." *Saskatchewan Healthcare Employee's Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 393 (S.D.N.Y. 2024) (Woods, J.). The "burden to plead loss causation is not a heavy one." *Id.* As shown above and in the Amended Complaint, Plaintiff has satisfied this standard. When the fraudulent conduct was disclosed, the price of Xiao-I's ADSs declined significantly. ¶¶168-72.

Defendants contend that because Plaintiff has failed to adequately plead predicate Sections

---

[5]Xiao-I Corp., Registration Statement (Amendment No. 2 to Form F-1) (Mar. 6, 2023) at 102, https://www.sec.gov/Archives/edgar/data/1935172/000121390023017726/ff12023a2_xiaoicorp.htm; ¶160.
[6]Xiao-I Corp., Annual Report (Form 20-F) (Apr. 28, 2023) at 100, https://www.sec.gov/Archives/edgar/data/1935172/000121390023033683/f20f2022_xiaoicorp.htm; ¶163 & n.12.

Hon. Gregory H. Woods
May 13, 2025
Page 6

10(b) and 11 violations, Plaintiff's claims under Sections 20(a) and 15, respectively, should be dismissed. ECF No. 55 at 3. However, because Plaintiff has adequately pled such predicate violations, their argument fails. *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *10 (S.D.N.Y. May 24, 2018); *Fed. Deposit Ins. Corp. v. Chase Mortg. Fin. Corp.*, 2013 WL 5434633, at *10 (S.D.N.Y. Sept. 27, 2013). CEO Yuan and CFO Weng argue that with respect to the Section 20(a) claims against them, Plaintiff failed to allege that they were culpable participants in the alleged fraud. ECF No. 55 at 3. For the reasons set for above regarding "the scienter element of the Section 10(b) claim, the [Amended Complaint] plausibly alleges the relevant parties' culpable participation under Section 20." *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 238 (S.D.N.Y. 2023). Additionally, Plaintiff alleged that Defendants Yuan and Weng signed the SEC filings that contained the misleading statements at issue in this action. ¶¶35-36, 152. At the pleading stage, Plaintiff has adequately alleged Section 20(a) claims against these individuals. *In re Arqit Quantum Inc. Sec. Litig.*, 2025 WL 977995, at *30 (E.D.N.Y. Mar. 28, 2025).

Defendants Gregory K. Lee ("Lee") and GKL Corporate/Search, Inc. ("GKL" and together with Lee, the "DAR Defendants") submitted a pre-motion letter (ECF No. 57), but they are in default and Plaintiff intends to seek a default judgment against them at a later date. Defendant Lee, a director of GKL, signed or authorized the signing of the Registration Statement as the duly authorized representative in the United States of GKL. ¶¶42-43. Because Section 11 imposes strict liability on signatories for registrations statements that contain material misrepresentations or omissions, *Tufin*, 2022 WL 596861, at *5, the DAR Defendants are appropriate defendants. *See Cloopen Grp.*, 661 F. Supp. 3d at 238; *Oh v. Chan*, 2008 WL 11338725, at *2 (C.D. Cal. July 9, 2008) ("The 'duly authorized representative in the United States,' as a signatory to the registration statement, may be sued for a foreign issuer's violations of the Securities Act."). The DAR Defendants were both served with process on December 2, 2024, *more than five months ago* (ECF Nos. 22-23), and have neither responded to the original Complaint nor the Amended Complaint, nor have they sought additional time to respond. In fact, the first time Lead Counsel heard from the DAR Defendants' counsel, Thomas J. Cotton, was on May 5, 2025, after Xiao-I's counsel disclosed that the DAR Defendants were planning on submitting a pre-motion letter to the Court. Notably, Mr. Cotton filed a Notice of Appearance (ECF No. 36) one month before the Amended Complaint was filed and received over 15 ECF notifications prior to May 5 — including notifications regarding scheduling — but never once reached out to Lead Counsel regarding the DAR Defendants' default. In light of their default, the DAR Defendants should not be permitted to move to dismiss at this time. Should the Court disagree, the arguments set forth herein in opposition to the other Defendants' letters apply to them as well.

Respectfully submitted,

*/s/ Brenda Szydlo*
Brenda Szydlo

cc:  All Counsel of Record (via ECF)