UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QIANO SHIYAO, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br>     v.<br><br>XIAO-I CORPORATION, HUI YUAN, WEI WENG, WENJING CHEN, XIAOMEI WU, JUN XU, ZHONG LIN, H. DAVID SHERMAN, GREGORY K. LEE, GKL CORPORATE/SEARCH, INC., AC SUNSHINE SECURITIES LLC, SBI CHINA CAPITAL FINANCIAL SERVICES LIMITED, PRIME NUMBER CAPITAL LLC and GUOTAI JUNAN SECURITIES (HONG KONG) LIMITED,<br><br>             Defendants. | **ORAL ARGUMENT REQUESTED**<br><br>Case No. 24-cv-7837 (GHW) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

<table>
<tr><td>

**STINSON LLP**
Richard J.L. Lomuscio
Nicole Khalouian
100 Wall Street, Suite 201
New York, New York 10005
(646) 883-7675
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Xiao-I Corporation, Hui Yuan, Wei Weng, Wenjing Chen, Xiaomei Wu, Jun Xu, Zhong Lin, and H. David Sherman*

</td><td>

**FAEGRE DRINKER BIDDLE & REATH LLP**
Andrew L. Van Houter
Christian J. Clark
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
(212) 248-3140
andrew.vanhouter@faegredrinker.com
christian.clark@faegredrinker.com

*Attorneys for Defendants AC Sunshine Securities LLC, SBI China Capital Financial Services Limited, Prime Number Capital LLC and Guotai Junan Securities (Hong Kong) Limited*

</td></tr>
</table>

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 3

LEGAL STANDARDS ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 10

I.      PLAINTIFF'S SECTION 11 CLAIMS SHOULD BE DISMISSED............................. 11

        A.      The AC Is Subject To Rule 9(b)'s Heightened Pleading Standard...................... 12

        B.      The AC's Section 11 Claim Does Not Meet Rule 9(b)'s Pleading Standard. ...... 15

        C.      The AC Fails To Meet Rule 8's Basic Pleading Requirements As To The
                Underwriter Defendants. ....................................................................................... 16

        D.      The AC Fails To Meet Rule 8's Basic Pleading Requirements As To The
                Corporate Defendants. .......................................................................................... 17

        E.      The Section 11 Claim Also Fails Because Plaintiff Does Not Plead That Xiao-
                I's Registration Statement Contained An Untrue Statement Of A Material Fact. 18

                1.      The Comprehensive Statements of (Loss)/Income Were Not False. ........ 18

                2.      Xiao-I Disclosed The Relevant Risks Regarding Circular 37
                        Compliance. ............................................................................................. 21

                3.      Defendants' Circular 37 Risk Disclosures Are Protected By The
                        PSLRA's Safe Harbor For Forward-Looking Statements. ....................... 23

                4.      Xiao-I's Disclosures Were Not Materially Misleading. ........................... 25

II.     PLAINTIFF'S SECTION 10 CLAIM SHOULD BE DISMISSED................................ 27

        A.      The AC Fails To Plead Scienter........................................................................... 27

        B.      The AC Fails To Plead Loss Causation. ............................................................... 30

III.    PLAINTIFF'S SECTIONS 15 AND 20(a) CLAIMS SHOULD BE DISMISSED. ........ 32

CONCLUSION................................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995)..................................................................................................8

*Altayyar v. Etsy, Inc.*,
242 F. Supp. 3d 161 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018)........................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................7

*AT&T Commc'ns Inc. v. Shaar Fund, Ltd.*,
93 F.3d 87 (2d Cir. 2011)..........................................................................................10, 32

*In re Atlas Airworldwide Holdings, Inc. Sec. Litig.*,
324 F.Supp.2d 474 (S.D.N.Y 2004)..................................................................................30

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).......................................................................................3, 8, 9, 27

*In re Axis Capital Holdings Ltd. Secs. Litig.*,
456 F.Supp.2d 576 (S.D.N.Y. 2006)..................................................................................13

*In re Bank of Am. AIG Disclosure Securities Litigation*,
980 F.Supp.2d (S.D.N.Y. 2013)........................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................7

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
506 F. App'x 32 (2d Cir. 2012) ........................................................................................20

*Caiafa v. Sea Containers Ltd.*,
06 Civ. 2565 (RMB), 06 Civ. 2670 (RMB), 06 Civ. 2744 (RMB), 06 Civ.
2776 (RMB), 06 Civ. 2909 (RMB), 06 Civ. 3099 (RMB), 06 Civ. 3563
(RMB), 06 Civ. 5655 (RMB), 2008 WL 11516813 (S.D.N.Y. May 15, 2008)........................15

*Campo v. Sears Holdings Corp.*,
635 F.Supp.2d 323 (S.D.N.Y. 2009), *aff'd*, 371 F. App'x 212 (2d Cir. 2010)........................27

*Castellano v. Young & Rubicam, Inc.*,
257 F.3d 171 (2d Cir. 2001)..............................................................................................22

*Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*,
No. 08-cv-7062, 2010 WL 4642554 (S.D.N.Y. Nov. 17, 2010)............................................20

*In re Chembio Diagnostics, Inc. Secs. Litig.*,
  616 F.Supp.3d 192 (E.D.N.Y. 2022) ................................................................12, 15

*Cohen v. Stevanovich*,
  722 F.Supp.2d 416 (S.D.N.Y. 2010)...........................................................................32

*Coronel v. Quanta Capital Holdings Ltd.*,
  No. 07 Civ. 1405 (RPP), 2009 WL 174656 (S.D.N.Y Jan. 26, 2009)
  ................................................................................................................8, 12, 15, 23

*In re Coty Inc. Sec. Litig.*,
  No. 14-cv-919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)..................................19

*Dane v. UnitedHealthcare Ins. Co.*,
  974 F.3d 183 (2d Cir. 2020)........................................................................................7

*Davidoff v. Farina*,
  No. 04 Civ. 7617 (NRB), 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ...............30

*DeJesus v. HF Mgmt. Servs., LLC*,
  726 F.3d 85 (2d Cir. 2013)...........................................................................................7

*Delfonce v. Eltman Law, P.C.*,
  No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249 (E.D.N.Y. Feb. 15, 2017),
  *aff'd*, 712 F. App'x 17 (2d Cir. 2017)........................................................................3

*Devaney v. Chester*,
  813 F.2d 566 (2d Cir. 1987)......................................................................................28

*In re Duane Reade Inc. Sec. Litig.*,
  No. 02-cv-6478, 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2002)..............................20

*In re Duke Energy Corp. Sec. Litig.*,
  282 F.Supp.2d 158 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004).........25

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005)...................................................................................................31

*ECA v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009).................................................................................9, 28

*In re Express Scripts Holding Co. Sec. Litig.*,
  No. 16 CIV. 3338 (ER), 2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ....................10

*Fernandes v. Centessa Pharms. PLC*,
  No. 1:22-CV-8805-GHW, 2024 WL 3638254 (S.D.N.Y. Aug. 2, 2024)...............12, 13

iii

*GAMCO Invs., Inc. v. Vivendi Universal, S.A.*,
  838 F.3d 214 (2d Cir. 2016)..................................................................................................8

*Geiger v. Solomon-Page Group, Ltd.*,
  933 F. Supp. 1180 (S.D.N.Y. 1996)................................................................................12, 15

*In re Gentiva Secs. Litig.*,
  932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...........................................................................14, 15

*Grp. Holding Ltd. Sec. Litig.*,
  No. 22-CV-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024)......................................14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014).............................................................................................................8

*Halperin v. eBanker USA.com*,
  Inc., 295 F.3d 352 (2d Cir. 2002) .......................................................................................24

*I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991)................................................................................................18

*IAM Nat'l Pension Fund v. Farfetch Limited*,
  No. 21-2752-cv, 2023 WL 2879304 (2d Cir. Apr. 11, 2023)...........................................12, 15

*In re Initial Pub. Offering Sec. Litig.*,
  358 F.Supp.2d 189 (S.D.N.Y. 2004)....................................................................................19

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)..............................................................................................9, 29

*In re Keyspan Corp. Sec. Litig.*,
  383 F.Supp.2d 358 (E.D.N.Y. 2003) ...................................................................................21

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
  No. 07 CIV. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)......................7, 8, 13

*Lau v. Opera Ltd.*,
  527 F.Supp.3d 537 (S.D.N.Y. 2021)....................................................................................22

*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161 (2d Cir. 2005).................................................................................................9

*In re Lions Gate Entm't Corp. Sec. Litig.*,
  165 F.Supp.3d 1 (S.D.N.Y. 2016) (June 7, 2016).................................................................9

*Lipow v. Net1 UEPS Technologies, Inc.*,
  131 F.Supp.3d 144 (S.D.N.Y. 2015)....................................................................................29

