**STINSON**

Richard J.L. Lomuscio
**PARTNER**

DIRECT: 646.883.7675
OFFICE: 646.883.7471

richard.lomuscio@stinson.com

July 14, 2025

**BY ECF**
The Honorable Gregory H. Woods
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, New York 10007

      Re:    *Shiyao v. Xiao-I Corporation* **et al, 1:24-cv-07837-GHW**

Dear Judge Woods:

In accordance with Rule 2(E)(i) of Your Honor's Individual Rules of Practice in Civil Cases, Defendants Hui Yuan, Wei Weng, Wenjing Chen, Xiaomei Wu, Jun Xu, Zhong Lin, H. David Sherman (collectively, the "Individual Defendants"), and Xiao-I Corporation ("Xiao-I" or "Company", and together with the Individual Defendants, "Defendants"), respectfully submit this request for a pre-motion conference regarding Defendants' anticipated motion to dismiss Lead Plaintiff Qiao Shiyao's ("Plaintiff") Second Amended Complaint ("SAC") (ECF No. 77) for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2).

After Defendants moved to dismiss the Amended Complaint (ECF Nos. 67-69), Plaintiff elected to file the SAC. The SAC does not cure the deficiencies identified in Defendants' prior motion. Plaintiff's amendments are futile and do not remedy the pleading failures that warranted dismissal of Plaintiff's original claims.

     A.    ***Plaintiff Still Fails to Plead Material Misrepresentation or Omission (Section 11, Section 15, Section 10(b), Rule 10b-5, and Section 20(a) Claims).*** The SAC's core theory remains unchanged despite superficial pleading adjustments. While Plaintiff now attempts to frame the claims as "omissions" rather than affirmative misstatements, the SAC still fails to establish materiality for the alleged Regulation S-X violations. Plaintiff's reframing of claims as pure omissions fails because "the subject matter of the alleged statements must relate closely enough to the allegedly omitted information such that a reasonable investor might have drawn inferences about the omitted information because of the statement." *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, No. 22 Civ. 9174, 2024 WL 1330047, at *11 (S.D.N.Y. Mar. 28, 2024); *see also In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 272–73 (S.D.N.Y. 2021). Plaintiff alleges that presenting aggregate cost data rather than disaggregated information is material because investors were unable to view "gross margin measures by product or service revenue class" and were thus "left in the dark as to which of Xiao-I's revenue segments were least/most profitable," calling into question management's transparency about the direction of the Company. (SAC ¶ 89.) Plaintiff provides no explanation for why gross margin breakdowns by business segment would materially impact investment decisions when investors had complete information about total profitability, revenue growth, and business model. *See Peifa Xu v. Gridsum Holding Inc.*, 2020 WL 1508748, at *9 (S.D.N.Y. Mar. 30, 2020) (plaintiffs failed to plead

July 14, 2025
Page 2

why a reasonable investor would consider the line item change material to an investment decision). The SAC's allegation that investors were in the dark and transparency was called into question is Plaintiff's characterization on financial reporting. *See Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 622 (S.D.N.Y. 2021) (rejecting allegations that registration statement "painted a rosy picture of the continuous and unfailing upward trend" and "attempted to assure investors of the continuous and unfailing growth" because "these words appear nowhere in the Registration Statement; instead, they are Plaintiffs' own characterizations"). Critically, Xiao-I's financial figures were facially accurate, and any alleged violation "cannot be premised upon a company's disclosure of accurate historical data,'" *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763 (JMF), 2018 WL 481883, at *9 (S.D.N.Y. Jan. 18, 2018) (internal quote omitted).

Likewise, the SAC's Circular 37 risk disclosure claims remain inadequate. The SAC alleges that the Registration Statement and 2022 20-F failed to disclose "the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with Circular 37 Registration, including the Company's potential inability to use Offering proceeds for its intended business purposes." (SAC ¶ 164.) But, the Registration Statement warned that non-compliance "may result in restrictions being imposed on part of foreign exchange activities of the offshore special purpose vehicles, including restrictions on its ability to receive registered capital", shareholders "may be subject to penalties", and that the "failure to comply with Circular 37 registration may result on restrictions being imposed ... including restrictions on its ability to receive registered capital as well as additional capital." (SAC ¶ 93.) The Company's subsequent filings continued transparent disclosure, with the 2022 20-F reiterating Circular 37 risks that "some of our shareholders are not in compliance with the PRC's regulations relating to offshore investment activities by PRC residents" and warned that "WFOE may be unable to open a new capital account with relevant banks within China", "may be restricted from remitting funds or handling other foreign exchange businesses within China unless and until we remediate the non-compliance" and added that as a result, "currently, we are unable to use most of the IPO proceeds for product development and company operations." (SAC ¶ 95.) The Amended 2022 20-F then disclosed positive developments, noting that "WFOE has successfully opened a new capital account" and that the Company was "able to transfer the rest of the IPO proceeds from overseas" for product development and operations. (SAC ¶ 98.)

