UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QIAO SHIYAO, Individually and on Behalf of
All Others Similarly Situated,

                    Plaintiff,

      v.

XIAO-I CORPORATION, HUI YUAN, WEI
WENG, WENJING CHEN, XIAOMEI WU,
JUN XU, ZHONG LIN, H. DAVID
SHERMAN, GREGORY K. LEE, GKL
CORPORATE/SEARCH, INC., AC
SUNSHINE SECURITIES LLC, SBI CHINA
CAPITAL FINANCIAL SERVICES
LIMITED, PRIME NUMBER CAPITAL LLC
and GUOTAI JUNAN SECURITIES (HONG
KONG) LIMITED,

                    Defendants.

Case No. 24-cv-7837 (GHW)

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

**STINSON LLP**
Richard J.L. Lomuscio
Nicole Khalouian
140 Broadway, Suite 2330
New York, New York 10005
(646) 883-7675
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Xiao-I
Corporation, Hui Yuan, Wei Weng, Wenjing
Chen, Xiaomei Wu, Jun Xu, Zhong Lin, and
H. David Sherman*

**FAEGRE DRINKER BIDDLE & REATH LLP**
Andrew L. Van Houter
Christian J. Clark
1177 Avenue of the Americas, 43rd Floor
New York, NY 10036
(212) 248-3140
andrew.vanhouter@faegredrinker.com
christian.clark@faegredrinker.com

*Attorneys for Defendants AC Sunshine Securities
LLC, SBI China Capital Financial Services Limited,
Prime Number Capital LLC and Guotai Junan
Securities (Hong Kong) Limited*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 3

LEGAL STANDARDS ................................................................................................... 8

ARGUMENT ................................................................................................................. 12

I.     PLAINTIFF'S SECTION 11 CLAIMS SHOULD BE DISMISSED............................. 13

       A.     The SAC Is Subject To Rule 9(b)'s Heightened Pleading Standard ................... 13

       B.     The SAC's Section 11 Claim Does Not Meet Rule 9(b)'s Pleading
              Standard ....................................................................................................... 15

       C.     The SAC Fails To Meet Rule 8's Basic Pleading Requirements............................
              As To The Underwriter Defendants........................................................... 16

       D.     The SAC Fails To Meet Rule 8's Basic Pleading Requirements ...........................
              As To The Corporate Defendants ................................................................ 17

       E.     The Section 11 Claim Fails Because Plaintiff Does Not Plead Any
              Material Misrepresentation Or Omission.................................................... 18

              1.     Plaintiff Does Not Allege That Xiao-I's Comprehensive
                     Statements Of (Loss)/Income Statements Contained A Material
                     Omission ........................................................................................ 19

              2.     Xiao-I Disclosed The Relevant Risks Regarding
                     Circular 37 Compliance ................................................................. 21

              3.     Defendants' Circular 37 Risk Disclosures Are Protected By The
                     PSLRA's Safe Harbor For Forward-Looking Statements ......................... 24

              4.     Xiao-I's Disclosures Were Not Materially Misleading ........................... 26

II.    PLAINTIFF'S SECTION 10 CLAIM SHOULD BE DISMISSED................................. 28

       A.     The SAC Fails To Plead Scienter ........................................................................ 29

       B.     Plaintiff Cannot Establish Reliance Under Fraud-On-The-Market
              Or *Affiliated Ute* Theories................................................................................ 32

       C.     The SAC Fails To Plead Loss Causation............................................................. 33

III.   PLAINTIFF'S SECTIONS 15 AND 20(a) CLAIMS SHOULD BE DISMISSED. ........ 35

CONCLUSION................................................................................................................. 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995)............................................................................................9

*Altayyar v. Etsy, Inc.*,
242 F. Supp. 3d 161 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018).....................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................8

*AT&T Commc'ns Inc. v. Shaar Fund, Ltd.*,
93 F.3d 87 (2d Cir. 2011)........................................................................................11, 35

*In re Atlas Airworldwide Holdings, Inc. Sec. Litig.*,
324 F.Supp.2d 474 (S.D.N.Y. 2004).........................................................................31

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..................................................................................3, 10, 29

*In re Axis Capital Holdings Ltd. Secs. Litig.*,
456 F.Supp.2d 576 (S.D.N.Y. 2006)..........................................................................14

*In re Bank of Am. AIG Disclosure Securities Litigation*,
980 F.Supp.2d 564 (S.D.N.Y. 2013).........................................................................11

*Basic v. Levinson*,
485 U.S. 224 (1988)...................................................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................8

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
506 F. App'x 32 (2d Cir. 2012) .................................................................................21

*Caiafa v. Sea Containers Ltd.*,
06 Civ. 2565 (RMB), 06 Civ. 2670 (RMB), 06 Civ. 2744 (RMB), 06 Civ.
2776 (RMB), 06 Civ. 2909 (RMB), 06 Civ. 3099 (RMB), 06 Civ. 3563
(RMB), 06 Civ. 5655 (RMB), 2008 WL 11516813 (S.D.N.Y. May 15, 2008).....................16

*Campo v. Sears Holdings Corp.*,
635 F.Supp.2d 323 (S.D.N.Y. 2009), *aff'd*, 371 F. App'x 212 (2d Cir. 2010).....................29

*Castellano v. Young & Rubicam, Inc.*,
257 F.3d 171 (2d Cir. 2001).......................................................................................23

*Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*,
No. 08-cv-7062, 2010 WL 4642554 (S.D.N.Y. Nov. 17, 2010)..............................................21

*In re Chembio Diagnostics, Inc. Secs. Litig.*,
616 F.Supp.3d 192 (E.D.N.Y. 2022) .............................................................................13, 15

*Cohen v. Stevanovich*,
722 F.Supp.2d 416 (S.D.N.Y. 2010)..............................................................................35

*Coronel v. Quanta Capital Holdings Ltd.*,
No. 07 Civ. 1405 (RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ....................9, 13, 15, 24

*In re Coty Inc. Sec. Litig.*,
No. 14-cv-919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)...................................................20

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020)...............................................................................8, 16, 17

*Davidoff v. Farina*,
No. 04 Civ. 7617 (NRB), 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ..............................31

*DeJesus v. HF Mgmt. Servs., LLC*,
726 F.3d 85 (2d Cir. 2013).............................................................................................8

*Delfonce v. Eltman Law, P.C.*,
No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249 (E.D.N.Y. Feb. 15, 2017),
*aff'd*, 712 F. App'x 17 (2d Cir. 2017)............................................................................3

*Devaney v. Chester*,
813 F.2d 566 (2d Cir. 1987)..........................................................................................29

*DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*,
413 F. Supp. 3d 187 (S.D.N.Y. 2019).............................................................................19

*In re Duane Reade Inc. Sec. Litig.*,
No. 02-cv-6478, 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2002)...........................................21

*In re Duke Energy Corp. Sec. Litig.*,
282 F.Supp.2d 158 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004).......................26

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................................33

*ECA v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)............................................................................10, 11, 29, 30

*In re Express Scripts Holding Co. Sec. Litig.*,
No. 16 CIV. 3338 (ER), 2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ..................................11

*Fernandes v. Centessa Pharms. PLC*,
No. 1:22-CV-8805-GHW, 2024 WL 3638254 (S.D.N.Y. Aug. 2, 2024)..........................13, 14

*GAMCO Invs., Inc. v. Vivendi Universal, S.A.*,
838 F.3d 214 (2d Cir. 2016).......................................................................................................9

*Geiger v. Solomon-Page Group, Ltd.*,
933 F. Supp. 1180 (S.D.N.Y. 1996)...................................................................................13, 15

*In re Gentiva Secs. Litig.*,
932 F.Supp.2d 352 (E.D.N.Y. 2013) ..................................................................................15, 16

*Grp. Holding Ltd. Sec. Litig.*,
No. 22-CV-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024)......................................15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)................................................................................................................10

*Halperin v. eBanker USA.com, Inc.*,
295 F.3d 352 (2d Cir. 2002).....................................................................................................25

*In re Hi-Crush Partners L.P. Securities Litigation*,
No. 12-CV-8557, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ..............................................22

*IAM Nat'l Pension Fund v. Farfetch Limited*,
No. 21-2752-cv, 2023 WL 2879304 (2d Cir. Apr. 11, 2023).....................................13, 15, 16

*In re Initial Pub. Offering Sec. Litig.*,
358 F.Supp.2d 189 (S.D.N.Y. 2004).......................................................................................20

*Jiajia Luo v. Sogou, Inc.*,
465 F.Supp.3d 393 (S.D.N.Y. 2020)..................................................................................22, 25

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)...............................................................................................10, 31

*In re Keyspan Corp. Sec. Litig.*,
383 F.Supp.2d 358 (E.D.N.Y. 2003) .......................................................................................22

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
No. 07 CIV. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)..........................9, 14

*Lau v. Opera Ltd.*,
527 F.Supp.3d 537 (S.D.N.Y. 2021).......................................................................................23

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005).....................................................................................................10

*In re Lions Gate Entm't Corp. Sec. Litig.*,
165 F.Supp.3d 1 (S.D.N.Y. 2016) (June 7, 2016)....................................................10

*Lipow v. Net1 UEPS Technologies, Inc.*,
131 F.Supp.3d 144 (S.D.N.Y. 2015)........................................................................29

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011).....................................................................................19

*In re Lottery.com, Inc. Sec. Litig.*,
715 F.Supp.3d 506 (S.D.N.Y. 2024)........................................................................31

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*,
501 F.Supp.2d 452 (S.D.N.Y. 2006)........................................................................15

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
No. 03 CIV. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)..................13

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010)...............................................................................19, 35

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty.
Ret. Ass'n v. MDC Partners, Inc.*,
No. 15 CIV. 6034 (RJS), 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)...............30

*In re N. Telecom Ltd. Secs. Litig.*,
116 F.Supp.2d 446 (S.D.N.Y. 2000)........................................................................30