*In re Lottery.com, Inc. Sec. Litig.*,
  715 F.Supp.3d 506 (S.D.N.Y. 2024)....................................................................................29

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*,
  501 F.Supp.2d 452 (S.D.N.Y. 2006).....................................................................................14

*In re Micro Focus Int'l Plc Sec. Litig.*,
  1:18-cv-06763-ALC, 2020 WL 5817275 (S.D.N.Y. Sept. 29, 2020).....................................13

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
  No. 03 CIV. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)..................................12

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)............................................................................................18, 32

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty.
  Ret. Ass'n v. MDC Partners, Inc.*,
  No. 15 CIV. 6034 (RJS), 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)...............................28

*In re N. Telecom Ltd. Secs. Litig.*,
  116 F.Supp.2d 446 (S.D.N.Y. 2000)....................................................................................29

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).........................................................................................20, 30

*In re Omnicom Group, Inc. Secs. Litig.*,
  541 F.Supp.2d 546 (S.D.N.Y. 2008)....................................................................................32

*Peifa Xu v. Gridsum Holding Inc.*,
  No. 18 Civ. 3655 (ER), 2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020)..................................25

*In re PetroChina Co. Ltd. Sec. Litig.*,
  120 F.Supp.3d 340 (S.D.N.Y. 2015) *aff'd sub nom. Klein* v. *PetroChina Co.*,
  644 Fed.Appx. 13 (2d Cir. 2016) (summary order)..............................................................10

*Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco,
  Inc.*,
  No. 09 Civ. 6966 (JGK), 2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) ...............................30

*Police Fire Retirement System v. Safenet*,
  645 F.Supp.2d 210 (S.D.N.Y. 2009).....................................................................................15

*In re ProShares Tr. Sec. Litig.*,
  728 F.3d 96 (2d Cir. 2013).....................................................................................................8

*In re Rhodia S.A. Securities Litigation*,
  531 F.Supp.2d 527 (S.D.N.Y. 2007)....................................................................................32

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................................12, 13, 18

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010)..................................................................................................23

*Stadnick v. Vivint Solar, Inc.*,
    861 F.3d 31 (2d Cir. 2017)....................................................................................................26

*Suez Equity Investors, L.P. v. Toronto–Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)....................................................................................................31

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)..................................................................................................28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................................................9, 27

*In re TVIX Sec. Litig.*,
    25 F.Supp.3d 444 (S.D.N.Y. 2014), *aff'd*, 588 F. App'x 37 (2d Cir. 2014)............................20

*Vacarro v. NewSource Energy Partners*,
    No. 15-cv-8954, 2016 WL 7373799 (S.D.N.Y. Dec. 19, 2016)..............................................20

*In re Virtus Investment Partners, Inc. Sec. Litig*,
    195 F.Supp.3d 528 (S.D.N.Y. 2016)......................................................................................17

*Wandel v. Gao*,
    590 F.Supp.3d 630 (S.D.N.Y. 2022)......................................................................................21

*In re WEBMD Health Corp. Sec. Litig.*,
    No. 11 Civ. 5382(JFK), 2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) .......................................23

*In re Weight Watchers International Inc Sec. Litig.*,
    504 F.Supp.3d 224 (S.D.N.Y. 2020)......................................................................................24

*White v. UMG Recordings, Inc.*,
    20 Civ. 9971 (AT), 2021 WL 6052106 (S.D.N.Y. Dec. 21, 2021)....................................7, 16

*Willard v. UP Fintech Holding Ltd.*,
    527 F.Supp.3d 609 (S.D.N.Y. 2021)......................................................................................19

*Yaroni v. Pintec Tech. Holdings Ltd.*,
    600 F.Supp.3d 385 (S.D.N.Y. 2022)........................................................................21, 25, 26

**Statutes**

15 U.S.C. § 77k.......................................................1, 5, 6, 8, 11, 12, 13, 14, 15, 17, 18, 19, 32

15 U.S.C. § 77o................................................................................................................1, 5, 10, 32

15 U.S.C. § 78j......................................................1, 2, 5, 6, 8, 11, 17, 18, 26, 27, 29, 30, 32

15 U.S.C. § 78t................................................................................................................1, 5, 10, 32

15 U.S.C. §78u-4 ...........................................................................................1, 8, 9, 11, 23, 24 27

**Rules**

17 C.F.R. § 210.5-03...........................................................................................................18

17 C.F.R. § 229.105 ...........................................................................................................22

17 C.F.R. § 229.303 ...........................................................................................................22

17 C.F.R. § 240.10b-5.....................................................................................................1, 8

Fed. R. Civ. P. 8...............................................................................................................15

Fed. R. Civil P. 9..........................................................................................................1, 7

Fed R. Civil P. 12.........................................................................................................1, 7

Defendants Xiao-I Corporation ("Xiao-I" or the "Company"), Hui Yuan ("CEO Yuan"), Wei Weng ("CFO Weng"), Wenjing Chen, Xiaomei Wu, Jun Xu, Zhong Lin, H. David Sherman (collectively, the "Corporate Defendants", and excluding Xiao-I, the "Individual Defendants"), AC Sunshine Securities LLC, Guotai Junan Securities (Hong Kong) Limited, Prime Number Capital LLC, and SBI China Capital Financial Services Limited (the "Underwriter Defendants" and together with the Corporate Defendants, "Defendants"[1]), by and through their undersigned attorneys, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss ("Motion"[2]) pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6), 9(b), and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u–4(b)(2), the Amended Complaint ("AC") (ECF No. 37) filed by Lead Plaintiff Qiao Shiyao ("Plaintiff"). For the reasons set forth herein, Defendants' Motion should be granted dismissing the claims brought pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77o) (individually, "Section 11" and "Section 15"), as well as Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and United States Securities and Exchange Commission ("SEC") Rule 10b-5 (17 C.F.R. § 240.10b-5) (individually, "Section 10(b)", "Section 20(a)", and "Rule 10b-5").

## PRELIMINARY STATEMENT

Plaintiff asserts securities claims based on a purported failure to warn of risks that were expressly disclosed and on a financial statement amendment that had no impact on the Company's bottom line. This action is a transparent attempt to recover for losses that have nothing to do with

---

[1] On June 2, 2025, prior defendants Gregory K. Lee and GKL Corporate/Search, Inc. were voluntarily dismissed from this action. (ECF No. 64.)

[2] While the Corporate Defendants and Underwriter Defendants maintain distinct legal positions, the parties have consolidated their arguments into this single brief for judicial efficiency and to avoid duplicative briefing. The Court granted Defendants leave to file a consolidated Motion on June 5, 2022. (ECF No. 66.)

the matters alleged in the AC. The AC's core allegation is that certain statements in Xiao-I's Registration Statement disclosed in connection with its initial public offering ("IPO") of American Depositary Shares ("ADSs"), and the Company's April 28, 2023 Annual Report on Form 20-F for the year ended December 31, 2022 ("2022 20-F") were rendered inaccurate by an amendment made to Xiao-I's Annual Report on Form 20-F ("Amended 2022 20-F"). The AC challenges two categories of statements found in Xiao-I's Registration Statement and the 2022 20-F: (1) the Comprehensive Statements of (Loss)/Income, and (2) the risk disclosures related to shareholders' compliance with certain Chinese regulatory requirements ("Circular 37").

Plaintiff fails to state a claim for the four following reasons: *First*, the AC does not satisfy Rule 9(b)'s heightened pleading requirements, which apply to claims that sound in fraud. *Second*, Plaintiff cannot establish any material misstatement or omission because the Company provided accurate financial data and adequately disclosed all relevant risks. *Third*, the Section 10(b) claims fail because Plaintiff has not pleaded scienter sufficient to establish the requisite intent to deceive or reckless disregard for the truth. *Fourth*, Plaintiff's loss causation allegations fail because the purported "corrective disclosures" either announced positive developments or provided routine updates unrelated to any alleged misstatements. Accordingly, the AC should be dismissed with prejudice.

**FACTUAL BACKGROUND[3]**

*Xiao-I's Business.* Xiao-I is a Cayman Islands company headquartered in the People's

Republic of China ("PRC") that operates a global artificial intelligence company. (AC ¶¶ 4, 58.)

The ADSs trade on NASDAQ under the ticker symbol "AIXI". (AC ¶ 34.)