This language necessarily encompasses the risk Plaintiff claims was omitted—restrictions on IPO proceeds, which constitute registered capital transferred through foreign exchange mechanisms. "When a registration statement warns of the exact risk that later materialized, a [s]ection 11 claim will not lie as a matter of law." *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013). Moreover, conditional disclosures, including Xiao-I's statement that it intends to use net proceeds for research and development constitute forward-looking statements protected by the PSLRA's safe harbor. *See Slayton v. Am. Exp. Co.*, 604 F.3d 758, 767-75 (2d Cir. 2010). In any event, Plaintiff does not allege materiality where the disclosed risks were remediated and did not prevent the Company's objectives.

**B.      _Plaintiff's Scienter Allegations Remain Insufficiently Pleaded (Section 11, Section 10(b), Rule 10b-5, Section 15 and Section 20(a) Claims)._** The SAC's scienter allegations suffer from the same deficiencies as the amended complaint, despite adding details about the Company's cash position. Allegations that CEO Yuan and CFO Weng "had different incentives from a generic corporate insider" because "they knew they were at risk of losing their jobs without the IPO" (SAC ¶ 170) simply describe ordinary business concerns shared by virtually all corporate insiders facing financial pressure. *See ECA, Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009) ("the desire to maximize the corporation's profits does not strengthen the inference of an intent

July 14, 2025
Page 3

to defraud"). The SAC's additions regarding R&D growth and competitive pressures merely elaborate on the same insufficient theory that financial need constitutes fraud. Further, the SAC's allegation that Defendants "rolled the dice and hoped for the best" (SAC ¶ 175) regarding compliance with Circular 37 does not rise to the level of Rule 9(b)'s particularity requirements requiring "strong circumstantial evidence of conscious misbehavior or recklessness". *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007).

The SAC's Section 11 claim continues to sound in fraud as it only makes stylistic changes while retaining allegations of deliberate concealment, motive, and intentional misconduct, thereby failing Rule 9(b)'s particularity requirements. Despite the SAC's boilerplate disclaimer, the SAC alleges Defendants consciously "considered both Sections 210.5-03(b)(1) and (b)(2) ... and intentionally or recklessly chose not to comply" (SAC ¶ 167), were "desperate for capital" (SAC ¶¶ 160, 166-67), and deliberately failed to disclose Circular 37 related risks (SAC ¶ 175). Even applying Rule 8's notice pleading standard, these conclusory allegations fail to meet the threshold for a viable Section 11 claim. *See Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020) (courts do not credit conclusory allegations or legal conclusions presented as factual allegations).

**C.    *Plaintiff Fails To Plead Loss Causation (Section 10(b), Rule 10b-5, and Section 20(a) Claims).*** The SAC's loss causation allegations remain virtually unchanged. Plaintiff does not allege "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered". *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001); *see also Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (Section 10(b) protects against economic losses that misrepresentations actually cause, not broad insurance against market losses). The SAC focuses on stock price declines following August 10, 2023 and September 25, 2023 disclosures but does not allege that these were "corrective" or revealed falsity of an alleged misstatement. The August 10, 2023 disclosures actually provided positive news that the Company was able to transfer the IPO proceeds (*see* SAC ¶ 113), and the September 25, 2023 Form 6-K reported routine earnings unrelated to the alleged omissions. Plaintiff cannot establish loss causation when purported corrective disclosures either announced successful risk resolution or provided routine updates unrelated to the alleged fraud.

**D.    *Plaintiff's Control Person Liability Claims Should Be Dismissed (Section 15 and Section 20(a) Claims).*** The SAC's control person liability claims fail because they require an underlying primary violation, which is absent here.

* * *

For the foregoing reasons, Defendants believe that the SAC should be dismissed and respectfully request a pre-motion conference to address their proposed motion.

Respectfully submitted,

Richard J.L. Lomuscio

cc:  All Counsel of Record (via ECF)