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000).............................................................................21, 31

*In re Omnicom Group, Inc. Secs. Litig.*,
541 F.Supp.2d 546 (S.D.N.Y. 2008)........................................................................34

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
595 F.3d 86 (2d Cir. 2010).......................................................................................19

*Peifa Xu v. Gridsum Holding Inc.*,
No. 18 Civ. 3655 (ER), 2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020)..................27

*In re PetroChina Co. Ltd. Sec. Litig.*,
120 F.Supp.3d 340 (S.D.N.Y. 2015) *aff'd sub nom. Klein* v. *PetroChina Co.*,
644 Fed.Appx. 13 (2d Cir. 2016).............................................................................11

*Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco,
Inc.*,
No. 09 Civ. 6966 (JGK), 2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) ...............31

*Police Fire Retirement System v. Safenet*,
645 F.Supp.2d 210 (S.D.N.Y. 2009)......................................................................................16

*In re ProShares Tr. Sec. Litig.*,
728 F.3d 96 (2d Cir. 2013).....................................................................................................9

*In re Rhodia S.A. Securities Litigation*,
531 F.Supp.2d 527 (S.D.N.Y. 2007)....................................................................................34

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..................................................................................................13

*Saskatchewan Healthcare Employee's Pension Plan v. KE Holdings*,
718 F.Supp.3d 344 (S.D.N.Y. 2024).....................................................................................19

*Slayton v. Am. Exp. Co.*,
604 F.3d 758 (2d Cir. 2010)..................................................................................................25

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017)....................................................................................................27

*Suez Equity Investors, L.P. v. Toronto–Dominion Bank*,
250 F.3d 87 (2d Cir. 2001)....................................................................................................33

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
531 F.3d 190 (2d Cir. 2008)..................................................................................................30

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).......................................................................................................10, 29

*In re TVIX Sec. Litig.*,
25 F.Supp.3d 444 (S.D.N.Y. 2014), *aff'd*, 588 F. App'x 37 (2d Cir. 2014)...........................21

*Vacarro v. NewSource Energy Partners*,
No. 15-cv-8954, 2016 WL 7373799 (S.D.N.Y. Dec. 19, 2016)............................................21

*In re Virtus Investment Partners, Inc. Sec. Litig*,
195 F.Supp.3d 528 (S.D.N.Y. 2016).....................................................................................18

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)....................................................................................................32

*Wandel v. Gao*,
590 F.Supp.3d 630 (S.D.N.Y. 2022)......................................................................................22

*In re WEBMD Health Corp. Sec. Litig.*,
No. 11 Civ. 5382(JFK), 2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) .......................................25

*In re Weight Watchers International Inc Sec. Litig.*,
  504 F.Supp.3d 224 (S.D.N.Y. 2020)........................................................................................26

*White v. UMG Recordings, Inc.*,
  20 Civ. 9971 (AT), 2021 WL 6052106 (S.D.N.Y. Dec. 21, 2021)......................................8, 16

*Willard v. UP Fintech Holding Ltd.*,
  527 F.Supp.3d 609 (S.D.N.Y. 2021).......................................................................................20

*Yaroni v. Pintec Tech. Holdings Ltd.*,
  600 F.Supp.3d 385 (S.D.N.Y. 2022)...................................................................................22, 27

**Statutes**

15 U.S.C. § 77k.................................................1, 6, 7, 9, 11, 13, 14, 15, 16, 18, 19, 20, 21, 22, 35

15 U.S.C. § 77o........................................................................................................1, 6, 11, 35

15 U.S.C. § 78j.....................................................1, 2, 6, 8, 9, 10, 12, 19, 28, 29, 30, 31, 32, 33, 35

15 U.S.C. § 78t.........................................................................................................1, 6, 11, 35

15 U.S.C. §78u-4 ...............................................................................................1, 10, 20, 24, 29

**Rules**

17 C.F.R. § 210.5-03...............................................................................................4, 19, 20, 31

17 C.F.R. § 229.105 ...................................................................................................22, 24

17 C.F.R. § 229.303 .....................................................................................................24

17 C.F.R. § 240.10b-5.............................................................1, 2, 6, 9, 10, 21, 28, 32, 33

Fed. R. Civ. P. 8...........................................................................................................16, 17, 18

Fed. R. Civil P. 9.............................................................................1, 2, 8, 9, 10, 12, 13, 15, 16

Fed R. Civil P. 12........................................................................................................1, 8

Defendants Xiao-I Corporation ("Xiao-I" or the "Company"), Hui Yuan ("CEO Yuan"), Wei Weng ("CFO Weng"), Wenjing Chen, Xiaomei Wu, Jun Xu, Zhong Lin, H. David Sherman (collectively, the "Corporate Defendants", and excluding Xiao-I, the "Individual Defendants"), AC Sunshine Securities LLC, Guotai Junan Securities (Hong Kong) Limited, Prime Number Capital LLC, and SBI China Capital Financial Services Limited ("Underwriter Defendants" and together with the Corporate Defendants, "Defendants"[1]), by and through their undersigned attorneys, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss ("Motion"[2]) pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6), 9(b), and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u–4(b)(2), the Second Amended Complaint ("SAC") (ECF No. 77) filed by Lead Plaintiff Qiao Shiyao ("Plaintiff"). For the reasons set forth herein, Defendants' Motion should be granted dismissing the claims brought pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77o) (individually, "Section 11" and "Section 15"), as well as Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and United States Securities and Exchange Commission ("SEC") Rule 10b-5 (17 C.F.R. § 240.10b-5) (individually, "Section 10(b)", "Section 20(a)", and "Rule 10b-5").

## **PRELIMINARY STATEMENT**

The SAC suffers from the same incurable pleading deficiencies that undermined the amended complaint ("AC"). Despite Plaintiff's attempted repackaging—reframing the claims as omissions or half-truths, adding boilerplate language about Underwriter Defendants' alleged

---

[1] On June 2, 2025, prior defendants Gregory K. Lee and GKL Corporate/Search, Inc. were voluntarily dismissed from this action. (ECF No. 64.)

[2] While the Corporate Defendants and Underwriter Defendants maintain distinct legal positions, the parties have consolidated their arguments into this single brief for judicial efficiency and to avoid duplicative briefing. The Court granted Defendants leave to file a consolidated Motion on August 28, 2025. (ECF No. 85.)

failure to make reasonable investigations, including marginal financial metrics regarding Xiao-I's cash position, and making conclusory allegations that CEO Yuan and CFO Weng had different incentives from generic corporate insiders due to potential job loss—the SAC remains a flawed recasting of securities claims that should be dismissed with prejudice. Rather than oppose Defendants' motion to dismiss the AC, Plaintiff elected to file this SAC, which repeats the same meritless allegations with only cosmetic changes and other superficial additions that fail to cure the underlying defects.

The SAC's core allegation is that certain statements in Xiao-I's Registration Statement disclosed in connection with its initial public offering ("IPO") of American Depositary Shares ("ADSs"), and the Company's April 28, 2023 Annual Report on Form 20-F for the year ended December 31, 2022 ("2022 20-F") omitted material information that was later disclosed in an amendment made to Xiao-I's Annual Report on Form 20-F ("Amended 2022 20-F"). The SAC challenges two categories of alleged omissions found in Xiao-I's Registration Statement and the 2022 20-F: (1) detailed breakdowns of revenue costs within the Comprehensive Statements of (Loss)/Income, and (2) risk disclosures related to shareholders' compliance with certain Chinese regulatory requirements ("Circular 37").

Plaintiff fails to state a claim for the following five reasons: *First*, the SAC does not satisfy Rule 9(b)'s heightened pleading requirements, which apply to claims that sound in fraud. *Second*, Plaintiff cannot establish any actionable omission because the Company had no affirmative legal obligation to disclose the allegedly omitted information, provided accurate financial data, and adequately disclosed all relevant risks. *Third*, the Section 10(b) claims fail because the SAC does not allege actual reliance. *Fourth*, Plaintiff has not pleaded scienter sufficient to establish the requisite intent to deceive or reckless disregard for the truth. *Fifth*, Plaintiff's loss causation

allegations fail because the purported "corrective disclosures" either announced positive developments or provided updates unrelated to any alleged omissions. Accordingly, the SAC should be dismissed with prejudice.

## **FACTUAL BACKGROUND**[3]

***Xiao-I's Business.*** Xiao-I is a Cayman Islands company headquartered in the People's Republic of China ("PRC") that operates a global artificial intelligence company. (SAC ¶¶ 4, 59.) The ADSs trade on NASDAQ under the ticker symbol "AIXI". (SAC ¶ 33.)

***The IPO.*** On December 20, 2022, Xiao-I filed a registration statement on Form F-1 with the SEC in connection with its initial public offering, which was declared effective on March 8, 2023. (RL Decl. Ex. A[4]; SAC ¶ 61.) On March 9, 2023, Xiao-I conducted its IPO, issuing 5.7 million ADSs at $6.80 per ADS for net proceeds of over $36 million. (SAC ¶ 62.) On March 13, 2023, the Company filed a prospectus on Form 424B4 that incorporated and formed part of the Registration Statement. (SAC ¶ 63.) The Registration Statement disclosed the Company's revenue from four business lines: (i) sale of software products and service; (ii) maintenance and support service; (iii) sale of hardware products; and (iv) sale of cloud platform products. (RL Decl. Ex. A at 96-97; SAC ¶ 65.) The Company also provided a breakdown of costs of revenues by components of staff costs, cloud hosting fees, cost of materials, and others. (RL Decl. Ex. A at 96-97.) The Registration Statement further contained risk disclosures regarding certain Chinese shareholders'

---

[3] These facts reflect the allegations in the Complaint and "documents attached as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, [and] documents integral to the complaint." *Delfonce v. Eltman Law, P.C.*, No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249, at *2 (E.D.N.Y. Feb. 15, 2017), *aff'd*, 712 F. App'x 17 (2d Cir. 2017). The Court may also consider "legally required public disclosure documents filed with the SEC." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[4] Exhibits cited herein are attached to the accompanying Declaration of Richard J.L. Lomuscio, dated September 2, 2025 ("RL Decl."). All citations and internal quotations marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

non-compliance with Circular 37 registration requirements, warning that non-compliance "may result in restrictions being imposed on part of foreign exchange activities of the offshore special purpose vehicles, including restrictions on its ability to receive registered capital", "the shareholders may be subject to penalties", and that the "failure to comply with Circular 37 registration may result in restrictions being imposed . . . including restrictions on its ability to receive registered capital as well as additional capital." (RL Decl. Ex. A at 57-58; SAC ¶ 93.) The Company cautioned that it cannot provide assurances that all Chinese resident shareholders will complete the registration process as required by Circular 37. (RL Decl. Ex. A at 57-58; SAC ¶ 93.)