*The IPO.* On December 20, 2022, Xiao-I filed a registration statement on Form F-1 with

the SEC in connection with its initial public offering, which was declared effective on March 8,

2023. (RL Decl. Ex. A[4]; AC ¶ 60.) On March 9, 2023, Xiao-I conducted its IPO, issuing 5.7 million

ADSs at $6.80 per ADS for net proceeds of over $36 million. (AC ¶ 61.) On March 13, 2023, the

Company filed a prospectus on Form 424B4 that incorporated and formed part of the Registration

Statement. (AC ¶ 62.) The Registration Statement disclosed the Company's revenue from four

business lines: (i) sale of software products and service; (ii) maintenance and support service; (iii)

sale of hardware products; and (iv) sale of cloud platform products. (AC ¶ 64.) The Registration

Statement also contained risk disclosures regarding certain Chinese shareholders' non-compliance

with Circular 37 registration requirements, warning that such non-compliance "may result in

restrictions being imposed on part of foreign exchange activities of the offshore special purpose

vehicles, including restrictions on its ability to receive registered capital." (AC ¶ 99.)

*The 2022 20-F.* On April 28, 2023, Xiao-I filed its annual report on Form 20-F for the year

ended December 31, 2022. (RL Decl. Ex. B; AC ¶ 152.) In this filing, the Company separated its

---

[3] These facts reflect the allegations in the Complaint and "documents attached as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, [and] documents integral to the complaint." *Delfonce v. Eltman Law, P.C.*, No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249, at *2 (E.D.N.Y. Feb. 15, 2017), *aff'd*, 712 F. App'x 17 (2d Cir. 2017). The Court may also consider "legally required public disclosure documents filed with the SEC." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[4] Exhibits cited herein are attached to the accompanying Declaration of Richard J.L. Lomuscio, dated June 9, 2025 ("RL Decl."). All citations and internal quotations marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

previously combined "sale of software products and services" into two distinct categories: "sale of software products" and "technology development services." (AC ¶ 75.) The 2022 20-F disclosed certain operational challenges related to Circular 37 compliance, stating that "currently WFOE is unable to open a new capital account with banks within China" and "we are unable to use most of the IPO proceeds for product development and company operations." (AC ¶ 90.)

*The SEC Comment Letter.* On July 27, 2023, the SEC issued a comment letter to Xiao-I regarding the 2022 20-F. (AC ¶ 76.) The SEC questioned the Company's compliance with Section 210.5-03(b)(2) of Regulation S-X and asked why technology development services was reported as a separate line item in the 2022 20-F but not in the Registration Statement. (AC ¶ 76.) The SEC also requested more explicit disclosures regarding the Company's inability to use IPO proceeds due to Circular 37 compliance issues. (AC ¶ 92.)

*Amended 2022 20-F And Xiao-I's Response To The SEC.* On August 10, 2023, Xiao-I filed an amendment to its 2022 Form 20-F and a response letter to the SEC. (RL Decl. Exs. C, D; AC ¶¶ 77, 79.) The Amended 2022 20-F provided a breakdown of costs of revenues by product and service categories while the total net revenues remained the same as previously reported. (AC ¶¶ 104-106.) The filing disclosed positive developments regarding Circular 37 compliance, announcing that "WFOE has successfully opened a new capital account with Bank of Ningbo" and "we were able to transfer the rest of the IPO proceeds from overseas to WFOE for VIE's product development and operations." (AC ¶ 93.) In its response letter, Xiao-I explained that technology development services "represent the Company's future revenue growth source" and that the 77% increase in such services from 2021 to 2022 warranted separate disclosure. (AC ¶ 79.)

*The Form 6-K.* On September 25, 2023, Xiao-I filed a Form 6-K with a press release announcing its financial results for the six months ended June 30, 2023. (RL Decl. Ex. E; AC ¶

80.) This filing provided additional detail regarding Xiao-I's revenue and cost structure by business segment for the interim period. (AC ¶ 80.)

*This Action.* On March 5, 2025, Plaintiff filed this Amended Class Action Complaint alleging violations of the federal securities laws. (ECF No. 37.)

- Section 11 Claims. Plaintiff brings Section 11 and Section 15 claims under the Securities Act against all Defendants ("Section 11 Defendants") based on alleged false statements made in Xiao-I's Registration Statement. (AC ¶¶ 44, 50-51.) These claims challenge two categories of Registration Statement disclosures: (1) the Consolidated Statements of Operations and Comprehensive (Loss)/Income for the quarters and years ended December 31, 2020 and December 31, 2021 and for the six months ended June 30, 2021 and June 30, 2022 (*see* AC ¶¶ 72-73); and (2) Xiao-I's risk factor disclosures concerning certain of the Company's Chinese shareholders' compliance with Circular 37 registration requirements (*see* AC ¶¶ 85-94).

- Section 10 Claims.  Plaintiff also brings Section 10(b) and Section 20(a) claims under the Exchange Act against Xiao-I and Individual Defendants CEO Yuan and CFO Weng ("Section 10 Defendants"). (AC ¶¶ 142, 144.) These claims are based on the same two categories of alleged misstatements but span both the Registration Statement and subsequent SEC filings. In addition, the Section 10(b) claims challenge: (1) the Consolidated Statements of Operations and Comprehensive (Loss)/Income for the quarters and year ended December 31, 2022 (*see* AC ¶¶ 146-148, 152-153); and (2) Circular 37 risk factor disclosures in both the Registration Statement (*see* AC ¶¶ 149-150) and the 2022 20-F (see AC ¶¶ 156-158).

Plaintiff's claims can be summarized as follows:

| SECTION 11 CLAIMS (Registration Statement Only) | |
|---|---|
| **Disclosure** | **Alleged False Statement or Omission** |
| Consolidated Statements of Operations and Comprehensive (Loss)/Income for quarters and years ended December 31, 2020 and December 31, 2021 and for six months ended June 30, 2021 and June 30, 2022. | Omission of breakdown of "cost of revenues" by product or service categories based on Xiao-I's business segments. |
| Circular 37 Risk Factor | *"Some of our shareholders are not in compliance with the PRC's regulations relating to offshore investment activities by PRC residents, and as a result, the shareholders may be subject to penalties..."* <br><br> *"Some of our beneficial owners, who are PRC residents, have not completed the Circular 37 Registration.... The Chinese resident shareholders' failure to comply with Circular 37 registration may result in restrictions being imposed on part of foreign exchange activities... In addition, the failure of the Chinese resident shareholders to complete Circular 37 registration may subject each of the shareholders to fines less than RMB50,000."* |

| SECTION 10 CLAIMS (Registration Statement and 2022 20-F) | |
|---|---|
| **Disclosure** | **Alleged False Statement or Omission** |
| Consolidated Statements of Operations and Comprehensive (Loss)/Income for quarters and year ended December 31, 2022. | Omission of breakdown of "cost of revenues" by product or service categories based on Xiao-I's business segments. |
| Circular 37 Risk Factor | *"Currently, we are unable to use most of the IPO proceeds for product development and company operations because we are unable to transfer the funds from Xiao-I Corporation to WFOE and then to the VIE due to WFOE's inability to open a new capital account as discussed above."* <br><br> *"We intend to use the net proceeds from the offering for research and development, investment in technology* |

| SECTION 10 CLAIMS | |
| (Registration Statement and 2022 20-F) | |
| **Disclosure** | **Alleged False Statement or Omission** |
| | *infrastructure, marketing and branding, and other capital expenditure, and other general corporate purpose."* |

## LEGAL STANDARDS

*Rule 12(b)(6).* To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court will "accept as true all factual allegations and draw from them all reasonable inferences" but will not "credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020). "Although courts must draw all reasonable inferences in the plaintiff's favor and assume all well-pleaded factual allegations to be true, they are not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *White v. UMG Recordings, Inc.*, 20 Civ. 9971 (AT), 2021 WL 6052106, at \*2 (S.D.N.Y. Dec. 21, 2021). "Pleadings that contain no more than conclusions . . . are not entitled to the assumption of truth otherwise applicable to complaints in the context of motions to dismiss." *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013). A complaint that relies on "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

*Rule 9(b).* Complaints sounding in fraud are subject to the heightened pleading standard under Rule 9(b). Pursuant to that rule, "a party must 'state with particularity the circumstances' supporting an allegation of fraud." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 CIV. 0976 (LAP), 2008 WL 4449280, at \*11 (S.D.N.Y. Sept. 30, 2008) (quoting Fed. R. Civ. P. 9(b)). That requires "that a complaint '(1) specify the statements that the plaintiff contends were fraudulent,

(2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Ladmen*, 2008 WL 4449280, at \*11 (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir. 1995)). Rule 9(b) also requires that the plaintiff "convey through factual allegations that the defendants made materially false statements, and that they did so with scienter." *Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405 (RPP), 2009 WL 174656, at \*16 (S.D.N.Y Jan. 26, 2009).

*Section 11.* Under Section 11, any person who acquired a security under a registration statement that either (1) "contained an untrue statement of a material fact" or (2) "omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading" may sue every person who, *inter alia*, signed the registration statement, served as a director or partner in the issuer, or acted as an underwriter with respect to the security. 15 U.S.C. § 77k(a). "Liability attaches to a security's issuer, its underwriter, and certain other statutorily enumerated parties pursuant to section 11 ... if any part of the operative registration statements" contained such a misstatement or omission. *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 101 (2d Cir. 2013).