*The 2022 20-F.* On April 28, 2023, Xiao-I filed its annual report on Form 20-F for the year ended December 31, 2022. (RL Decl. Ex. B; SAC ¶ 78.) In this filing, the Company separated its previously combined "sale of software products and services" into two categories: "sale of software products" and "technology development services." (SAC ¶ 80.) Presentation of revenue and costs otherwise remained the same as in the Registration Statement. The 2022 20-F disclosed certain operational challenges related to Circular 37 compliance, stating that "some of our shareholders are not in compliance with the PRC's regulations relating to offshore investment activities by PRC residents" and warned that "WFOE is unable to open a new capital account with banks within China", "may be restricted from remitting funds or handling other foreign exchange businesses within China unless and until we remediate the non-compliance" and added that as a result, "currently, we are unable to use most of the IPO proceeds for product development and company operations" due to the inability to open a new capital account as previously disclosed. (SAC ¶ 95.)

*The SEC Comment Letter.* On July 27, 2023, the SEC issued a comment letter to Xiao-I regarding the 2022 20-F. (SAC ¶ 15.) The SEC referred the Company to Section 210.5-03(b)(2)

4

of Regulation S-X when requesting that it revise the presentation of costs of products and services, and inquired why technology development services was presented as a separate line item in the 2022 20-F but not in the Registration Statement. (RL Decl. Ex. C at 2.) Noting the disclosure regarding the inability "to open a new capital account in China" and use "IPO proceeds for product development," the SEC observed that the risk description was subsidiary focused and requested clarification on broader implications for the Company's inability to use IPO proceeds as intended. (RL Decl. Ex. C at 1-2; SAC ¶ 97.)

*Amended 2022 20-F And Xiao-I's Response To The SEC.* On August 10, 2023, Xiao-I filed an amendment to its 2022 Form 20-F and a response letter to the SEC. (RL Decl. Exs. C, D; SAC ¶¶ 17, 18.) The Amended 2022 20-F provided a breakdown of revenues costs by product and service categories while the total net revenues and cost of revenues remained the same as previously reported. (SAC ¶¶ 101-102, 109.) The filing disclosed positive developments regarding Circular 37 compliance, announcing that "WFOE has successfully opened a new capital account with Bank of Ningbo" and "we were able to transfer the rest of the IPO proceeds from overseas to WFOE for VIE's product development and operations." (SAC ¶ 98.) In its response letter, Xiao-I explained that technology development services "represent the Company's future revenue growth source" and that the 77% increase in such services from 2021 to 2022 warranted separate disclosure. (SAC ¶ 84.)

*The Form 6-K.* On September 25, 2023, Xiao-I filed a Form 6-K with a press release announcing its financial results for the six months ended June 30, 2023. (RL Decl. Ex. E; SAC ¶ 23.) This filing provided additional detail regarding Xiao-I's revenue and cost structure by business segment for the interim period. (SAC ¶ 23, 115.)

***This Action And The SAC.*** Plaintiff commenced this action in October 2024 (ECF No. 1.) Following the Court's order appointing lead plaintiff (ECF No. 30), Plaintiff filed the AC on March 5, 2025, alleging violations under Sections 11 and 15 of the Securities Act against all Defendants ("Section 11 Defendants") and Sections 10(b) and 20(a) claims under the Exchange Act against Xiao-I and Individual Defendants CEO Yuan and CFO Weng ("Section 10 Defendants"), based on alleged misstatements in Xiao-I's Registration Statement and subsequent SEC filings concerning financial statements and Circular 37 risk disclosures. (ECF No. 37.)

Defendants moved to dismiss the AC. (ECF Nos. 67-69.) Plaintiff did not oppose Defendants' motion but instead elected to file the SAC. (ECF No. 77.)  The SAC repeats the same allegations against Defendants that were alleged in the AC, including:

- Section 11 Claims. Plaintiff's Section 11 and Section 15 claims under the Securities Act are based on alleged omissions in Xiao-I's Registration Statement. (SAC ¶¶ 49-53, 100-143.) These claims challenge two categories of Registration Statement disclosures: (1) the Consolidated Statements of Operations and Comprehensive (Loss)/Income for the quarters and years ended December 31, 2020 and December 31, 2021 and for the six months ended June 30, 2021 and June 30, 2022 (*see* SAC ¶¶ 76-77); and (2) Xiao-I's risk factor disclosures concerning certain of the Company's Chinese shareholders' compliance with Circular 37 registration requirements (*see* SAC ¶¶ 90-99).

- Section 10 Claims. Plaintiff also brings Section 10(b) and Section 20(a) claims under the Exchange Act against the Section 10 Defendants. (SAC ¶¶ 144-205.) These claims are based on the same two categories of alleged omissions—now apparently the result of fraud—but span both the Registration Statement and subsequent SEC filings. In addition, the Section 10(b) claims challenge: (1) the Consolidated Statements of Operations and Comprehensive (Loss)/Income for the quarters and year ended December 31, 2022 (*see* SAC ¶¶ 152-154); and (2) Circular 37 risk factor disclosures in both the Registration Statement (*see* SAC ¶¶ 155-157) and the 2022 20-F. (*see* SAC ¶¶ 160-162.)

The SAC's "new" allegations are limited to: further boilerplate language about Underwriter Defendants' failure to make reasonable investigations (*compare* AC ¶¶49-53 with SAC ¶¶49-58); reframing of the claims as pure omissions or half-truths rather than affirmative misstatements (*compare* AC ¶¶95-101 *with* SAC ¶¶100-106); marginal financial metrics regarding Xiao-I's cash

position (*compare* AC ¶160 *with* SAC ¶166); conclusory allegations that CEO Yuan and CFO Weng had different incentives from generic corporate insiders due to potential job loss (*compare* AC ¶¶160-165 *with* SAC ¶¶166-173); and various other immaterial changes.

Plaintiff's claims can be summarized as follows:

| SECTION 11 CLAIMS (Registration Statement Only) | |
|---|---|
| **Disclosure** | **Alleged Omission** |
| Consolidated Statements of Operations and Comprehensive (Loss)/Income for quarters and years ended December 31, 2020 and December 31, 2021 and for six months ended June 30, 2021 and June 30, 2022. | Omission of breakdown of "cost of revenues" by product or service classes based on Xiao-I's business segments. |
| Circular 37 Risk Factor | *"Some of our shareholders are not in compliance with the PRC's regulations relating to offshore investment activities by PRC residents, and as a result, the shareholders may be subject to penalties..."*<br><br>*"Some of our beneficial owners, who are PRC residents, have not completed the Circular 37 Registration.... The Chinese resident shareholders' failure to comply with Circular 37 registration may result in restrictions being imposed on part of foreign exchange activities... In addition, the failure of the Chinese resident shareholders to complete Circular 37 registration may subject each of the shareholders to fines less than RMB50,000."* |

| SECTION 10 CLAIMS (Registration Statement and 2022 20-F) | |
|---|---|
| **Disclosure** | **Alleged False Statement or Omission** |
| Consolidated Statements of Operations and Comprehensive (Loss)/Income for quarters and year ended December 31, 2022. | Omission of breakdown of "cost of revenues" by product or service classes based on Xiao-I's business segments. |
| Circular 37 Risk Factor | *"Currently, we are unable to use most of the IPO proceeds for product development and company operations because we are unable to transfer the funds from Xiao-I Corporation to WFOE and then to the VIE* |

| SECTION 10 CLAIMS<br>(Registration Statement and 2022 20-F) | |
| --- | --- |
| **Disclosure** | **Alleged False Statement or Omission** |
| | *due to WFOE's inability to open a new capital account as discussed above."*<br><br>*"We intend to use the net proceeds from the offering for research and development, investment in technology infrastructure, marketing and branding, and other capital expenditure, and other general corporate purpose."* |

## LEGAL STANDARDS

**Rule 12(b)(6).** To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court will "accept as true all factual allegations and draw from them all reasonable inferences" but will not "credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020). "Although courts must draw all reasonable inferences in the plaintiff's favor and assume all well-pleaded factual allegations to be true, they are not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *White v. UMG Recordings, Inc.*, 20 Civ. 9971 (AT), 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021). "Pleadings that contain no more than conclusions . . . are not entitled to the assumption of truth otherwise applicable to complaints in the context of motions to dismiss." *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013). A complaint that relies on "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

**Rule 9(b).** Complaints sounding in fraud are subject to the heightened pleading standard under Rule 9(b). Pursuant to that rule, "a party must 'state with particularity the circumstances'

8

supporting an allegation of fraud." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 CIV. 0976 (LAP), 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008) (quoting Fed. R. Civ. P. 9(b)). That requires "that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Ladmen*, 2008 WL 4449280, at *11 (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995)). Rule 9(b) also requires that the plaintiff "convey through factual allegations that the defendants made materially false statements, and that they did so with scienter." *Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405 (RPP), 2009 WL 174656, at *16 (S.D.N.Y. Jan. 26, 2009).