*Section 10(b) and Rule 10b-5.* To state a claim under Section 10(b) and Rule 10b-5 for fraudulent misrepresentations, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GAMCO Invs., Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). These allegations must satisfy Rule 9(b) and the PSLRA. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

8

Claims under both Section 10(b) and Rule 10b-5 require scienter—an intent to deceive, manipulate or defraud, to be proven. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). To plead scienter, the PSLRA requires that the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter at the time they made the alleged misrepresentations or omissions. 15 U.S.C. §78u–4(b)(2) (emphasis added.) "To qualify as 'strong' ... an inference of scienter must be more than merely plausible or reasonable; it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314. Plaintiff must allege facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc.*, 493 F.3d at 99. Such facts must be alleged "with respect to each defendant." *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F.Supp.3d 1, 22 (S.D.N.Y. 2016) (June 7, 2016).

In order to plead scienter based on motive and opportunity, Plaintiff must "allege that [Defendants] benefitted in some concrete and personal way from the purported fraud." *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Plaintiff must plead particularized facts that demonstrate a "unique connection between the fraud and the [personal benefits]." *Id.* at 201 n. 6. Plaintiff must also plead specific facts showing that the benefits "could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

When a plaintiff fails to allege motive, "the strength of [their] circumstantial allegations" of conscious misbehavior or recklessness generally must be "correspondingly greater." *ECA*, 553 F.3d 187, 198-99. To plead scienter based on conscious misbehavior, Plaintiff must allege

9

"conduct ... that is at the least highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known . . . or so obvious that [Defendants] must have been aware of it." *In re PetroChina Co. Ltd. Sec. Litig*., 120 F.Supp.3d 340, 365-66 (S.D.N.Y. 2015) *aff'd sub nom. Klein* v. *PetroChina Co.*, 644 Fed.Appx. 13 (2d Cir. 2016) (summary order). To plead scienter based on recklessness Plaintiff must "specifically allege defendants' knowledge of facts or access to information contradicting defendants' public statements, or allege that defendants failed to check information that they had a duty to monitor." *In re Express Scripts Holding Co. Sec. Litig*., No. 16 CIV. 3338 (ER), 2017 WL 3278930, at *16 (S.D.N.Y. Aug. 1, 2017). To allege that an omission was the result of conscious misbehavior or recklessness, the complaint must "sufficiently allege that the defendants acted with reckless disregard for a known or obvious duty." *In re Bank of Am. AIG Disclosure Securities Litigation*, 980 F.Supp.2d, 564, 586 (S.D.N.Y. 2013).

*Sections 15 and 20(a).* Claims under Section 15 hinge on the success of claims under Sections 11, as Section 15 provides for liability of any person who, by or through stock ownership, agency, or otherwise, "controls any person" found liable under Sections 11. 15 U.S.C. § 77o. Similarly, the success of a claim under Section 20(a) relies on a plaintiff's ability to allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *AT&T Commc'ns Inc. v. Shaar Fund, Ltd.*, 93 F.3d 87, 108 (2d Cir. 2011).

## ARGUMENT

The AC should be dismissed in its entirety because it fails to meet basic federal pleading standards and alleges no actionable securities violations. Plaintiff's claims rest on: (1) the alleged omissions of cost revenue breakdowns that had no impact on the Company's financial performance

10

and were not required disclosures, and (2) risk factor disclosures that warned of the precise

contingencies that later arose. The basis for dismissal of the AC can be summarized as follows:

| Alleged Issue | Basis For Dismissal |
|---|---|
| **Financial Statement Presentation:** Cost of Revenue Categorization | • **No False Statement:** the aggregate cost figure was accurate and the omission of a detailed breakdown does not make the stated figure "false".<br>• **No Violation of Regulation S-X:** technical accounting presentation issues do not create liability and Xiao-I's revenue originated from a single "class".<br>• **No Scienter (Section 10**): need for cash flow does not evidence fraud. Technical accounting irregularity is insufficient to satisfy scienter.<br>• **No Loss Causation (Section 10**): information was already known to the market; not "corrective"; no isolation of alleged fraud. |
| **Circular 37 Disclosures:** Shareholder Compliance Issues | • **No False Statement:** risk factor adequately warned of the potential inability to use IPO proceeds. Full disclosure of Circular 37 complications provided transparency to investors. Xiao-I's intention to use the proceeds for stated business purposes is not false.<br>• **Forward-Looking Statement**: protected by the PSLRA safe harbor for good faith predictions.<br>• **No Scienter (Section 10):** real-time warnings show lack of fraudulent intent. Inconsistent allegations undermine inference of fraudulent intent.<br>• **No Loss Causation (Section 10):** risks were successfully resolved; no isolation of alleged fraud. |

The AC contains no false statements of material fact—only accurate financial data and

prescient risk warnings that proved correct when regulatory challenges were successfully resolved.

Moreover, Plaintiff fails to satisfy Rule 9(b)'s heightened pleading requirements for fraud-based

claims and cannot establish the scienter or loss causation required for Section 10 violations. The

Plaintiff's AC should be dismissed.

## I.  PLAINTIFF'S SECTION 11 CLAIMS SHOULD BE DISMISSED.

Plaintiff's Section 11 claims against the Section 11 Defendants fail for two reasons. *First*,

the AC does not meet Rule 9(b)'s heightened pleading standards, which apply here because

Plaintiff's Section 11 claims are derived from the same fraudulent conduct allegations underlying Plaintiff's Section 10(b) claims. *Second*, Plaintiff fails to allege any untrue statement of material fact because the Registration Statement contained facially accurate financial information, and the relevant filings adequately disclosed all relevant risks regarding Circular 37 compliance in language that proved accurate when the disclosed risks were ultimately resolved.

### A.    The AC Is Subject To Rule 9(b)'s Heightened Pleading Standard.

It is well established that "'the heightened pleading standard of Rule 9(b) applies to Section 11 claims insofar as the claims are premised on allegations of fraud.'" *Fernandes v. Centessa Pharms. PLC*, No. 1:22-CV-8805-GHW, 2024 WL 3638254, at \*13 (S.D.N.Y. Aug. 2, 2024) (quoting *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)). This includes Rule 9(b)'s requirement to prove scienter even though scienter is not an element of a Section 11 claim. *See Coronel*, 2009 WL 174656, at \*16 (Rule 9(b) requires that the plaintiff "convey through factual allegations that the defendants made materially false statements, and that they did so with scienter."); *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 CIV. 8208 (RO), 2006 WL 1008138, at \*6 n.12 (S.D.N.Y. Apr. 18, 2006) ("When Section 11 and 12(a)(2) claims sound in fraud, however, the scienter requirements of Rule 9(b) of the Federal Rules of Civil Procedure apply."); *In re Chembio Diagnostics, Inc. Secs. Litig.*, 616 F.Supp.3d 192, 203 (E.D.N.Y. 2022) ("courts in this circuit have consistently applied *Rombach* to dismiss Securities Act claims that sound in fraud but fail to plead scienter" and collecting cases); *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1189-92 (S.D.N.Y. 1996) (dismissing Section 11 claim that sounded in fraud for failure to plead scienter); *IAM Nat'l Pension Fund v. Farfetch Limited*, No. 21-2752-cv, 2023 WL 2879304, at \*1 (2d Cir. Apr. 11, 2023) (summary order) ("although claims under Sections 11 and 12(a) of the Securities Act are ordinarily subject to the pleading standards of Federal Rule of Civil Procedure 8(a), allegations that sound in fraud are subject to the

12

heightened pleading standard of Rule 9(b) even though scienter is not an element of the Securities Act claims."). In considering whether a Section 11 claim sounds in fraud, the Court examines the complaint to ascertain whether (i) it contains a conclusory or "blanket" disclaimer of fraud; (ii) the allegations include "classic fraud language"; (iii) it fails to show any non-fraudulent basis for the claims; and (iv) whether the factual and fraudulent allegations are separated. *See Fernandes*, 2024 WL 3638254, at *13. Here, all four of these factors establish that the AC's Section 11 claim sounds in fraud.