*Section 11.* Under Section 11, any person who acquired a security under a registration statement that either (1) "contained an untrue statement of a material fact" or (2) "omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading" may sue every person who, *inter alia*, signed the registration statement, served as a director or partner in the issuer, or acted as an underwriter with respect to the security. 15 U.S.C. § 77k(a). "Liability attaches to a security's issuer, its underwriter, and certain other statutorily enumerated parties pursuant to section 11 . . . if any part of the operative registration statements" contained such a misstatement or omission. *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 101 (2d Cir. 2013).

*Section 10(b) and Rule 10b-5.* To state a claim under Section 10(b) and Rule 10b-5 for fraudulent misrepresentations, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GAMCO Invs., Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d

9

Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). These allegations must satisfy Rule 9(b) and the PSLRA. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Claims under both Section 10(b) and Rule 10b-5 require scienter—an intent to deceive, manipulate or defraud, to be proven. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).[5] To plead scienter, the PSLRA requires that the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter at the time they made the alleged misrepresentations or omissions. 15 U.S.C. §78u–4(b)(2) (emphasis added.) "To qualify as 'strong' ... an inference of scienter must be more than merely plausible or reasonable; it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314. Plaintiff must allege facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc.*, 493 F.3d at 99. Such facts must be alleged "with respect to each defendant." *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F.Supp.3d 1, 22 (S.D.N.Y. 2016) (June 7, 2016).

In order to plead scienter based on motive and opportunity, Plaintiff must "allege that [Defendants] benefitted in some concrete and personal way from the purported fraud." *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Plaintiff must plead particularized facts that demonstrate a "unique connection between the fraud and the [personal benefits]." *Id.* at 201 n. 6. Plaintiff must also plead specific facts showing that the benefits "could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

---

[5] *See also Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005).

When a plaintiff fails to allege motive, "the strength of [their] circumstantial allegations" of conscious misbehavior or recklessness generally must be "correspondingly greater." *ECA*, 553 F.3d 187, 198-99. To plead scienter based on conscious misbehavior, Plaintiff must allege "conduct ... that is at the least highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known . . . or so obvious that [Defendants] must have been aware of it." *In re PetroChina Co. Ltd. Sec. Litig*., 120 F.Supp.3d 340, 365-66 (S.D.N.Y. 2015) *aff'd sub nom. Klein* v. *PetroChina Co.*, 644 Fed.Appx. 13 (2d Cir. 2016) (summary order). To plead scienter based on recklessness Plaintiff must "specifically allege defendants' knowledge of facts or access to information contradicting defendants' public statements, or allege that defendants failed to check information that they had a duty to monitor." *In re Express Scripts Holding Co. Sec. Litig*., No. 16 CIV. 3338 (ER), 2017 WL 3278930, at *16 (S.D.N.Y. Aug. 1, 2017). To allege that an omission was the result of conscious misbehavior or recklessness, the complaint must "sufficiently allege that the defendants acted with reckless disregard for a known or obvious duty." *In re Bank of Am. AIG Disclosure Securities Litigation*, 980 F.Supp.2d, 564, 586 (S.D.N.Y. 2013).

*Sections 15 and 20(a).* Claims under Section 15 hinge on the success of claims under Sections 11, as Section 15 provides for liability of any person who, by or through stock ownership, agency, or otherwise, "controls any person" found liable under Sections 11. 15 U.S.C. § 77o. Similarly, the success of a claim under Section 20(a) relies on a plaintiff's ability to allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *AT&T Commc'ns Inc. v. Shaar Fund, Ltd.*, 93 F.3d 87, 108 (2d Cir. 2011).

11

## ARGUMENT

The SAC should be dismissed because it fails to meet basic federal pleading standards and alleges no actionable securities violations. Plaintiff's claims rest on: (1) the alleged omissions of cost revenue breakdowns that had no impact on the Company's financial performance, and (2) risk factor disclosures that warned of the precise contingencies that later arose. The basis for dismissal of the SAC can be summarized as follows:

| Alleged Issue | Basis For Dismissal |
|---|---|
| **Financial Statement:** Cost of Revenue Presentation | • **No Material Omission:** the aggregate cost figure was accurate and the omission of a detailed breakdown does not make the stated figure "false". Technical accounting presentation issues do not create liability.<br>• **No Scienter (Section 10)**: need for cash flow does not evidence fraud. Technical accounting irregularity is insufficient to satisfy scienter.<br>• **No Loss Causation (Section 10)**: information was already known to the market; not "corrective"; no isolation of alleged fraud. |
| **Circular 37 Disclosures:** Shareholder Compliance Issues | • **No False Statement:** risk factor adequately warned of the potential inability to use IPO proceeds. Full disclosure of Circular 37 complications provided transparency to investors. Xiao-I's intention to use the proceeds for stated business purposes is not false or misleading.<br>• **Forward-Looking Statement**: protected by the PSLRA safe harbor for good faith predictions.<br>• **No Scienter (Section 10):** real-time warnings show lack of fraudulent intent. Inconsistent allegations undermine inference of fraudulent intent.<br>• **No Loss Causation (Section 10):** risks were successfully resolved; no isolation of alleged fraud. |

The Registration Statement contains no false statements of material fact—only accurate financial data and prescient risk warnings that proved correct when regulatory challenges were successfully resolved. Moreover, Plaintiff fails to satisfy Rule 9(b)'s heightened pleading requirements for fraud-based claims and cannot establish reliance, scienter, or loss causation required for Section 10 violations. The Plaintiff's SAC should be dismissed.

## I.    PLAINTIFF'S SECTION 11 CLAIMS SHOULD BE DISMISSED.

Plaintiff's Section 11 claims against the Section 11 Defendants fail for two reasons. *First*, the SAC's Section 11 claim continues to sound in fraud, and therefore, does not meet Rule 9(b)'s heightened pleading standards. *Second*, Plaintiff fails to allege any actionable omission because the Registration Statement contained accurate financial information sufficient to inform investors, and the relevant filings adequately disclosed all relevant risks regarding Circular 37 compliance in language that proved accurate when the disclosed risks were ultimately resolved.

### A.    The SAC Is Subject To Rule 9(b)'s Heightened Pleading Standard.

It is well established that "'the heightened pleading standard of Rule 9(b) applies to Section 11 claims insofar as the claims are premised on allegations of fraud.'" *Fernandes v. Centessa Pharms. PLC*, No. 1:22-CV-8805-GHW, 2024 WL 3638254, at \*13 (S.D.N.Y. Aug. 2, 2024) (quoting *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)). This includes Rule 9(b)'s requirement to prove scienter even though scienter is not an element of a Section 11 claim.[6] In considering whether a Section 11 claim sounds in fraud, the Court examines whether the complaint (i) contains a conclusory or "blanket" disclaimer of fraud; (ii) includes "classic fraud language";

---

[6] *See Coronel*, 2009 WL 174656, at \*16 (Rule 9(b) requires that the plaintiff "convey through factual allegations that the defendants made materially false statements, and that they did so with scienter."); *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 CIV. 8208 (RO), 2006 WL 1008138, at \*6 n.12 (S.D.N.Y. Apr. 18, 2006) ("When Section 11 and 12(a)(2) claims sound in fraud, however, the scienter requirements of Rule 9(b) of the Federal Rules of Civil Procedure apply."); *In re Chembio Diagnostics, Inc. Secs. Litig.*, 616 F.Supp.3d 192, 203 (E.D.N.Y. 2022) ("courts in this circuit have consistently applied *Rombach* to dismiss Securities Act claims that sound in fraud but fail to plead scienter" and collecting cases); *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1189-92 (S.D.N.Y. 1996) (dismissing Section 11 claim that sounded in fraud for failure to plead scienter); *IAM Nat'l Pension Fund v. Farfetch Limited*, No. 21-2752-cv, 2023 WL 2879304, at \*1 (2d Cir. Apr. 11, 2023) (summary order) ("although claims under Sections 11 and 12(a) of the Securities Act are ordinarily subject to the pleading standards of Federal Rule of Civil Procedure 8(a), allegations that sound in fraud are subject to the heightened pleading standard of Rule 9(b) even though scienter is not an element of the Securities Act claims.").

(iii) fails to show any non-fraudulent basis for the claims; and (iv) separates the factual and fraudulent allegations. *See Fernandes*, 2024 WL 3638254, at *13. Here, all four of these factors establish that the SAC's Section 11 claim sounds in fraud.

*First*, the SAC contains only conclusory disclaimers of fraud. (*See SAC* ¶¶ 31.)[7] *Second*, the SAC retains language classically associated with fraud, such as the Company "obfuscated" or "downplay[ed]" information rendering the Registration Statement "materially misleading" as part of a "scheme to defraud," and that the Underwriter Defendants "reached understandings" with the Company's top executives, *i.e.* the alleged fraudsters, who were "concealing the adverse facts" "from investors." (SAC ¶¶ 53, 154, 155, 159, 164, 177.) Such fraud-based allegations remain "inextricably interwoven" throughout the complaint. *Ladmen*, 2008 WL 4449280, at *12–13 (applying heightened pleading standard where complaint alleged that underwriters "conducted deficient due diligence," but "the allegations [we]re inextricably interwoven with suggestions that they deliberately turned a blind eye to known deficiencies in Globalstar's satellite network"). *Third*, the SAC does not show any non-fraudulent basis for the Section 11 claim. Rather, the SAC pleads that the omissions rendered statements materially misleading as a result of the Corporate Defendants' alleged "scheme to defraud," and that the Underwriter Defendants reached an understanding with the Corporate Defendants about Registration Statement disclosures and having access to "internal" information about the omitted facts. (SAC ¶¶ 53, 56, 165.) These remain allegations that sound in fraud. In other words, Plaintiff is seeking to hold the Section 11 Defendants liable for language in the Registration Statement that Plaintiff simultaneously alleges

---

[7] *See In re Axis Capital Holdings Ltd. Secs. Litig.*, 456 F.Supp.2d 576, 598 (S.D.N.Y. 2006) ("Plaintiffs' assertion that these claims are 'not based on and do[ ] not sound in fraud' . . . does not alter this conclusion. Courts have repeatedly noted that the insertion of a simple disclaimer of fraud is insufficient.").