*First*, the AC contains only conclusory disclaimers of fraud (*see* AC ¶¶ 32, 123). *See In re Axis Capital Holdings Ltd. Secs. Litig.*, 456 F.Supp.2d 576, 598 (S.D.N.Y. 2006) ("Plaintiffs' assertion that these claims are 'not based on and do[ ] not sound in fraud' ... does not alter this conclusion. Courts have repeatedly noted that the insertion of a simple disclaimer of fraud is insufficient."). *Second*, the AC contains language classically associated with fraud, such as the Corporate Defendants "obfuscated" or "downplay[ed]" information rendering the Registration Statement "materially false and/or misleading" as part of a "scheme to defraud," and that Underwriter Defendants "knew of" such false and/or misleading statements. (AC ¶¶ 11, 14, 56, 159.) *See Ladmen*, 2008 WL 4449280, at *12–13 (applying heightened pleading standard where complaint alleged that underwriters "conducted deficient due diligence," but "the allegations [we]re inextricably interwoven with suggestions that they deliberately turned a blind eye to known deficiencies in Globalstar's satellite network"); *In re Micro Focus Int'l Plc Sec. Litig.*, 1:18-cv-06763-ALC, 2020 WL 5817275, at *16 (S.D.N.Y. Sept. 29, 2020) (identifying allegations of "false and misleading" statements and "untrue statements of material facts" as examples of "'wording and imputations of the complaint [] classically associated with fraud'") (quoting *Rombach*, 355 F.3d at 172)).

13

*Third*, the AC does not show any non-fraudulent basis for the Section 11 claim. Rather, the AC pleads that the false and misleading statements were a result of the Corporate Defendants' alleged "scheme to defraud," and that the Underwriter Defendants reached an understanding with the Corporate Defendants about what to state in the Registration Statement, apparently knowing that such statements were false. (AC ¶¶ 56, 159.) These are allegations of fraud.

*Fourth*, the complaint superficially separates the Securities Act and Exchange Act counts, but the allegations make clear that they derive from a common pool of facts. (*Compare* AC ¶ 123 ("incorporates the foregoing ¶¶ 1-2, and 4-122 by reference") *with* AC ¶ 182 ("incorporates the foregoing ¶¶ 1, 3-30, 58-94, 102-116, and 138-181.")). Thus, "even though the Plaintiff does separate out the factual allegations supporting the fraud claims and negligence claims, the complaint contains a blanket disclaimer that the plaintiffs do not allege fraud for the purposes of the Securities Act claims; the allegations largely parrot the fraud allegations; and the complaint does not show any basis for the claims that is non-fraudulent." *See In re Gentiva Secs. Litig.*, 932 F. Supp. 2d 352, 393 (E.D.N.Y. 2013). Under such circumstances, Rule 9(b)'s heightened pleading standard applies. *See Grp. Holding Ltd. Sec. Litig.*, No. 22-CV-9864 (ER), 2024 WL 759246, at *10 (S.D.N.Y. Feb. 23, 2024) ("In cases involving nearly identical Securities Act and Exchange Act claims, such as the claims here, courts in this District apply the heightened pleading standard."); *see also In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F.Supp.2d 452, 492 (S.D.N.Y. 2006) (applying Rule 9(b) where Plaintiff "'repeat[ed] and realleg[ed] each and every allegation' in the Complaint then attempt[ed] to disclaim those allegations in the very next paragraph by stating, '[a]ll of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded' from the Section 11 count.").

14

**B.**      **The AC's Section 11 Claim Does Not Meet Rule 9(b)'s Pleading Standard.**

Because Plaintiff's Section 11 claim sounds in fraud, Plaintiff must state with particularity facts giving rise to a strong inference of scienter—*i.e.*, that the Corporate Defendants and Underwriter Defendants acted with fraudulent intent. *See Coronel*, 2009 WL 174656, at *16; *In re Chembio Diagnostics*, 616 F.Supp.3d at 203; *Geiger*, 933 F. Supp. at 1189-92; *IAM Nat'l Pension Fund*, No. 21-2752-cv, 2023 WL 2879304, at *1. That requires that plaintiff "provide[] a factual basis that gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Trustees of Plumber Pipefitters Natl. Pension*, 896 F. Supp. 342, 347 (S.D.N.Y. 1995) (emphasis added) (collecting cases). "Fraudulent intent is commonly pled by alleging facts showing a motive for committing fraud and a clear opportunity for doing so ... [or] by identifying factual circumstances that indicate conscious behavior by the defendant." *Id.* (emphasis added); *Police Fire Retirement System v. Safenet*, 645 F.Supp.2d 210, 241 (S.D.N.Y. 2009) (when a Securities Act claim sounds in fraud, a plaintiff is required to allege "fraudulent intent with more specificity.")

Here, Plaintiff does not even attempt to plead scienter with regards to the Section 11 Defendants. On the contrary, Plaintiff specifically disclaims any allegations of scienter. (AC ¶ 32 ("Plaintiff specifically disclaims any allegation of fraud, scienter, or recklessness").) Simply put, "Plaintiff has failed to comply with Rule 9(b) with regard to the Section 11 claim[] because [she] expressly disclaims all allegations of scienter and recklessness." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 394 (E.D.N.Y. 2013); *see also Caiafa v. Sea Containers Ltd.*, 06 Civ. 2565 (RMB), 06 Civ. 2670 (RMB), 06 Civ. 2744 (RMB), 06 Civ. 2776 (RMB), 06 Civ. 2909 (RMB), 06 Civ. 3099 (RMB), 06 Civ. 3563 (RMB), 06 Civ. 5655 (RMB), 2008 WL 11516813, at *6 (S.D.N.Y. May 15, 2008).

**C.      The AC Fails To Meet Rule 8's Basic Pleading Requirements As To The Underwriter Defendants.**

Even if Rule 9(b) did not apply—and it does—the single Section 11 claim against the Underwriter Defendants should still be dismissed because the only allegations about the Underwriter Defendants' conduct are entirely conclusory. Rule 8 still requires that allegations provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This must be done with facts and not with conclusory allegations. *See Dane*, 974 F.3d at 188–89 (court will not "credit conclusory allegations or legal conclusions couched as factual . . . allegations"); *White*, 20 Civ. 9971 (AT), 2021 WL 6052106, at \*2 (court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions").

The AC contains just *four* allegations specific to the Underwriter Defendants:

- The Underwriter Defendants obtained an indemnity agreement from Xiao-I (AC ¶ 54);

- "Representatives" of the Underwriter Defendants "assisted Xiao-I in planning the IPO" and conducted due diligence that gave them "access to internal, confidential, [and] current corporate information" (*Id*. ¶ 55);

- "Agents" of the Underwriter Defendants "reached understandings with Xiao's [*sic*] top executives as to" (i) IPO strategy, (ii) "the terms of the IPO," (iii) the language of the Registration Statement, (iv) the disclosures to be made in the Registration Statement, and (v) responses to SEC inquiries regarding the Registration Statement, all of which caused the Underwriter Defendants to know of the false and misleading statements (*Id*. ¶ 56); and,

16

- the Underwriter Defendants caused the Registration Statement to be filed with the SEC (*Id.* ¶ 57).

Absent are any allegations about the due diligence, what the Underwriter Defendants actually knew or should have known about, or how they were negligent. Plaintiff's four conclusory allegations about the Underwriter Defendants do not make out a claim even under Rule 8's liberal pleading standard.

**D.      The AC Fails To Meet Rule 8's Basic Pleading Requirements As To The Corporate Defendants.**

The AC contains no specific allegations against the Individual Defendants beyond the conclusory assertion that they "signed or authorized the signing of the Registration Statement", consented to be named as directors and "otherwise participated in the process which allowed the IPO to be successfully completed". (AC ¶¶ 35-41, 132-137.) Plaintiff makes no allegations about what these individuals knew, what actions they took, or how they participated in the alleged misconduct beyond their ministerial act of signing disclosure documents. Mere signature on a registration statement, without more, cannot establish liability under Section 11. *In re Virtus Investment Partners, Inc. Sec. Litig*, 195 F.Supp.3d 528, 542 (S.D.N.Y. 2016) ("[B]oilerplate allegations of control based on one's status as an officer or director" are generally insufficient to establish control"). Similarly, as to Xiao-I, the AC provides no factual allegations beyond boilerplate assertions that it "issued" allegedly false statements. Here, Plaintiff's bare allegations that the Corporate Defendants signed corporate documents do not satisfy even Rule 8's liberal pleading standard.

17

**E.** **The Section 11 Claim Also Fails Because Plaintiff Does Not Plead That Xiao-I's Registration Statement Contained An Untrue Statement Of A Material Fact.**

To state a claim under Section 11, the Complaint must allege the Section 11 Defendants made "an untrue statement of a material fact or omitted to state a material fact . . . necessary to make the statements therein not misleading." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010). "The test for whether a statement is materially misleading under Section 10(b) and Section 11 is 'whether the defendants' representations, taken together and in context, would have misled a reasonable investor.'" *Rombach v. Chang*, 355 F.3d 164, 172n.7 (2d Cir. 2004) (quoting (*I. Meyer Pincus & Assoc. v. Oppenheimer & Co.,* 936 F.2d 759, 761 (2d Cir. 1991)). Plaintiff's Section 11 and in-turn, Section 10 claims, fail because: (1) the financial statements were not false, as Xiao-I provided accurate financial data and complied with all disclosure requirements, (2) Xiao-I adequately disclosed all relevant risks regarding Circular 37 compliance, warning investors of the precise contingencies that later arose, and (3) even if any deficiencies existed, Plaintiff cannot establish materiality because the allegedly omitted information would not have significantly altered the total mix of information available to reasonable investors.