was chosen as the result of fraud.[8] *Fourth*, the SAC superficially separates the Securities Act and Exchange Act counts, but the allegations derive from a common pool of facts. (*Compare* SAC ¶ 128 ("incorporates the foregoing ¶¶ 1-2, and 4-127 by reference") *with* SAC ¶ 190 ("incorporates the foregoing ¶¶ 1, 3-30, 58-94, 59-99, 107-21, and 144-89."). Under such circumstances, Rule 9(b)'s heightened pleading standard applies.[9]

**B.    The SAC's Section 11 Claim Does Not Meet Rule 9(b)'s Pleading Standard.**

Because Plaintiff's Section 11 claim sounds in fraud, Plaintiff must state with particularity facts giving rise to a strong inference of scienter—*i.e.*, that the Corporate Defendants and Underwriter Defendants acted with fraudulent intent. *See Coronel*, 2009 WL 174656, at *16.[10] Plaintiff does not even attempt to do so but instead, "specifically disclaims any allegation of fraud, scienter, or recklessness" as to the Section 11 Defendants. (SAC ¶ 31.) Simply put, "Plaintiff has

---

[8] While the SAC superficially removes allegations about the Underwriter Defendants' knowledge of the fraud, the SAC still appears to plead, at best, that the Underwriter Defendants turned a blind eye to the fraud.  The Underwriter Defendants allegedly had "virtually unlimited access to internal corporate documents" that would have made the misleading statements apparent but instead "reached understandings with Xiao's top executives" about the disclosures. (SAC ¶ 53.) Such alleged willful blindness or recklessness sounds in fraud and triggers Rule 9(b). *See Ladmen*, 2008 WL 4449280, at *12-13.

[9] *See In re Gentiva Secs. Litig.*, 932 F.Supp.2d 352, 393 (E.D.N.Y. 2013) ("even though the Plaintiff does separate out the factual allegations supporting the fraud claims and negligence claims, the complaint contains a blanket disclaimer that the plaintiffs do not allege fraud for the purposes of the Securities Act claims; the allegations largely parrot the fraud allegations; and the complaint does not show any basis for the claims that is non-fraudulent."); *Grp. Holding Ltd. Sec. Litig.*, No. 22-CV-9864 (ER), 2024 WL 759246, at *10 (S.D.N.Y. Feb. 23, 2024) ("In cases involving nearly identical Securities Act and Exchange Act claims, such as the claims here, courts in this District apply the heightened pleading standard."); *see also In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F.Supp.2d 452, 492 (S.D.N.Y. 2006) (applying Rule 9(b) where Plaintiff "'repeat[ed] and realleg[ed] each and every allegation' in the Complaint then attempt[ed] to disclaim those allegations in the very next paragraph by stating, '[a]ll of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded' from the Section 11 count.").

[10] *See also In re Chembio Diagnostics*, 616 F.Supp.3d at 203; *Geiger*, 933 F. Supp. at 1189-92; *IAM Nat'l Pension Fund*, No. 21-2752-cv, 2023 WL 2879304, at *1.

failed to comply with Rule 9(b) with regard to the Section 11 claim[] because [she] expressly disclaims all allegations of scienter and recklessness." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d at 394.[11]

**C.    The SAC Fails To Meet Rule 8's Basic Pleading Requirements As To The Underwriter Defendants.**

Even if Rule 9(b) did not apply—and it does—the single Section 11 claim against the Underwriter Defendants should still be dismissed because Plaintiff's allegations about the Underwriter Defendants' conduct are entirely conclusory. Rule 8 still requires that allegations provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court will not "credit conclusory allegations or legal conclusions couched as factual . . . allegations[.]" *Dane*, 974 F.3d at 188–89.[12]

Here, the SAC retains four core allegations with respect to the Underwriter Defendants' conduct from the AC:

- The Underwriter Defendants obtained an indemnity agreement from Xiao-I (SAC ¶ 51);

- "Representatives" of the Underwriter Defendants "assisted Xiao-I in planning the IPO" and conducted due diligence that gave them "access to internal, confidential, [and] current corporate information concerning Xiao-I's most up-to-date operational and financial results and prospects" (SAC ¶ 52);

- "Agents" of the Underwriter Defendants "reached understandings with Xiao's [*sic*] top executives as to" (i) IPO strategy, (ii) "the terms of the IPO," (iii) the language of the Registration Statement, (iv) the disclosures to be made in the Registration Statement, and (v) responses to SEC inquiries regarding the Registration Statements (SAC ¶ 53); and

---

[11] *See also Caiafa v. Sea Containers Ltd.*, 06 Civ. 2565 (RMB), 06 Civ. 2670 (RMB), 06 Civ. 2744 (RMB), 06 Civ. 2776 (RMB), 06 Civ. 2909 (RMB), 06 Civ. 3099 (RMB), 06 Civ. 3563 (RMB), 06 Civ. 5655 (RMB), 2008 WL 11516813, at *6 (S.D.N.Y. May 15, 2008).

[12] *See also White*, 20 Civ. 9971 (AT), 2021 WL 6052106, at *2 (court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions").

16

- The Underwriter Defendants caused the Registration Statement to be filed with the SEC (SAC ¶ 58).

In addition, the SAC added four conclusory allegations about the Underwriter Defendants' supposed negligence:

- "The Registration was negligently prepared" (SAC ¶ 54);

- "None of the Securities Act Underwriting Defendants made a reasonable investigation" (SAC ¶ 55);

- "A reasonable investigation by the Securities Act Underwriting Defendants would have revealed that the Registration Statement omitted to state material facts required to be stated therein and necessary to make the statements therein not misleading" (SAC ¶ 56); and

- "The Securities Act Underwriter Defendants' failure to conduct a reasonable investigation was a substantial factor leading to the harm complained of herein" (SAC ¶ 57).

Notably absent are any allegations about the due diligence, what the Underwriter Defendants actually knew or should have known about, or how they were negligent. There are no allegations of red flags that the Underwriter Defendants ignored, only conclusory assertions of negligence. Plaintiff's claim against the Underwriter Defendants therefore fails even under Rule 8's more lenient pleading standard. *See Dane*, 974 F.3d at 188–89.

**D.      The SAC Fails To Meet Rule 8's Basic Pleading Requirements As To The Corporate Defendants.**

As with the AC, the SAC contains no specific allegations against the Individual Defendants beyond the conclusory assertion that they "signed or authorized the signing of the Registration Statement", and "otherwise participated in the process which allowed the IPO to be successfully completed." (SAC ¶¶ 32-40, 128-137.) The SAC's allegations against the Individual Defendants are formulaic:

17

- CEO Yuan: Alleged only to have "served as Xiao-I's Chairman of the Board of Directors and Chief Executive Officer" and signed the Registration Statement (SAC ¶ 34);

- CFO Weng: Alleged only to have "served as Xiao-I's Chief Financial Officer" and signed the Registration Statement (SAC ¶ 35);

- Directors Chen, Wu, Xu, Lin, and Sherman: Each alleged only to have been named as a "Director" or "Director-nominee" and signed written consents under Rule 438 to be named in the Registration Statement (SAC ¶¶ 36-40).

Plaintiff makes no allegations about what these individuals knew, what actions they took, or how they participated in the alleged misconduct beyond their ministerial act of signing disclosure documents. Mere signature on a registration statement, without more, cannot establish liability under Section 11. "[B]oilerplate allegations of control based on one's status as an officer or director" are generally insufficient to establish control. *In re Virtus Investment Partners, Inc. Sec. Litig*, 195 F.Supp.3d 528, 542 (S.D.N.Y. 2016). Similarly, as to Xiao-I, the SAC provides no factual allegations beyond boilerplate assertions that it "issued" alleged misleading statements. Here, Plaintiff's bare allegations that the Corporate Defendants signed corporate documents do not satisfy even Rule 8's liberal pleading standard.

### E. The Section 11 Claim Fails Because Plaintiff Does Not Plead Any Material Misrepresentation Or Omission.

Despite Plaintiff's attempt to reframe the allegations as omissions or half-truths, Plaintiff fails to identify any material omission that was actually required to be disclosed or necessary to prevent misleading statements. To state a claim under Section 11, the SAC must allege the Section 11 Defendants made "an untrue statement of a material fact or omitted to state a material fact . . . necessary to make the statements therein not misleading." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010). Only omitted information subject to "an affirmative legal disclosure obligation" or "necessary to prevent existing disclosures from being misleading"

18

is actionable. *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715–16 (2d Cir. 2011). "The key is the 'presence of a prior statement that otherwise is or will become materially misleading' because of the omission." *Saskatchewan Healthcare Employee's Pension Plan v. KE Holdings*, 718 F.Supp.3d 344, 377 (S.D.N.Y. 2024) (quoting, *DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 206 (S.D.N.Y. 2019)). An omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic v. Levinson*, 485 U.S. 224, 240 (1988).[13] Plaintiff's Section 11 and in-turn, Section 10 claims, fail because: (1) the financial statements were not false, as Xiao-I provided accurate financial data sufficient to inform investors, (2) Xiao-I adequately disclosed all relevant risks regarding Circular 37 compliance, warning investors of the precise contingencies that later arose, and (3) Plaintiff cannot establish materiality because the allegedly omitted information would not have significantly altered the total mix of information available to reasonable investors.

### 1. Plaintiff Does Not Allege That Xiao-I's Comprehensive Statements Of (Loss)/Income Statements Contained A Material Omission.

Plaintiff fails to allege that any omissions in the Registration Statement (and for purposes of Section 10, the 2022 20-F) constitute material omissions of legally mandated disclosures. While Plaintiff treats Regulation S-X as dispositive, the regulation does not create the affirmative obligations Plaintiff attempts to impose. *See* 17 C.F.R. § 210.5-03. The regulation directs issuers to separately disclose revenue from five specified "classes" that constitute 10% or more of total revenue, including "(a) [n]et sales of tangible products ..., (b) operating revenues of public utilities or others; (c) income from rentals; (d) revenues from services; and (e) other revenues." 17 C.F.R.