### 1. The Comprehensive Statements Of (Loss)/Income Were Not False.

Plaintiff fails to allege that any financial statements in the Registration Statement (and for purposes of Section 10, the 2022 20-F) are false. Initially, Regulation S-X did not require Xiao-I to disaggregate revenue and costs for each type of sale comprising its business. While Plaintiff treats Regulation S-X as dispositive, the regulation does not create the obligations Plaintiff attempts to impose. *See* 17 C.F.R. § 210.5-03. The regulation directs issuers to separately disclose revenue from five specified "classes" that constitute 10% or more of total revenue, including "(a) [n]et sales of tangible products ..., (b) operating revenues of public utilities or others; (c) income

18

from rentals; (d) revenues from services; and (e) other revenues." 17 C.F.R. § 210.5-03(1). When such breakdown is mandated under this provision, Regulation S-X additionally requires issuers to disclose the "costs and expenses" associated with each distinct class. 17 C.F.R. § 210.5-03(2). Regulation S-X provides no definition for "tangible products," "services," or "other revenue". Aside from hardware sales, which constituted less than 10% of Xiao-I's revenue in fiscal years 2020 and 2021 (RL Decl. Ex. B, 2022 Form 20-F at 76), Xiao-I's revenue originated from a single "class". During fiscal years 2020 and 2021, the Company generated the majority of its revenue through: (i) "sale of software products and service," consisting of "customized software products for specific needs;" (ii) "sale of cloud platform products," based on a "Software as a Service ("SaaS") and private cloud services" model; and (iii) "maintenance & support service," encompassing "future software updates, upgrades, and enhancements as well as technical product support services" for software contracts. (RL Decl. Ex. D, Amended 2022 20-F at 93, 98-99.) The category in Regulation S-X that reasonably covers Xiao-I's core business operations is "services" as they focused on delivering maintaining, and storing software. Alternatively, classifying the Company's software-related sales as "tangible products" would yield the same result.

Even if Defendants' violated this highly technical SEC rule, Plaintiff concedes that Xiao-I's reported revenue was facially accurate, thereby defeating any Section 11 claim premised on a material misstatement. *See Willard v. UP Fintech Holding Ltd.,* 527 F.Supp.3d 609, 618 (S.D.N.Y. 2021) ("[I]t is well established that a violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data."); *In re Initial Pub. Offering Sec. Litig.,* 358 F.Supp.2d 189, 210 (S.D.N.Y. 2004) ("The disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future."; *In re Coty Inc. Sec. Litig.,* No. 14-cv-919, 2016 WL 1271065, at *8 (S.D.N.Y. Mar. 29, 2016)

19

(dismissing challenge to accurate revenue growth disclosures); *Boca Raton Firefighters & Police Pension Fund v. Bahash,* 506 F. App'x 32, 38-39 (2d Cir. 2012) (similar); *see In re Duane Reade Inc. Sec. Litig.,* No. 02-cv-6478, 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2002) ("disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future").

To the extent Plaintiff alleges a violation of Section 11 or 10(b) based on Xiao-I not including its technology development services as a separate revenue source in the Registration Statement, the truth of a statement made in the Registration Statement must be "adjudged by the facts as they existed when the registration statement became effective." *Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC,* No. 08-cv-7062, 2010 WL 4642554, at *11 (S.D.N.Y. Nov. 17, 2010); *see also Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir. 2000) (corporate officials are "only responsible for revealing those material facts reasonably available to them"). Xiao-I only decided to report technology development services revenue separately when finalizing its 2022 financials, explaining to the SEC that while technology development services was previously grouped with sale of software products, the substantial increase in technology development services prominence during fiscal year 2022 warranted separate reporting. (RL Decl. Ex. C, SEC Response at 2-4.) The SEC did not inquire further. Plaintiff's claims "cannot based on a 'backward-looking assessment' of the registration statement." *In re TVIX Sec. Litig.,* 25 F.Supp.3d 444, 450 (S.D.N.Y. 2014), *aff'd*, 588 F. App'x 37 (2d Cir. 2014). "[T]he federal securities law impose no obligation on an issuer to disclose forward-looking information." *Vacarro v. NewSource Energy Partners,* No. 15-cv-8954, 2016 WL 7373799, at *4 (S.D.N.Y. Dec. 19, 2016).

20

**2.    Xiao-I Disclosed The Relevant Risks Regarding Circular 37 Compliance.**

The AC's allegations regarding inadequate disclosure of risks associated with Chinese shareholders' non-compliance with certain Chinese registration requirements are without merit. "[A]t the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed." *In re Keyspan Corp. Sec. Litig.*, 383 F.Supp.2d 358, 377 (E.D.N.Y. 2003); *see also Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F.Supp.3d 385, 395 (S.D.N.Y. 2022) ("[W]hen a registration statement warns of the exact risk that later materialized, a [S]ection 11 claim will not lie as a matter of law."). "To state a claim under Item 105, an issuer must know, at the time of the IPO, about an undisclosed risk factor that could seriously affect its present or future business." *Wandel v. Gao*, 590 F.Supp.3d 630, 646 (S.D.N.Y. 2022). Here, Xiao-I's fulsome and accurate disclosures foreclose Plaintiff's claim of a material omission.

Contrary to Plaintiff's allegations, the Registration Statement specifically warned that non-compliance with Circular 37 could restrict the Company's ability to use IPO proceeds for their intended purposes. As Plaintiff concedes, the Registration Statement disclosed that Chinese shareholders' failure to comply with Circular 37 "may result in restrictions being imposed on part of foreign exchange activities of the offshore special purpose vehicles, including restrictions on its ability to receive registered capital." (AC ¶ 99.) This language necessarily encompasses restrictions on the Company's ability to utilize IPO proceeds, as those proceeds constitute registered capital that must be transferred through the foreign exchange mechanisms. The Registration Statement further warned that "our PRC subsidiary may be prohibited from distributing its profits and proceeds from any reduction in capital, share transfer or liquidation to us, and we may be restricted in our ability to contribute additional capital to our PRC subsidiary"

if shareholders failed to complete registration. (AC ¶ 100.) This disclosure plainly encompasses the risk that IPO proceeds could be restricted due to Circular 37 non-compliance.

The Company's consistent disclosure is further evidenced by the 2022 20-F, which reiterated the same Circular 37 risks while providing updated information about the Company's progress in addressing them. The 2022 20-F disclosed that the Company "intend[s] to use the net proceeds from the offering for research and development, investment in technology infrastructure, marketing and branding, and other capital expenditure, and other general corporate purpose" and noted that "WFOE has successfully opened a new capital account with Bank of Ningbo." (¶ 93.) Crucially, this same filing acknowledged that "some of our shareholders are not in compliance with the PRC's regulations relating to offshore investment activities by PRC residents" and warned that "WFOE may be unable to open a new capital account with relevant banks within China according to their internal control policies and may be restricted from remitting funds or handling other foreign exchange businesses within China unless and until we remediate the non-compliance." (AC ¶ 93.)

The AC fails to allege falsity for contingent risk warnings. "When the omitted information concerns a contingent or speculative event, 'the materiality of those events depends on a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.'" *Lau v. Opera Ltd.*, 527 F.Supp.3d 537, 554 (S.D.N.Y. 2021) (*quoting Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir. 2001)). Plaintiff's claim that these disclosures were misleading because they used the word "may" rather than describing a certainty deeply misunderstands securities law. (AC ¶ 99.) The relevant inquiry is "whether the facts alleged in the Complaint evince that the Company knew or had reason to believe, at the time the ... Registration Statement [was] filed, that the statement was untrue."

22

*Coronel v. Quanta Cap. Holdings Ltd.*, No. 07 CIV. 1405(RPP), 2009 WL 174656, at *13 (S.D.N.Y. Jan. 26, 2009). Here, the AC contains no allegations that Xiao-I knew with certainty that Circular 37 non-compliance would prevent use of IPO proceeds and indeed, the subsequent events demonstrate that the Company was ultimately able to remedy the situation and access the funds. Accordingly, Defendants disclosed the "material events and uncertainties known to management that [were] reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition," 17 C.F.R. § 229.303(a), and discussed "material factors that make an investment in [Xiao-I] speculative or risky," 17 C.F.R. § 229.105(a), Plaintiff fails to plead a violation of Item 105 of Regulation S-K. (*See* AC ¶¶ 14, 89-101.)