---

[13] *See also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010) ("[v]eracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers.").

§ 210.5-03(1). When such breakdown is mandated under this provision, Regulation S-X additionally requires issuers to disclose the "costs and expenses" associated with each distinct class. 17 C.F.R. § 210.5-03(2). Regulation S-X provides no definition for "tangible products," "services," or "other revenue". Aside from hardware sales, which constituted less than 10% of Xiao-I's revenue in fiscal years 2020 and 2021 (RL Decl. Ex. B, 2022 Form 20-F at 76), Xiao-I's revenue originated from: (i) "sale of software products and service," consisting of "customized software products for specific needs;" (ii) "sale of cloud platform products," based on a "Software as a Service ("SaaS") and private cloud services" model; and (iii) "maintenance & support service," encompassing "future software updates, upgrades, and enhancements as well as technical product support services" for software contracts. (RL Decl. Ex. D, Amended 2022 20-F at 93, 98-99.) Even accepting Plaintiff's new assertion that these streams constitute both "revenues from the sale of software products (which are tangible products or goods)" and "revenues from services" requiring separate cost disclosure (SAC ¶¶ 71-72), Plaintiff fails to adequately plead that Regulation S-X created any clear affirmative legal disclosure obligation. Indeed, Plaintiff concedes that Xiao-I's reported revenue was facially accurate, thereby defeating any Section 11 claim premised on a material omission. *See Willard v. UP Fintech Holding Ltd.,* 527 F.Supp.3d 609, 618 (S.D.N.Y. 2021) ("[I]t is well established that a violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data.").[14]

---

[14] *See also In re Initial Pub. Offering Sec. Litig.,* 358 F.Supp.2d 189, 210 (S.D.N.Y. 2004) ("The disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future."); *In re Coty Inc. Sec. Litig.,* No. 14-cv-919, 2016 WL 1271065, at *8 (S.D.N.Y. Mar. 29, 2016) (dismissing challenge to accurate revenue growth disclosures); *Boca Raton Firefighters & Police Pension Fund v. Bahash,* 506 F. App'x 32, 38-39 (2d Cir. 2012) (similar); *see In re Duane Reade Inc. Sec. Litig.,* No. 02-cv-6478, 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2002) ("disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future").

To the extent Plaintiff alleges a violation of Section 11 or 10(b) based on Xiao-I not including its technology development services as a separate revenue source in the Registration Statement, the truth of a statement made in the Registration Statement must be "adjudged by the facts as they existed when the registration statement became effective." *Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC,* No. 08-cv-7062, 2010 WL 4642554, at *11 (S.D.N.Y. Nov. 17, 2010).[15] Xiao-I only decided to report technology development services revenue separately when finalizing its 2022 financials, explaining to the SEC that while technology development services was previously grouped with sale of software products, the substantial increase in technology development services prominence during fiscal year 2022 warranted separate reporting and represents the Company's future revenue growth source. (RL Decl. Ex. C, SEC Response at 2-4.) The SEC did not inquire further. Plaintiff's claims "cannot based on a 'backward-looking assessment' of the registration statement." *In re TVIX Sec. Litig.,* 25 F.Supp.3d 444, 450 (S.D.N.Y. 2014), *aff'd*, 588 F. App'x 37 (2d Cir. 2014). "[T]he federal securities law impose no obligation on an issuer to disclose forward-looking information." *Vacarro v. NewSource Energy Partners,* No. 15-cv-8954, 2016 WL 7373799, at *4 (S.D.N.Y. Dec. 19, 2016).

### 2. Xiao-I Disclosed The Relevant Risks Regarding Circular 37 Compliance.

The SAC's allegations regarding inadequate disclosure of risks associated with Chinese shareholders' non-compliance with certain Chinese registration requirements are without merit. "[A]t the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed." *In re Keyspan Corp. Sec. Litig*., 383

---

[15] *See also Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir. 2000) (corporate officials are "only responsible for revealing those material facts reasonably available to them").

F.Supp.2d 358, 377 (E.D.N.Y. 2003).[16] "To state a claim under Item 105, an issuer must know, at the time of the IPO, about an undisclosed risk factor that could seriously affect its present or future business." *Wandel v. Gao*, 590 F.Supp.3d 630, 646 (S.D.N.Y. 2022).

Contrary to Plaintiff's allegations, the Registration Statement specifically warned that non-compliance with Circular 37 could restrict the Company's ability to use IPO proceeds for their intended purposes. As Plaintiff concedes, the Registration Statement disclosed that Chinese shareholders' failure to comply with Circular 37 "may result in restrictions being imposed on part of foreign exchange activities of the offshore special purpose vehicles, including restrictions on its ability to receive registered capital." (SAC ¶ 104.) This language necessarily encompasses restrictions on the Company's ability to utilize IPO proceeds, as those proceeds constitute registered capital that must be transferred through the foreign exchange mechanisms. The Registration Statement further warned that "our PRC subsidiary may be prohibited from distributing its profits and proceeds from any reduction in capital, share transfer or liquidation to us, and we may be restricted in our ability to contribute additional capital to our PRC subsidiary" if shareholders failed to complete registration. (SAC ¶ 105.) This disclosure plainly encompasses the risk that IPO proceeds could be restricted due to Circular 37 non-compliance.[17]

---

[16] *See also Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F.Supp.3d 385, 395 (S.D.N.Y. 2022) ("[W]hen a registration statement warns of the exact risk that later materialized, a [S]ection 11 claim will not lie as a matter of law.").

[17] *See Jiajia Luo v. Sogou, Inc.*, 465 F.Supp.3d 393, 411-12 (S.D.N.Y. 2020) (dismissing Section 11 claims where Chinese internet company's registration statement warned that it could not assure PRC governmental authorities will not issue new regulations affecting operations and that the company may have difficulty determining the type of content that may result in liability); *In re Hi-Crush Partners L.P. Securities Litigation*, No. 12-CV-8557, 2013 WL 6233561, at *11 (S.D.N.Y. Dec. 2, 2013) (dismissing Section 11 claim based on later-occurring events because "corporation's duty to disclose is adjudged by the facts as they existed when the registration statement became effective").

The Company's consistent disclosure is further evidenced by the 2022 20-F, which reiterated the same Circular 37 risks while providing updated information about the Company's progress in addressing them. The 2022 20-F disclosed that the Company "intend[s] to use the net proceeds from the offering for research and development, investment in technology infrastructure, marketing and branding, and other capital expenditure, and other general corporate purpose" and noted that "WFOE has successfully opened a new capital account with Bank of Ningbo." (SAC ¶ 98.) This same filing acknowledged that "some of our shareholders are not in compliance with the PRC's regulations relating to offshore investment activities by PRC residents" and warned that "WFOE may be unable to open a new capital account with relevant banks within China according to their internal control policies and may be restricted from remitting funds or handling other foreign exchange businesses within China unless and until we remediate the non-compliance." (SAC ¶ 95.) Notably, the SEC observed that the risk description in the 2022 20-F was subsidiary focused and requested clarification on the broader implications for the Company's inability to use IPO proceeds as intended. The request for clarification rather than correction demonstrates that the original disclosures adequately warned of the risks.

The SAC fails to allege falsity for contingent risk warnings. "When the omitted information concerns a contingent or speculative event, 'the materiality of those events depends on a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.'" *Lau v. Opera Ltd.*, 527 F.Supp.3d 537, 554 (S.D.N.Y. 2021) (*quoting Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir. 2001)). Plaintiff's claim that these disclosures were misleading because they used the word "may" rather than describing a certainty deeply misunderstands securities law. (SAC ¶ 104.) The relevant inquiry is "whether the facts alleged in the Complaint evince that the Company knew or had reason

23

to believe, at the time the . . . Registration Statement [was] filed, that the statement was untrue." *Coronel v. Quanta Cap. Holdings Ltd.*, No. 07 CIV. 1405(RPP), 2009 WL 174656, at *13 (S.D.N.Y. Jan. 26, 2009). The SAC contains no allegations that Xiao-I knew with certainty that Circular 37 non-compliance would prevent use of IPO proceeds and indeed, the subsequent events demonstrate that the Company was able to remedy the situation and access the funds. Accordingly, Defendants disclosed the "material events and uncertainties known to management that [were] reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition," 17 C.F.R. § 229.303(a), and discussed "material factors that make an investment in [Xiao-I] speculative or risky," 17 C.F.R. § 229.105(a). Plaintiff fails to plead a violation of Item 105 of Regulation S-K.

### 3. Defendants' Circular 37 Risk Disclosures Are Protected By The PSLRA's Safe Harbor For Forward-Looking Statements.

Defendants' statements concerning Circular 37 compliance are protected by the PSLRA's safe harbor because they are forward-looking and accompanied by meaningful cautionary language. Under the PSLRA's safe harbor, a defendant "shall not be liable with respect to any forward-looking statement" if (1) the forward-looking statement is "identified" as such and "accompanied by meaningful cautionary statements," or (2) the forward-looking statement is "immaterial," or (3) the plaintiff "fails to prove that the forward-looking statement . . . if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(A)–(B). "Because the statute is written in the disjunctive, statements are protected by the safe harbor if they satisfy any one of these three categories." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).[18] Under the bespeaks caution doctrine,

---

[18] *See also In re WEBMD Health Corp. Sec. Litig.*, No. 11 Civ. 5382(JFK), 2013 WL 64511, at *7 (S.D.N.Y. Jan. 2, 2013).

"alleged misrepresentations in a stock offering are immaterial as a matter of law [if] it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).