### 3.    Defendants' Circular 37 Risk Disclosures Are Protected By The PSLRA's Safe Harbor For Forward-Looking Statements.

Defendants' statements concerning Circular 37 compliance are protected by the PSLRA's safe harbor because they are forward-looking and accompanied by meaningful cautionary language. Under the PSLRA's safe harbor, a defendant "shall not be liable with respect to any forward-looking statement" if (1) the forward-looking statement is "identified" as such and "accompanied by meaningful cautionary statements," or (2) the forward-looking statement is "immaterial," or (3) the plaintiff "fails to prove that the forward-looking statement ... if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(A)–(B). "Because the statute is written in the disjunctive, statements are protected by the safe harbor if they satisfy any one of these three categories." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010); *see also In re WEBMD Health Corp. Sec. Litig.*, No. 11 Civ. 5382(JFK), 2013 WL 64511, at *7 (S.D.N.Y. Jan. 2, 2013). Under the bespeaks caution doctrine, "alleged misrepresentations in a stock offering are immaterial as a

23

matter of law [if] it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).

Here, Xiao-I's risk disclosures regarding Circular 37 compliance constitute classic forward-looking statements. The challenged statements warned that non-compliance "may result in restrictions" and that shareholders "may be subject to penalties"—language that is inherently predictive and conditional. (AC ¶¶ 99-100.) These statements concerned potential future regulatory consequences and operational challenges, making them quintessential forward-looking statements under the PSLRA. Moreover, these forward-looking statements were accompanied by cautionary language that fully satisfied the safe harbor requirements. The Registration Statement and 2022 20-F contained an extensive "Cautionary Statement Regarding Forward-Looking Statements" that identified enumerated forward-looking statements and warned investors that "actual results may differ materially from those expressed or implied in the forward-looking statements" due to various risk factors, including "changes in government policies and regulation." (RL Decl. Ex. A, Registration Statement at 83-84; Ex. D, 2022 20-F at vii.) The cautionary statement specifically directed investors to the "Risk Factors" section, where the Circular 37 compliance risks were disclosed in detail. This cautionary framework provides exactly the type of meaningful warning that renders forward-looking statements protected under the PSLRA.

The PSLRA safe harbor also "specifies an 'actual knowledge' standard for forward-looking statements," which means that "the scienter requirement for forward-looking statements is stricter than for statements of current fact." *In re Weight Watchers International Inc Sec. Litig.*, 504 F.Supp.3d 224, 253 (S.D.N.Y. 2020). Plaintiff has made no allegation that Defendants possessed actual knowledge that their conditional warnings about potential Circular 37 consequences were

24

false when made. Indeed, subsequent events vindicated these cautionary statements when regulatory challenges temporarily arose, were disclosed, and ultimately resolved successfully, exactly as the forward-looking statements contemplated through their use of conditional language. Accordingly, Defendants' statements concerning Circular 37 compliance are protected by the PSLRA's safe harbor.

### 4.      Xiao-I's Disclosures Were Not Materially Misleading.

Dismissal is also warranted because Plaintiff fails to allege that any of the statements challenged in the AC were materially misleading. *First*, none of the allegedly omitted financial information affected the Xiao-I's net revenue or reported gross margin. A fact is material only if "there is a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *In re Duke Energy Corp. Sec. Litig.*, 282 F.Supp.2d 158, 160 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004). In assessing the materiality of a change in financials, courts must look to the change "in the context of the company's total operations," not "based on the change in the line item alone." *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2020 WL 1508748, at *9 (S.D.N.Y. Mar. 30, 2020). "[C]onclusory statement[s] that 'the changes in financial results were material to investors' [are] not sufficient" to state a Securities Act claim. *Yaroni*, 600 F. Supp. 3d at 402-03.

The problem with Plaintiff's materiality theory is that she seeks to transform accounting classifications into securities violations without demonstrating any impact on the metrics that would actually matter to investors. Although the SEC did not require Xiao-I to do so, the Company filed the Amended 2022 20-F, supplementing its Consolidated Statement of Operations and Comprehensive (Loss)/Income with a breakdown of costs of revenues by product and service categories, while the total net revenues remained the same as previously reported. (AC ¶¶ 104-

106.) Xiao-I's overall financial performance remained identical before and after the Amended 2022 20-F. This unchanged bottom line undermines any claim that reasonable investors would have made different decisions based on knowing whether certain revenue streams were internally categorized as software sales versus technology development services. Such granular breakdowns do not rise to the level of material omissions under federal securities law when the aggregate financial picture remains consistent and truthful. *See Yaroni*, 600 F. Supp. 3d at 402 (fact that "gross profit remained the same before and after the restatement" supported immateriality of alleged financial misstatement); *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 38 (2d Cir. 2017) (company's omission immaterial where it provided other growth indicators because "[a] more accurate indicator of the company's performance [] is [company's] total revenue and total income"). Without any allegation that the reclassified information contradicted the Company's disclosed business trajectory or financial health, Plaintiff has failed to establish the substantial likelihood that reasonable investors would view these internal categorizations as significantly altering their investment decision.

*Second*, the Circular 37 risk disclosures described in the AC were not misleading for the reasons stated above, namely, Xiao-I disclosed the precise risks that were allegedly omitted, and, to the extent Plaintiff's contend such disclosure failed to warn of additional risks or uncertainties, such risks ***never materialized***. Accurate risk warnings preclude liability even when the warned-of risks later materialize. *See Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 180, 184-86 (E.D.N.Y. 2017) (dismissing Securities Act claims where "defendants openly acknowledged that [they] faced compliance challenges" and "warned investors of the significant risk"), *aff'd*, 731 F. App'x 35 (2d Cir. 2018). The Amended 2022 20-F disclosed that "WFOE has successfully opened a new capital account with Bank of Ningbo" and that "we were able to transfer the rest of the IPO proceeds from

26

overseas to WFOE for VIE's product development and operations through both WFOE's new capital account with Bank of Ningbo and WFOE's pre-existing capital account with Agricultural Bank of China." (AC ¶ 108.) The risk warning was accurate. The non-compliance created potential restrictions that the Company ultimately navigated successfully. Therefore, Plaintiff has failed to adequately plead materiality.

## II.     PLAINTIFF'S SECTION 10 CLAIM SHOULD BE DISMISSED.

The first element of a Section 10(b) claim—material misstatement or omission—overlaps with the materiality and falsity issues addressed above and fails for all the foregoing reasons. Additionally, Plaintiff cannot satisfy the heightened requirements unique to Section 10(b) claims: scienter and loss causation. Plaintiff has not alleged facts showing that the Section 10 Defendants (Xiao-I, CEO Yuan, and CFO Weng) had "both motive and opportunity to commit fraud" or such conditions constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Nor does the AC contain any allegations specific to CEO Yuan or CFO Weng. Finally, the Plaintiff has not alleged any causal connection between the alleged misstatements and the claimed economic losses.

### A.     The AC Fails To Plead Scienter.

Plaintiff's AC with respect to her Section 10 claim suffers from a fatal defect by failing to "state with particularity facts giving rise to a strong inference that" Xiao-I, CEO Yuan or CFO Weng "acted with" scienter. 15 U.S.C. §78u– 4(b)(2). An "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. "[G]eneric and conclusory allegations based upon rumor or conjecture are undisputedly insufficient to satisfy the heightened pleading standard." *Campo v. Sears Holdings Corp.*, 635 F.Supp.2d 323, 336 (S.D.N.Y. 2009), *aff'd*, 371 F. App'x 212 (2d Cir. 2010). Thus, a pleading that lacks particular facts supporting involvement

27

in the alleged fraud will not meet "even a relaxed standard". *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987).

Plaintiff does not plead scienter based on motive and opportunity as she does not allege that the Section 10 Defendants benefitted in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198. It must be noted that Plaintiff makes no real claim as to how CEO Yuan or CFO Weng would have "personally" or "concretely" benefitted by any of the alleged acts or omissions detailed in the AC. While the AC groups together the Company, CEO Yuan, and CFO Wang and classifies them as the "Exchange Act Defendants" (AC ¶¶ 142, 144), the AC is devoid of any specific scienter allegations directed toward CEO Yuan or CFO Wang. The AC generically alleges that these individual officers had "knowledge of the details of Xiao-I's internal affairs", "control of the statements of Xiao-I", and "artificially inflated" the Company's securities, but makes no real claim as to how either individual would have benefitted from the purported fraud. (AC at ¶¶ 187-188.) This last motive has been "consistently rejected as insufficient in securities fraud pleading." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196–97 (2d Cir. 2008). And allegations of scienter that are "based on motives possessed by virtually all corporate insiders, including ... the desire to ... sustain the appearance of corporate profitability, or of the success of an investment" are similarly insufficient. *Id*.; *see also N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15 CIV. 6034 (RJS), 2016 WL 5794774, at *20 (S.D.N.Y. Sept. 30, 2016) (plaintiff cannot plead motive to defraud by alleging goals possessed by virtually corporate insiders); *ECA*, 553 F.3d at 198.