Here, Xiao-I's risk disclosures regarding Circular 37 compliance constitute classic forward-looking statements that remain protected despite the SAC's reframing. The challenged statements warned that non-compliance "may result in restrictions" and that shareholders "may be subject to penalties"—language that is inherently predictive and conditional. (SAC ¶¶ 104-105.) The SAC's attempt to recast these forward-looking warnings as inadequate "failure to disclose the true scope and severity of risks" (SAC ¶¶ 14, 106) does not eliminate their forward-looking nature or transform conditional risk warnings into actionable omissions. *See Jiajia Luo v. Sogou, Inc.*, 465 F.Supp. 3d at 412 (protecting forward-looking statements about intended regulatory compliance and use of IPO proceeds where registration statement warned that company "cannot assure you that the PRC governmental authorities will not issue new laws or regulations" and "may have difficulty determining the type of content that may result in liability," and predicted risks later materialized when new Chinese law led to regulatory investigation months after IPO). These statements concerned potential future regulatory consequences and operational challenges, making them quintessential forward-looking statements under the PSLRA. Moreover, these forward-looking statements were accompanied by cautionary language that fully satisfied the safe harbor requirements. The Registration Statement and 2022 20-F contained an extensive "Cautionary Statement Regarding Forward-Looking Statements" that identified enumerated forward-looking statements and warned investors that "actual results may differ materially from those expressed or implied in the forward-looking statements" due to various risk factors, including "changes in

25

government policies and regulation." (RL Decl. Ex. A, Registration Statement at 83-84; Ex. D, 2022 20-F at vii.) The cautionary statement specifically directed investors to the "Risk Factors" section, where the Circular 37 compliance risks were disclosed in detail.

The PSLRA safe harbor also "specifies an 'actual knowledge' standard for forward-looking statements," which means that "the scienter requirement for forward-looking statements is stricter than for statements of current fact." *In re Weight Watchers International Inc Sec. Litig.*, 504 F.Supp.3d 224, 253 (S.D.N.Y. 2020). The SAC contains no allegation that Defendants possessed actual knowledge that their conditional warnings about potential Circular 37 consequences were false when made. Indeed, subsequent events vindicated these cautionary statements when regulatory challenges temporarily arose, were disclosed, and ultimately resolved successfully, exactly as the forward-looking statements contemplated through their use of conditional language. Accordingly, Defendants' statements concerning Circular 37 compliance are protected by the PSLRA's safe harbor.

### 4.      Xiao-I's Disclosures Were Not Materially Misleading.

As previewed above, dismissal is also warranted because Plaintiff fails to allege that any of the statements challenged in the SAC were materially misleading. *First*, none of the allegedly omitted financial information affected the Xiao-I's net revenue or reported gross margin. A fact is material only if "there is a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *In re Duke Energy Corp. Sec. Litig.*, 282 F.Supp.2d 158, 160 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004). In assessing the materiality of a change in financials, courts must look to the change "in the context of the company's total operations," not "based on the change in the line item alone." *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2020 WL 1508748, at *9 (S.D.N.Y. Mar. 30, 2020). "[C]onclusory statement[s] that 'the changes in

26

financial results were material to investors' [are] not sufficient" to state a Securities Act claim. *Yaroni*, 600 F. Supp. 3d at 402-03.

The problem with Plaintiff's materiality theory is that she seeks to transform accounting classifications into securities violations without demonstrating any impact on the metrics that would actually matter to investors. Although the SEC did not require Xiao-I to do so, the Company filed the Amended 2022 20-F, supplementing its Consolidated Statement of Operations and Comprehensive (Loss)/Income with a breakdown of costs of revenues by product and service categories, while the total net revenues remained the same as previously reported. (SAC ¶¶ 109-110.) Contrary to the SAC's allegations that the amendment "rendered the Company's affirmative statements regarding 'cost of revenues' mere 'half-truths'" (SAC ¶ 11), Plaintiff cannot overcome the fact that Xiao-I's overall financial performance remained identical before and after the Amended 2022 20-F. This unchanged bottom line undermines any claim that reasonable investors would have made different decisions based on knowing whether certain revenue streams were internally classified as software sales versus technology development services. Such granular breakdowns do not rise to the level of material omissions under federal securities law when the aggregate financial picture remains consistent and truthful. *See Yaroni*, 600 F. Supp. 3d at 402 (fact that "gross profit remained the same before and after the restatement" supported immateriality of alleged financial misstatement).[19] Without any allegation that the reclassified information contradicted the Company's disclosed business trajectory or financial health, Plaintiff has failed to establish the substantial likelihood that reasonable investors would view these internal categorizations as significantly altering their investment decision.

---

[19] *See also Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 38 (2d Cir. 2017) (company's omission immaterial where it provided other growth indicators because "[a] more accurate indicator of the company's performance [] is [company's] total revenue and total income").

*Second*, the Circular 37 risk disclosures described in the SAC were not misleading for the reasons stated above, namely, Xiao-I disclosed the precise risks that were allegedly omitted, and, to the extent Plaintiff's contend such disclosure failed to warn of additional risks or uncertainties, such risks ***never materialized***. Accurate risk warnings preclude liability even when the warned-of risks later materialize. *See Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 180, 184-86 (E.D.N.Y. 2017) (dismissing Securities Act claims where "defendants openly acknowledged that [they] faced compliance challenges" and "warned investors of the significant risk"), *aff'd*, 731 F. App'x 35 (2d Cir. 2018). The Amended 2022 20-F disclosed that "WFOE has successfully opened a new capital account with Bank of Ningbo" and that "we were able to transfer the rest of the IPO proceeds from overseas to WFOE for VIE's product development and operations through both WFOE's new capital account with Bank of Ningbo and WFOE's pre-existing capital account with Agricultural Bank of China." (SAC ¶ 108.) The risk warning was accurate. The non-compliance created potential restrictions that the Company ultimately navigated successfully. Therefore, Plaintiff has failed to adequately plead materiality.

## II.     PLAINTIFF'S SECTION 10 CLAIM SHOULD BE DISMISSED.

The first element of Plaintiff's Section 10(b) claim—misrepresentation or omission—overlaps with the issues addressed above and fails for all the foregoing reasons. Additionally, Plaintiff cannot satisfy the requirements unique to Section 10(b) claims: reliance, scienter and loss causation. Plaintiff cannot establish reliance because her claims challenge half-truths rather than pure omissions, precluding both fraud-on-the-market and *Affiliated Ute* presumptions, yet the SAC contains no allegations of actual reliance on the challenged statements. Plaintiff has not alleged facts showing that the Section 10 Defendants (Xiao-I, CEO Yuan, and CFO Weng) had "both motive and opportunity to commit fraud" or such conditions constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,

28

493 F.3d 87, 99 (2d Cir. 2007). Nor does the SAC contain any allegations particularized to CEO Yuan or CFO Weng beyond the conclusory assertions that, as signatories to the financial statements, had different incentives from a generic corporate insider due to potential job loss. Finally, the Plaintiff has not alleged any causal connection between the alleged misstatements and the claimed economic losses.

### A.    The SAC Fails To Plead Scienter.

Plaintiff's SAC with respect to her Section 10 claim suffers from a fatal defect by failing to "state with particularity facts giving rise to a strong inference that" Xiao-I, CEO Yuan or CFO Weng "acted with" scienter. 15 U.S.C. §78u– 4(b)(2). An "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. "[G]eneric and conclusory allegations based upon rumor or conjecture are undisputedly insufficient to satisfy the heightened pleading standard." *Campo v. Sears Holdings Corp.*, 635 F.Supp.2d 323, 336 (S.D.N.Y. 2009), *aff'd*, 371 F. App'x 212 (2d Cir. 2010). Thus, a pleading that lacks particular facts supporting involvement in the alleged fraud will not meet "even a relaxed standard". *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987).

Plaintiff does not plead scienter based on motive and opportunity as she does not allege that the Section 10 Defendants "benefit[ted] in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198. The SAC's allegation that CEO Yuan and CFO Weng had different incentives from a generic corporate insider because they faced potential job loss fails to cure this deficiency. *See Lipow v. Net1 UEPS Technologies, Inc.,* 131 F.Supp.3d 144, 162 (S.D.N.Y. 2015) (finding that generic corporate motives fail to establish that defendants "'benefited in some concrete and personal way from the purported fraud'"). While the SAC groups together the Company, CEO Yuan, and CFO Wang and classifies them as the "Exchange Act Defendants"

29

(SAC ¶¶ 149-150), the SAC is devoid of any specific scienter allegations beyond typical corporate motives and conclusory assertions about job security concerns. The SAC generically alleges that these individual officers had "knowledge of the details of Xiao-I's internal affairs", "control of the statements of Xiao-I", and "artificially inflated" the Company's securities, but makes no real claim as to how either individual would have benefitted from the purported fraud. (SAC at ¶¶ 195-196.) This last motive has been "consistently rejected as insufficient in securities fraud pleading." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196–97 (2d Cir. 2008). And allegations of scienter that are "based on motives possessed by virtually all corporate insiders, including . . . the desire to . . . sustain the appearance of corporate profitability, or of the success of an investment" are similarly insufficient. *Id*.[20]

Plaintiff's allegations that the Company's financial condition and need for cash flow evidence motive to commit fraud are not compelling. Referencing the Registration Statement, the SAC alleges that the Section 10 Defendants were highly motivated to obtain capital for research and development because they were in dire need for capital. Without more (such as stock sales or other evidence of pecuniary gain), such general motives undermine scienter because "[m]otives that are generally possessed by most corporate directors and officers do not suffice" to support a strong inference of fraudulent intent. *In re N. Telecom Ltd. Secs. Litig.*, 116 F.Supp.2d 446, 462 (S.D.N.Y. 2000); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). If scienter could be pleaded that basis alone, "virtually every company in the United States that experiences a downturn . . . would be forced to defend securities fraud actions." *In re Lottery.com, Inc. Sec. Litig.*, 715

---

[20] *See also N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15 CIV. 6034 (RJS), 2016 WL 5794774, at \*20 (S.D.N.Y. Sept. 30, 2016) (plaintiff cannot plead motive to defraud by alleging goals possessed by virtually all corporate insiders); *ECA*, 553 F.3d at 198.