In any event, Plaintiff's allegations that the Company's need for cash flow evidences motive to commit fraud is not compelling. Referencing the Registration Statement, the AC alleges

28

that the Company was highly motivated to obtain capital for research and development to remain competitive in the market. Without more (such as stock sales or other evidence of pecuniary gain by insiders), such general motives undermine scienter because "[m]otives that are generally possessed by most corporate directors and officers do not suffice" to support a strong inference of fraudulent intent. *In re N. Telecom Ltd. Secs. Litig.*, 116 F.Supp.2d 446, 462 (S.D.N.Y. 2000); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). If scienter could be pleaded that basis alone, "virtually every company in the United States that experiences a downturn ... would be forced to defend securities fraud actions." *In re Lottery.com, Inc. Sec. Litig.*, 715 F.Supp.3d 506, 554 (S.D.N.Y. 2024) (rejecting plaintiff's argument that the desire to artificially inflate a company's stock price in advance of a public offering establishes motive); *Lipow v. Net1 UEPS Technologies, Inc.,* 131 F.Supp.3d 144, 162 (S.D.N.Y. 2015) (finding that generic corporate motives fail to establish that defendants "'benefited in some concrete and personal way from the purported fraud'").

Moreover, Plaintiff's theory contains a contradiction that undermines any inference of fraudulent intent. The AC alleges both that the Corporate Defendants knew they could not use IPO proceeds as stated and concealed compliance risks that would prevent using those very proceeds. If the Company was truly in such a "cash crunch" as the AC alleges and knew the IPO proceeds might be inaccessible due to regulatory issues, hiding risks that could prevent using IPO proceeds would serve no logical business purpose. This contradiction demonstrates that either: (1) Defendants did not know about the regulatory obstacles, undermining any claim of scienter, or (2) Defendants believed they could resolve the issues and use the proceeds, negating fraudulent intent about the stated use of funds. The AC's blatant contradiction negates any inference of fraudulent intent.

The AC fails to allege motive or opportunity regarding the Loss/Income Statement and purported Regulation S-X violations. The AC merely contends that adhering to Section 210.5-03(a) while omitting Section 210.5-03(b) demonstrates intentional non-compliance by the Section 10 Defendants. This bare allegation of accounting irregularities, without more, cannot establish scienter. Accounting irregularities alone are insufficient to state a securities fraud claim without evidence of "corresponding fraudulent intent." *Davidoff v. Farina*, No. 04 Civ. 7617 (NRB), 2005 WL 2030501 at *16 (S.D.N.Y. Aug. 22, 2005) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). Even assuming that a Regulation S-X violation occurred, the AC lacks any corresponding evidence of fraudulent intent.

The alleged violation involved a minor, technical accounting presentation issue that the Company corrected when it filed the Amended 2022 20-F. Critically, this amendment had no effect on the Company's total net revenues, which severely undercuts any inference of fraud. Courts have generally found evidence of recklessness only when a company's financial restatement materially impacts income. *See e.g., Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc.,* No. 09 Civ. 6966 (JGK), 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) (restatement with only modest impact on corporate income insufficient to establish scienter); *In re Atlas Airworldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474, 488 (S.D.N.Y 2004) (scienter inference alleged where systemic accounting abuses resulted in public misrepresentation of financial condition and was not just a "hyper-technical accounting" error). Here, the absence of any impact on net income from either the Amended 2022 20-F or the Form 6-K filing demonstrates that this was a technical correction, not evidence of fraudulent intent.

### B.    The AC Fails To Plead Loss Causation.

Plaintiff's loss causation allegations against the Section 10 Defendants are likewise insufficient. To establish loss causation, "a plaintiff must allege ... that the subject of the fraudulent

30

statement or omission was the cause of the actual loss suffered ... *i.e.,* that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). Establishing loss causation is critical because Section 10(b) is not meant to "provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005).  The basis for dismissal of the AC's loss causation allegations can be summarized as follows:

| Alleged Corrective Disclosure | Alleged Stock Impact | Basis For Dismissal |
|---|---|---|
| **Amended 2022 20-F and SEC Response on August 10, 2023 disclosed**: (1) technology and software services gross margin, and (2) that Xiao-I successfully transferred most IPO proceeds. | ADS price fell $3.07 per ADS (38%) over two trading days following the disclosure. | • **Mixed information**: any alleged stock drop cannot be attributable to "concealed" information.<br>• **Alternative Market Factors**: no isolation of price movement from broader market conditions or company-specific news. |
| **Form 6-K disclosed**: six-month costs breakdowns for ended June 30, 2023 | ADS price fell $0.30 (14.22%) to close at $1.81 on September 25, 2023. | • **Not "corrective"**: Form 6-K reported revenue and unrelated to the alleged misstatements.<br>• **Alternative Market Factors**: no isolation of price movement from broader market conditions or company-specific news. |

The AC focuses on the stock price decline purportedly resulting from the market's reaction to the Amended 2022 20-F and Form 6-K, filed on August 10, 2023 and September 25, 2023 respectively (AC ¶171.). The AC fails to allege that these "corrective disclosures" actually caused Plaintiff's

economic losses or that they "reveal the falsity of an alleged misstatement." *In re Omnicom Group, Inc. Secs. Litig.,* 541 F.Supp.2d 546, 552 (S.D.N.Y. 2008). The Amended 2022 20-F announced positive developments that the Company had successfully accessed IPO proceeds despite Circular 37 risks and provided additional revenue detail with identical total amounts. (AC ¶¶ 104-108.) The September 25, 2023 Form 6-K reported routine earnings for a period after the Registration Statement and Amended 2022 20-F and contained no information that would deem this disclosure "corrective". (AC ¶ 171.) "[I]t must be the materialization of the concealed risk that caused the plaintiff's loss." *In re Rhodia S.A. Securities Litigation*, 531 F.Supp.2d 527, 545 (S.D.N.Y. 2007). Here, no concealed risk materialized. The purported "corrective disclosures" either announced successful risk resolution or provided routine business updates unrelated to the alleged misstatements. Without establishing that the subject of the alleged misstatements caused the actual losses suffered, dismissal is warranted.

## III.    PLAINTIFF'S SECTIONS 15 AND 20(a) CLAIMS SHOULD BE DISMISSED.

The AC does not sufficiently plead control person liability under Section 15 against the Section 11 Defendants or Section 20(a) against the Section 10 Defendants. A claim for control person liability under Section 20(a) must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *AT&T Commc'ns Inc. v. Shaar Fund, Ltd.*, 93 F.3d 87, 108 (2d Cir. 2011). Similarly, "the success of a claim under section 15 relies, in part, on a plaintiff's ability to demonstrate primary liability under section 11." *In re Morgan Stanley*, 592 F.3d at 358. As set forth above, the AC fails to show a primary violation by the Defendants. The AC also fails to allege that any individual Defendant was a "culpable participant" in the alleged fraud, as it does not plead scienter as to a specific

32

individual defendant or with particularity. *See, e.g., Cohen v. Stevanovich*, 722 F.Supp.2d 416, 435

(S.D.N.Y. 2010). Consequently, Plaintiff has failed to state a Section 15 or Section 20(a) claim.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Plaintiff's Amended Complaint in its entirety and with prejudice.

Dated: New York, New York                    Respectfully submitted,
       June 9, 2025


  */s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio
Nicole Khalouian
**STINSON LLP**
100 Wall Street, Suite 201
New York, New York 10005
Phone: 646.883.7675
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Xiao-I Corporation, Hui Yuan, Wei Weng, Wenjing Chen, Xiaomei Wu, Jun Xu, Zhong Lin, and H. David Sherman*

  */s/ Andrew L. Van Houter*
Andrew L. Van Houter
Christian J. Clark
**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
(212) 248-3140
andrew.vanhouter@faegredrinker.com
christian.clark@faegredrinker.com

*Attorneys for Defendants AC Sunshine Securities LLC, SBI China Capital Financial Services Limited, Prime Number Capital LLC and Guotai Junan Securities (Hong Kong) Limited*

**CERTIFICATE OF COMPLIANCE**

I, Richard J.L. Lomuscio, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c), that the foregoing Memorandum of Law was prepared using Microsoft Word and does not exceed 35 pages pursuant to Judge Woods's Order granting Defendants' leave to file a consolidated Motion. (ECF No. 66.)

Dated: New York, NY
      June 9, 2025

*/s/ Richard J.L. Lomuscio*