F.Supp.3d 506, 554 (S.D.N.Y. 2024) (rejecting plaintiff's argument that the desire to artificially inflate a company's stock price in advance of a public offering establishes motive).

The SAC fails to allege motive or opportunity regarding the Loss/Income Statement and purported Regulation S-X violations. The SAC merely contends that adhering to Section 210.5-03(a) while omitting Section 210.5-03(b) demonstrates intentional non-compliance by the Section 10 Defendants. This bare allegation of accounting irregularities, without more, cannot establish scienter. Accounting irregularities alone are insufficient to state a securities fraud claim without evidence of "corresponding fraudulent intent." *Davidoff v. Farina*, No. 04 Civ. 7617 (NRB), 2005 WL 2030501 at *16 (S.D.N.Y. Aug. 22, 2005) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). Even assuming that a Regulation S-X violation occurred, the SAC lacks any corresponding evidence of fraudulent intent.

The alleged violation involved a minor, technical accounting presentation issue that the Company corrected when it filed the Amended 2022 20-F. Critically, this amendment had no effect on the Company's total net revenues or costs, which severely undercuts any inference of fraud. Courts have generally found evidence of recklessness only when a company's financial restatement materially impacts income.[21] Here, the absence of any impact on net income from either the Amended 2022 20-F or the Form 6-K filing demonstrates that this was a technical correction, not evidence of fraudulent intent.

---

[21] *See e.g., Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc.,* No. 09 Civ. 6966 (JGK), 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) (restatement with only modest impact on corporate income insufficient to establish scienter); *In re Atlas Airworldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474, 488 (S.D.N.Y. 2004) (scienter inference alleged where systemic accounting abuses resulted in public misrepresentation of financial condition and was not just a "hyper-technical accounting" error).

**B.**     **Plaintiff Cannot Establish Reliance Under Fraud-On-The-Market Or** *Affiliated Ute* **Theories.**

Plaintiff's claims are not entitled to a presumption of reliance. The fraud-on-the-market presumption cannot apply because there was no misrepresentation; the market was informed of the risks and financial performance through Circular 37 warnings and accurate aggregate financial data, negating any price impact from the alleged omissions. The *Affiliated Ute* presumption similarly does not apply "to earlier misrepresentations made more misleading by subsequent omissions, or to what has been described as 'half-truths,' nor does it apply to misstatements whose only omission is the truth that the statement misrepresents." *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017). Plaintiff alleges affirmative representations, including statements about intended use of IPO proceeds for "research and development" (SAC ¶¶ 96, 161), "cost of revenues" (SAC ¶¶ 76-77, 101-02), and risk disclosures stating that Circular 37 non-compliance "may result in restrictions" (SAC ¶¶ 93, 104.) Plaintiff alleges that the omissions of granular cost breakdowns and detailed risk disclosures "rendered the Company's affirmative statements regarding 'cost of revenues' mere 'half-truths'", and therefore misleading. (SAC ¶¶ 11, 89, 103.) Because Plaintiff can point to specific affirmative statements rather than pure omissions, reliance is not "impossible to prove" as required for the Affiliated Ute presumption. *Waggoner v. Barclays PLC*, 875 F.3d at 95. Absent either presumption, Plaintiff must plead actual reliance under traditional standards. The SAC contains no allegations that Plaintiff read or relied upon any of the challenged statements, providing only boilerplate allegations about purchasing securities during the Exchange Act Class Period. (SAC ¶¶ 187-189.) Without either presumption available, Plaintiff's failure to allege actual reliance renders the Section 10(b) claims insufficient.

### C.    The SAC Fails To Plead Loss Causation.

Plaintiff's loss causation allegations against the Section 10 Defendants are likewise insufficient. To establish loss causation, "a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered . . . *i.e.,* that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). Establishing loss causation is critical because Section 10(b) is not meant to "provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005). The basis for dismissal of the SAC's loss causation allegations can be summarized as follows:

| Alleged Corrective Disclosure | Alleged Stock Impact | Basis For Dismissal |
|---|---|---|
| **Amended 2022 20-F and SEC Response on August 10, 2023 disclosed**: (1) technology and software services gross margin, and (2) that Xiao-I successfully transferred most IPO proceeds. | ADS price fell $3.07 per ADS (38%) over two trading days following the disclosure. | • **Mixed information**: any alleged stock drop cannot be attributable to "concealed" information.<br>• **Alternative Market Factors**: no isolation of price movement from broader market conditions or company-specific news. |
| **Form 6-K disclosed**: six-month costs breakdowns for ended June 30, 2023. | ADS price fell $0.30 (14.22%) to close at $1.81 on September 25, 2023. | • **Not "corrective"**: Form 6-K reported revenue and unrelated to the alleged misstatements.<br>• **Alternative Market Factors**: no isolation of price movement from broader market conditions or company-specific news. |

The SAC focuses on the stock price decline purportedly resulting from the market's reaction to the Amended 2022 20-F and Form 6-K, filed on August 10, 2023 and September 25, 2023 respectively. (SAC ¶179.) The SAC fails to allege that these "corrective disclosures" actually caused Plaintiff's economic losses or that they "reveal the falsity of an alleged misstatement." *In re Omnicom Group, Inc. Secs. Litig.,* 541 F.Supp.2d 546, 552 (S.D.N.Y. 2008). The Amended 2022 20-F announced positive developments that the Company had successfully accessed IPO proceeds despite Circular 37 risks and provided additional revenue detail with identical total amounts. (SAC ¶¶ 109-113.) The September 25, 2023 Form 6-K reported routine earnings for a period after the Registration Statement and Amended 2022 20-F and contained no information that would deem this disclosure corrective. "[I]t must be the materialization of the concealed risk that caused the plaintiff's loss." *In re Rhodia S.A. Securities Litigation*, 531 F.Supp.2d 527, 545 (S.D.N.Y. 2007).

The purported "corrective disclosures" identified in the SAC announced successful risk resolution with respect to Circular 37 by August 2023 when Xiao-I disclosed that "WFOE has successfully opened a new capital account with Bank of Ningbo" and "we were able to transfer the rest of the IPO proceeds from overseas to WFOE for VIE's product development and operations." (SAC ¶ 113.) The alleged "concealed risk" regarding inability to use IPO proceeds never materialized. The Company obtained and deployed the capital for its stated purposes— research and development and operations—precisely as disclosed to investors.

Despite successfully accessing and using the IPO proceeds as intended, however, the Company continued to experience financial distress. The SAC acknowledges that by April 30, 2024, Xiao-I disclosed "substantial doubt about [its] ability to continue as a going concern" with only $1.56 million in cash and negative operating cash flows of $15.8 million, primarily due to

massive increases in research and development expenses. (SAC ¶ 173.) This timeline demonstrates that the Company's later financial difficulties were unrelated to the alleged Circular 37 omissions or any alleged fraudulent motivations to IPO. Because the alleged concealed risk never materialized and the Company's subsequent financial distress had different causes, Plaintiff cannot establish that the alleged omissions caused her losses. Without establishing that the subject of the alleged misstatements caused the actual losses suffered, dismissal is warranted.

## III.    PLAINTIFF'S SECTIONS 15 AND 20(a) CLAIMS SHOULD BE DISMISSED.

Without a primary violation, the SAC fails to plead control person liability under Section 15 against the Section 11 Defendants or Section 20(a) against the Section 10 Defendants. *See AT&T Commc'ns Inc. v. Shaar Fund, Ltd.*, 93 F.3d 87, 108 (2d Cir. 2011); *In re Morgan Stanley*, 592 F.3d at 358. Section 20(a) additionally requires that defendants be "culpable participant[s]" in the controlled person's fraud. *AT&T Commc'ns Inc. v. Shaar Fund, Ltd.*, 93 F.3d at 108. The SAC contains no particularized scienter allegations against any individual defendant. *See Cohen v. Stevanovich*, 722 F.Supp.2d 416, 435 (S.D.N.Y. 2010) (dismissing Section 20(a) claim where plaintiffs do not allege particularized facts as to defendant's participation in the fraud). Consequently, Plaintiff has failed to state a Section 15 or Section 20(a) claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Plaintiff's Second Amended Complaint in its entirety and with prejudice.

Dated: New York, New York              Respectfully submitted,
       September 2, 2025

                                */s/ Richard J.L. Lomuscio*
                              Richard J.L. Lomuscio
                              Nicole Khalouian
                              **STINSON LLP**
                              140 Broadway, Suite 2330
                              New York, New York 10005
                              Phone: 646.883.7675
                              richard.lomuscio@stinson.com
                              nicole.khalouian@stinson.com

                              *Attorneys for Defendants Xiao-I Corporation, Hui Yuan, Wei Weng, Wenjing Chen, Xiaomei Wu, Jun Xu, Zhong Lin, and H. David Sherman*

                               */s/ Andrew L. Van Houter*
                              Andrew L. Van Houter
                              Christian J. Clark
                              **FAEGRE DRINKER BIDDLE & REATH LLP**
                              1177 Avenue of the Americas, 43rd Floor
                              New York, NY 10036
                              (212) 248-3140
                              andrew.vanhouter@faegredrinker.com
                              christian.clark@faegredrinker.com

                              *Attorneys for Defendants AC Sunshine Securities LLC, SBI China Capital Financial Services Limited, Prime Number Capital LLC and Guotai Junan Securities (Hong Kong) Limited*

36

## CERTIFICATE OF COMPLIANCE

I, Richard J.L. Lomuscio, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c), that the foregoing Memorandum of Law was prepared using Microsoft Word and does not exceed 35 pages pursuant to Judge Woods's Order granting Defendants' leave to file a consolidated Motion. (ECF No. 85.)

Dated: New York, NY
        September 2, 2025

                                      */s/ Richard J.L. Lomuscio*