**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| QIAO SHIYAO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> XIAO-I CORPORATION, HUI YUAN, WEI WENG, WENJING CHEN, XIAOMEI WU, JUN XU, ZHONG LIN, H. DAVID SHERMAN, AC SUNSHINE SECURITIES LLC, SBI CHINA CAPITAL FINANCIAL SERVICES LIMITED, PRIME NUMBER CAPITAL LLC, and GUOTAI JUNAN SECURITIES (HONG KONG) LIMITED, <br><br> Defendants. | **Case No. 1:24-cv-07837-GHW** <br><br> **Hon. Gregory H. Woods** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo
Dean P. Ferrogari
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
bszydlo@pomlaw.com
dferrogari@pomlaw.com

***Attorneys for Lead Plaintiff Qiao Shiyao***
***and the Proposed Classes***
(*additional counsel on signature page*)

## **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ............................................................................................ 1

II.    FACTUAL BACKGROUND.............................................................................................. 6

    A.    The Company's Registration Statement and 2022 20-F Report Omitted
Material Facts Required to Be Stated Therein and Necessary to Make the
Statements Therein Not Misleading Due to the Company's Failure to
Comply with Section 210.5-03(b)(2) of Regulation S-X....................................... 7

    B.    The Company's Risk Factors in the Registration Statement and 2022 20-F
Report Regarding China's Circular 37 Registration Were Materially
Misleading and Violated Item 105 of Regulation S-K ........................................ 12

III.   ARGUMENT.................................................................................................................... 14

    A.    Rule 8(a)'s Pleading Standard Applies to Plaintiff's Securities Act Claims
and Is Satisfied as to All Defendants .................................................................. 14

    B.    Plaintiff Sufficiently Alleged that (i) the Registration Statement Omitted
Material Facts Required to Be Stated and Necessary to Make the
Statements Therein Not Misleading for Purposes of Plaintiff's Securities
Act Claims, and (ii) Defendants Made Materially False and/or Misleading
Statements in the Registration Statement and 2022 20-F for Purposes of
Plaintiff's Exchange Act Claims.......................................................................... 19

        1.    Material Omissions and Half-Truth Statements Related to Xiao-I's
Failure to Comply with Section 210.5-03(b)(2) of Regulation S-X ......... 19

        2.    Materially Misleading Statements Regarding Circular 37....................... 22

        3.    Neither the PSLRA's Safe Harbor Nor the Bespeaks Caution Doctrine
Protects the Circular 37 Statements ........................................................ 25

        4.    Plaintiff Adequately Alleged that the Exchange Act Individual
Defendants' SOX Certifications Were Materially False or Misleading ... 26

    C.    The Exchange Act Defendants' Reliance Argument Fails ................................... 27

    D.    Scienter Is Adequately Alleged ........................................................................... 28

    E.    Loss Causation Is Sufficiently Alleged as to Plaintiffs' Section 10(b)
Claim.................................................................................................................... 31

    F.    Plaintiff States a Claim under Both Sections 15 and 20(a)................................. 34

CONCLUSION.................................................................................................................. 35

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)..........................................................................................................28

*Bazzelle v. NovoCure Ltd.*,
   2025 WL 843668 (S.D.N.Y. Mar. 18, 2025) (Woods, J.)........................................................26

*City of Providence v. Aeropostale, Inc.*,
   2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .......................................................................26

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012)...................................................................................28

*FDIC v. Chase Mortg. Fin. Corp.*,
   2013 WL 5434633 (S.D.N.Y. Sep. 27, 2013).........................................................................34

*Frater v. Hemispherx Biopharma, Inc.*,
   996 F. Supp. 2d 335 (E.D. Pa. 2014) ....................................................................................29

*In re Arqit Quantum Inc. Sec. Litig.*,
   774 F. Supp. 3d 505 (E.D.N.Y. 2025) ...................................................................................35

*In re Axsome Therapeutics, Inc. Sec. Litig.*,
   2025 WL 965265 (S.D.N.Y. Mar. 31, 2025) ...................................................................26, 28

*In re Banco Bradesco S.A. Sec. Litig.*,
   277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................................................................................27

*In re Chembio Diagnostics Sec. Litig.*,
   586 F. Supp. 3d 199 (E.D.N.Y. 2022) ...................................................................................16

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
   2018 WL 2382600 (S.D.N.Y. May 24, 2018) ........................................................................34

*In re CIT Group Inc. Sec. Litig.*,
   2010 WL 2365846 (S.D.N.Y. June 10, 2010) ........................................................................17

*In re GigaCloud Tech. Inc. Sec. Litig.*,
   2025 WL 307378 (S.D.N.Y. Jan. 27, 2025) ...........................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003)....................................................................................18

*In re Initial Pub. Offering Sec. Litig.*,
    358 F. Supp. 2d 189 (S.D.N.Y. 2004)......................................................................21, 24, 25

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
    2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) ...............................................................16

*In re Nio, Inc. Sec. Litig.*,
    2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023)............................................................17

*In re Orion Sec. Litig.*,
    2009 WL 2601952 (S.D.N.Y. Aug. 20, 2009)..........................................................16

*In re Romeo Power Inc. Sec. Litig.*,
    2022 WL 3701095 (S.D.N.Y. Aug. 25, 2022)..........................................................26

*In re Sturm, Ruger & Co. Sec. Litig.*,
    2011 WL 494753 (D. Conn. Feb. 7, 2011) ..............................................................21

*In re Tufin Software Techs. Ltd. Sec. Litig.*,
    2022 WL 596861 (S.D.N.Y. Feb. 25, 2022) (Woods, J.) .................................19, 27

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)....................................................................................25

*In re WorldCom, Inc. Sec. Litig.*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004).....................................................................17

*Jiajia Luo v. Sogou, Inc.*,
    465 F. Supp. 3d 393 (S.D.N.Y. 2020).....................................................................26

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    2008 WL 4449280 (S.D.N.Y. Sept 30, 2008)..........................................................16

*Lewy v. Skypeople Fruit Juice, Inc.*,
    2012 WL 3957916 (S.D.N.Y. Sep. 10, 2012)..........................................................16

*Lian v. Tuya Inc.*,
    2024 WL 966263 (S.D.N.Y. Mar. 5, 2024) .............................................................25

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011).....................................................................................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015).....................................................................................31

*Lozada v. TaskUs, Inc.*,
    710 F. Supp. 3d 283 (S.D.N.Y. 2024)......................................................................27

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024)................................................................................................27

*Nandkumar v. AstraZeneca PLC*,
   2023 WL 3477164 (2d Cir. May 16, 2023) ..............................................................30

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
   122 F.4th 28 (2d Cir. 2023) ....................................................................................31

*Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
   2025 WL 368717 (S.D.N.Y. Jan. 31, 2025),
   *R. & R. adopted*, 2025 WL 934319 (S.D.N.Y. Mar. 26, 2025) (Woods, J.)............31

*Pappas v. Qutoutiao Inc.*,
   2024 WL 4588491 (2d Cir. Oct. 28, 2024)..............................................4, 14, 15, 16

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
   2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) (Woods, J.) ......................................27

*Rudani v. Ideanomics, Inc.*,
   2020 WL 5770356 (S.D.N.Y. Sept. 25, 2020)........................................................26

*Sask. Healthcare Emp's. Pension Plan v. KE Holdings Inc.*,
   718 F. Supp. 3d 344 (S.D.N.Y. 2024) (Woods, J.) ..................................................31

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
   2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ..........................................................19

*Skiadas v. Acer Therapeutics Inc.*,
   2020 WL 3268495 (S.D.N.Y. June 16, 2020) (Woods, J.)............................28, 29, 30

*Skiadas v. Acer Therapeutics Inc.*,
   2020 WL 4208442 (S.D.N.Y. July 21, 2020) (Woods, J.)........................................28

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)...................................................................................25

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
   2024 WL 456745 (S.D.N.Y. Feb. 5, 2024).............................................................30

*Tellabs Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)...............................................................................................28

*Voulgaris v. Array Biopharma Inc.*,
   2020 WL 8367829 (D. Colo. Nov. 24, 2020) .........................................................30

*Wang v. Cloopen Grp. Holding Ltd.*,
   661 F. Supp. 3d 208 (S.D.N.Y. 2023)................................................................20, 35

*Willard v. UP Fintech Holding Ltd.*,
    527 F. Supp. 3d 609 (S.D.N.Y. 2021).......................................................................21

*Winter v. Stronghold Digit. Mining, Inc.*,
    686 F. Supp. 3d 295 (S.D.N.Y. 2023).............................................................17, 18, 19

## Statutes

15 U.S.C. §78u-4 .................................................................................................................28

## Rules & Regulations

17 C.F.R. § 210.5 ...................................................................................................................7

17 C.F.R. § 210.5-03.................................................................................................. *passim*

17 C.F.R. § 229.105 ..............................................................................................................13

## Other Authorities

Investing in an IPO, SEC Publ'n No. 133 (2/13),
    available at https://www.sec.gov/files/ipo-investorbulletin.pdf ...............................17

## I.    PRELIMINARY STATEMENT

Lead Plaintiff Qiao Shiyao ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendants' motion to dismiss the Second Amended Complaint.[1] This is a federal securities class action on behalf of two classes of purchasers of Xiao-I American depository shares ("ADSs") – the Securities Act Class and the Exchange Act Class. Plaintiff alleges violations of Sections 11 and 15 of the Securities Act and 10(b) and 20(a) of the Securities Exchange Act.

Xiao-I, through its subsidiaries, operates as a global AI company. The Company is incorporated in the Cayman Islands and headquartered in China. On or about March 9, 2023, Xiao-I conducted an IPO, issuing 5.7 million of its ADSs to the public at the offering price of $6.80 per ADS for proceeds of over $36 million to the Company and over $2.7 million in fees to the Securities Act Underwriter Defendants. The Registration Statement and the Company's 2022 20-F failed to disclose Xiao-I's costs of revenues by product or service revenue class, which was an omission in contravention of affirmative legal disclosure obligation pursuant to Section 210.5-03(b)(2) of SEC Regulation S-X. The material information required to be disclosed pursuant to Section 210.5-03(b)(2) allows investors to make determinations about an entity's gross margin in each particular product or service line from which it generates substantive revenues. Gross margin is an important financial metric to investors because it provides unfiltered insight into whether an entity has the ability to make money from the very thing it purports to be in business to do – produce goods or provide services. The Company's failure to disclose pertinent gross margin measures by product or service revenue class left investors in the dark as to which of Xiao-I's revenue segments were least/most profitable and called into question whether management and

---

[1] Unless otherwise defined, all capitalized terms have the meanings as provided in the Second Amended Class Action Complaint ("SAC") (ECF No. 77). All internal citations and quotation marks are omitted, and all emphasis has been added unless stated otherwise. "¶_" refers to paragraphs in the SAC.

the Board of Directors had been/were being transparent about the direction of the Company. Additionally, the omission of such material facts rendered the Company's affirmative statements regarding "cost of revenues" mere "half-truths" and, therefore, materially misleading.

The Registration Statement and 2022 20-F also contained materially misleading statements that failed to disclose the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with China's Circular 37 Registration, including the Company's potential inability to use the IPO proceeds for its intended business purposes, such as research and development, which is crucial in the AI business. Additionally, Defendants' failure to disclose the true scope and severity of these risks violated Item 105 of SEC Regulation S-K, which required Xiao-I to provide under the caption "Risk Factors" a discussion of the material factors that make an investment in the Company or offering speculative or risky and concisely explain how each risk affects the Company or the securities being offered.

On July 27, 2023, the SEC issued a letter to Xiao-I regarding the Company's 2022 20-F. The SEC Letter took issue with the Company's failure to comply with Section 210.5-03(b)(2) of Regulation S-X in preparing its financial statements included in the 2022 20-F. With respect to technology development services, the letter also asked why technology development services was not included as a separate line of business in the Registration Statement but was included separately, just a month later, in the Company's 2022 20-F. The SEC Letter also requested more explicit disclosures in the 2022 20-F Risk Factors section concerning China's Circular 37 Registration, particularly with respect to the Company's potential inability to use IPO proceeds for its intended business purposes.

On August 10, 2023, the Company filed the Amended 2022 20-F which disclosed the required revenues and cost of revenue information pursuant to Regulation S-X for the years ended

2

December 31, 2020, 2021 and 2022 – reflected across five revenue classes identified by Xiao-I itself, including technology development services. The Amended 2022 20-F afforded newfound insight into the Company's revenues, expenses, and, thereby, gross margins *by revenue class*, information not otherwise known or discernible by investors for the periods presented. It revealed that the gross margins for the Company's technology development services line of business were significantly lower than the gross margins for its sale of software products for the periods presented. For example, after the expanded disclosure, investors were able to discern that for 2021, the gross margin for the sale of software products was 94.82% compared to 52.52% for technology development services. This is particularly notable in view of the Company's August 10, 2023 letter to the SEC, which disclosed that the lower margin technology development services line of business "represent[s] the Company's future revenue growth source" despite the lower gross margins now known to investors. Investors likely viewed the August 10, 2023 disclosures as a shift in part regarding the Company's primary revenue sources – from a higher margin products line of business to a lower margin services line of business, and wondered whether management and the Board had been/were being transparent about the direction of the Company. The Amended 2022 20-F also clarified the materially misleading Risk Factors regarding PRC resident shareholders' non-compliance with Circular 37 Registration, including the potential inability to use the IPO proceeds. This exchange between the SEC and Xiao-I regarding Circular 37 cast doubt on the Company's transparency and negatively affected investor confidence, notwithstanding the news about the Company's ability (months after the IPO) to use the IPO proceeds. As a result of the above disclosures, Xiao-I's ADS price fell $3.07 per ADS over the following two trading days, or 38%, to close at $4.97 per ADS on August 14, 2023.

On September 25, 2023, the Company filed a Form 6-K along with a press release

3

announcing its quarterly results for the six months ended June 30, 2023. Revenues and cost of revenues for the first six months of 2022 and 2023 were disclosed in the press release. The press release also afforded newfound insight into the Company's gross margins by revenue class, information not otherwise known or discernible by investors for the periods presented. The disclosures on September 25, 2023 show that for the six months ending June 30, 2022, while Xiao-I reported higher revenues from "technology development services" than in "sales of software products," the gross margin was significantly higher in "sales of software products." The gross margin from the sale of software products was 87.81% compared to 57.73% for technology development services for the same period. On this news, Xiao-I's ADS price fell $0.30 per ADS, or 14.22%, to close at $1.81 per ADS on September 25, 2023.

Defendants contend Plaintiff's Section 11 claim should be dismissed because the SAC is subject to Rule 9(b)'s heightened pleading standard, and fails to meet such standard. But they are wrong as Plaintiff's Section 11 claim is subject to Rule 8. The Second Circuit recently clarified the pleading standards for complaints alleging both negligence-based and fraud-based securities claims in *Pappas v. Qutoutiao Inc.*, 2024 WL 4588491, at *2 (2d Cir. Oct. 28, 2024), and Plaintiff satisfied this standard. Defendants also argue that the SAC fails to meet Rule 8's pleading requirements, but Section 11 places a relatively minimal burden on a plaintiff, and the SAC's allegations are sufficient to give all Defendants fair notice of the basis of the claims against them. Defendants contend that Plaintiff's Section 11 and 10(b) claims should be dismissed because Plaintiff fails to allege any material misrepresentations or omissions, but the alleged misstatements and omissions easily meet the materiality hurdle.[2]

---

[2] For the Court's convenience, attached hereto as Exhibit ("Ex.") A, is a chart setting forth all the alleged (i) material omissions/misleading statements for purposes of the Securities Act claims; and (ii) materially false and misleading statements for purposes of the Exchange Act claims.

The Exchange Act Defendants also contend that Plaintiff's Section 10(b) claims should be dismissed on scienter grounds but Plaintiff has plausibly alleged that they acted with scienter. Plaintiff alleged that Xiao-I required huge sums of money for R&D to compete in the AI industry and was in dire straits and desperate for a capital infusion prior to the IPO. The financials in the Registration Statement show that as of June 30, 2022, Xiao-I had only $1.52 million in cash and cash equivalents, approximately $60.3 million in total liabilities, and an accumulated deficit of $72 million. For the six months ended June 30, 2022, the Company incurred negative cash flows from operations of $6.8 million. ***The Company concluded that there was substantial doubt about its ability to continue as a going concern for a period of one year from the date that these interim financial statements were issued***. This was an admission that the Company needed to raise funds to remain viable. District courts have found allegations of motive adequate where the companies needed to fundraise to survive. And given that the Company concluded that there was substantial doubt about its ability to continue as a going concern, CEO Yuan and CFO Weng had different incentives from a generic corporate insider. Indeed, they knew they were at risk of losing their jobs without a successful IPO. Taken collectively, these alleged facts, along with other alleged facts discussed herein, give rise to a strong inference of scienter.

The Exchange Act Defendants argue that Plaintiff's securities fraud claim should be dismissed because Plaintiff is not entitled to either the presumption of reliance under the fraud-on-the-market doctrine or the *Affiliated Ute* presumption. Here, Plaintiff is entitled to the presumption of reliance under the fraud-on-the-market doctrine. The SAC sets forth a number of alleged statements that were materially false or misleading. Half-truth statements are actionable misleading statements. And the Supreme Court has long held that plaintiffs may be entitled to the fraud-on-the market presumption in connection with materially misleading statements. For these

5

reasons, the Exchange Act Defendants' reliance argument fails. The also argue that SAC fails to plead loss causation, but Plaintiff's pleading burden is not a heavy one and the SAC gives them an indication of the actual loss suffered and a plausible causal link between the loss and the alleged misrepresentations. That is all that is required in the Second Circuit. Finally, the Securities Act Individual Defendants and the Exchange Act Individual Defendants contend that because Plaintiff failed to adequately plead predicate Sections 10(b) and 11 violations, Plaintiff's claims under Sections 20(a) and 15, respectively, should be dismissed. However, Plaintiff has adequately pled such predicate violations, and as such, their argument fails. The Exchange Act Individual Defendants also argue that with respect to the Section 20(a) claim, Plaintiff failed to allege that they were culpable participants in the alleged fraud. However, for the reasons set for above regarding their scienter, the SAC plausibly alleges their culpable participation under Section 20. Additionally, Plaintiff alleged they signed the SEC filings that contained the misleading statements at issue in this action. At the pleading stage, Plaintiff has adequately alleged Section 20(a) claims against them.

## II.    FACTUAL BACKGROUND

Xiao-I, through its subsidiaries, operates as an AI company. The Company is incorporated in the Cayman Islands and headquartered in China. As a holding company with no material operations of its own, Xiao-I conducts most of its operations through its subsidiary Shanghai Xiao-I Robot Technology Co., Ltd. ("Shanghai Xiao-i"), a variable interest entity in China that comprises the Company's AI business. ¶59. On December 20, 2022, Xiao-I filed its Registration Statement with the SEC in connection with the IPO, which, after several amendments, was declared effective on March 8, 2023. ¶61. On or about March 9, 2023, Xiao-I conducted its IPO, issuing 5.7 million of its ADSs to the public at the Offering price of $6.80 per ADS for proceeds of over $36 million to the Company, and over $2.7 million in fees to the Securities Act Underwriter

Defendants. ¶¶62-63, 50.

**A.    The Company's Registration Statement and 2022 20-F Report Omitted Material Facts Required to Be Stated Therein and Necessary to Make the Statements Therein Not Misleading Due to the Company's Failure to Comply with Section 210.5-03(b)(2) of Regulation S-X**

The Registration Statement contained the Company's consolidated financial statements for the years ended December 31, 2020 and 2021, as well as for the six months ended June 30, 2021 and June 30, 2022. ¶64. It also stated the Company has four lines of business from which it generates revenue, including: (i) the sale of software products and service; (ii) maintenance and support ("M&S") service; (iii) the sale of hardware products; and (iv) the sale of cloud platform products.[3]

Regulation S-X is an SEC regulation under the Securities Act that outlines how registrants must report and disclose information relating to financial statements in registration statements, periodic reports, and other filings. ¶67. "[T]he purpose of [Section 210.5-03 of Regulation S-X] is to indicate the various line items which, if applicable, … should appear on the face of the statements of comprehensive income filed." ¶68; 17 C.F.R. § 210.5-03(a). Section 210.5-03(b) directs issuers to separately disclose revenue from five specified classes of revenue if those classes, or some logical or operational interpretation thereof, constitute more than 10% of the sum of the revenue classes. ¶69; 17 C.F.R. § 210.5(b). These classes include: "(a) *Net sales of tangible products* (gross sales less discounts, returns and allowances), (b) operating revenues of public

---

[3] The Company's: (i) sale of software products and service consists of "software products sold to customers comprising customized software products for specific needs" – i.e., the sale of products and, seemingly, the provision of services; (ii) M&S service is "for software products contracts and consists of unspecified future software updates, upgrades, and enhancements as well as technical product support services, and the provision of unspecified updates and upgrades" – i.e., the provision of services; (iii) sale of hardware products line consists of "[h]ardware products sold to customers comprising the hardware designed for specific needs" – i.e., the sale of products; and (iv) sale of cloud platform products consists "of standardized software products uploaded to the [Company's] cloud platform" – i.e., the sale of products. ¶¶65-66.

utilities or others; (c) income from rentals; (d) *revenues from services*; and (e) other revenues." ¶69; 17 C.F.R. § 210.5-03(b)(1). And Section 210.5-03(b)(2) directs filers to "[s]tate separately" in the issuer's statement of comprehensive income "the amount of (a) *cost of tangible goods sold*, … (d) *cost of services*, and (e) *expenses applicable to other revenues.*" ¶70; 17 C.F.R. § 210.5-03(b)(2).

The Company's revenue classes that constituted more than 10% of the sum of the revenue classes for the years ended December 31, 2020 and 2021, and for the six months ended June 30, 2022, originated from *two classes* – (i) revenues from the sale of software products; and (ii) revenues from services. ¶71. Consequently, Section 210.5-03 mandated that the Company separately disaggregate revenue and costs for at least these two classes. ¶72. The Company's own nomenclature for the largest of these classes – "sales of software products and service" – is not comprised of the sale of products or the sale of services but instead, both of those things. *Id.*

This required information allows investors to make determinations about the gross margin in an entity's particular product or service revenue classes. ¶73. Gross margin is calculated as the difference between net sales and the direct costs incurred by a company to effectuate those sales – such as the cost of the goods sold or the direct cost of services – apart from overhead, non-cash expenses, and other operating expenses that an entity incurs when operating its business. *Id.* Gross margin is an important financial metric to investors because it provides unfiltered insight into whether an entity has the ability to make money from the very thing it purports to be in business to do – produce goods, or provide services. ¶74. This measure is especially important for emerging growth companies, like Xiao-I, because gross margin provides insight into whether the business endeavor itself is indeed profitable and may be expected to be in the long run. ¶74. In Accounting Standards Codification ("ASC") No. 220, Income Statement – Reporting Comprehensive Income,

8

the Financial Accounting Standards Board ("FASB") states that "[i]f used with related disclosures and other information in the financial statements, the information provided by reporting comprehensive income should assist investors, creditors, and others in assessing an entity's activities and entity's future cash flows." ¶75 (quoting ASC 220-10-10-2).

Despite the clear requirements of Section 210.5-03(b)(2), and the foundational elements set out by the FASB, Xiao-I failed to include cost of revenues by product or service revenue class in the financial statements set forth in the Registration Statement, which included the Company's Consolidated Statements of Operations and Comprehensive Income for the years ended December 31, 2020, and December 31, 2021, and the Company's Condensed Consolidated Statements of Operations and Comprehensive Income for the six months ended June 30, 2021 and June 30, 2022. ¶¶76-77. This was a material omission in contravention of an affirmative legal disclosure obligation. ¶76. Additionally, such omission caused the affirmative statements regarding "cost of revenues" therein to be misleading half-truth statements. *Id.*

On April 28, 2023, Xiao-I filed an annual report on Form 20-F, reporting the Company's financial and operating results for the quarter and year ended December 31, 2022 (the "2022 20-F"). ¶78. The 2022 20-F also failed to comply with Section 210.5-03(b)(2) by failing to report the Company's costs of revenues by product or service revenue class. ¶78. Notably, this disclosure highlights that in 2020, *three* identifiable revenue classes constituted more than 10% of the sum of all the revenues (two of which suggest they were service-type revenues, and one of which related to the sale of products). ¶79. In 2021, there were again *three* identifiable revenue classes that constituted more than 10% of the sum of all the revenues (two of which suggest they related to the sale of products, and one of which seemed to represent service type revenues). *Id.* Then, in 2022, there were *two* identifiable revenue classes that constituted more than 10% of the sum of all the

9

revenues (one was for services, and one was for the sale of products). *Id.* When taken together with the other accounts, there would still be a "products" revenue class and a "services" revenue class that were greater than 10% of total revenues in the period. *Id.* Additionally, in the 2022 20-F, the Company separated the "sale of software products and services" line of business, ¶¶65-66, into two separate lines of business – "sale of software products" and "sale of technology development services" – highlighting the point made above that this category was previously comprised of ***both*** products- and service-focused sources. ¶80.

On July 27, 2023, the SEC issued a letter to Xiao-I regarding the 2022 20-F. ¶81. The SEC Letter took issue with the Company's reported financial statements, and suggested the Company look to Section 210.5-03(b)(2) of Regulation S-X to amend and expand the disclosures in the financial statements included in the 2022 20-F. *Id.* With respect to technology development services, the letter also asked why technology development services was not included as a separate line of business in the Registration Statement but was included separately in the Company's 2022 20-F, filed just a month later. *Id.* In response to the SEC letter, the Company filed an amended annual report on Form 20-F/A on August 10, 2023. ¶82. The Amended 2022 20-F afforded newfound insight into the Company's gross margins by revenue class, information not otherwise known or discernible by investors for the periods presented. ¶83. It revealed that the line item previously referred to as "sale of software products and service" was comprised of two types of revenue classes expressly identified in Section 210.5-03 of Regulation S-X, and that the gross margins for the Company's technology development services line of business were significantly lower than the gross margins for its sale of software products for the periods presented. *Id.* For example, the gross margin for the sale of software products was 94.82% for 2021, compared to 52.52% for technology development services for the same period. *Id.* The Company's August 10,

10

2023 letter in response to the SEC letter separately disclosed that the lower margin technology development services line of business "represent[s] the Company's future revenue growth source." ¶84. The letter also stated that technology development services are "significant enough and necessary to change the presentation of the revenue breakdown to include revenue from technology development services as a separate line item, which will be more accurate for investors to understand the Company's business focus." ¶84.

On September 25, 2023, the Company filed a Form 6-K with a press release announcing its quarterly results for the six months ended June 30, 2023. ¶85. Following the lead of the Amended 2022 20-F and reaffirming the Company's own interpretation of the requirements of Sections 210.5-03 and 210.5-03(b)(2) of Regulation S-X, the press release also afforded newfound insight into the Company's gross margins by revenue class, information not otherwise known. *Id.* The disclosures on September 25, 2023, show that for the six months ending June 30, 2022, while Xiao-I reported higher revenues from "technology development services" than in "sales of software products," the gross margin was significantly higher in "sales of software products." ¶86. The gross margin from the sale of software products was 87.81% compared to 57.73% for technology development services for the same period. ¶86.

The Company's failure to disclose the cost of revenues information required by Section 210.5-03(b)(2) of Regulation S-X prior to amending its 2022 20-F as of and for the year ended December 31, 2022 (as well as for purposes of reporting its results for the six months ended June 30, 2022, and 2021, on September 25, 2023) made the financial statements included in the Registration Statement and 2022 20-F misleading to investors because it left them without required transparency regarding the embedded gross margin information by revenue class, as well as the direction of the Company with respect to its varied revenue streams, and an unduly favorable

11

picture of the Company's business. ¶87.[4] Given that 210.5-03(b)(2) of Regulation S-X required the Company to separately disclose the costs of revenues by product or service revenue class, and there is a large disparity in the costs of revenues across Xiao's varied revenue streams, investors would have considered this information to be material in making investment decisions about the Company. ¶88. Additionally, the foregoing information was and would have been further material to investors in view of Xiao-I's separate disclosure to the SEC that technology development services represented the Company's future revenue growth source. *Id.* The Company's failure to disclose pertinent gross margin measures by product or service revenue class (i.e., metrics that would otherwise be considered key performance indicators for a company, especially an emerging growth company ("EGC") like Xiao-I) left investors in the dark as to which of Xiao-I's revenue segments were least/most profitable and called into question whether management and the Board had been/were being transparent about the direction of the Company. ¶89. Additionally, the omission of such material facts rendered the Company's affirmative statements regarding "costs of revenues" mere half-truths and, therefore, materially misleading. *Id.*

**B.      The Company's Risk Factors in the Registration Statement and 2022 20-F Report Regarding China's Circular 37 Registration Were Materially Misleading and Violated Item 105 of Regulation S-K**

Xiao-I has the exclusive right to manage and direct all cash flow and assets of Shanghai Xiao-i and to direct and administrate its financial affairs and daily operation. ¶90. This is accomplished via a series of contractual arrangements between another of the Company's subsidiaries, Zhizhen Artificial Intelligent Technology (Shanghai) Co. Ltd. ("WFOE"), a wholly foreign-owned enterprise and LLC, and Shanghai Xiao-i and its subsidiaries. ¶90. Xiao-I's ability to transfer cash and other assets, including IPO proceeds, between itself, WFOE, and Shanghai

---

[4] ¶87 includes a table setting forth the gross margins for each segment of the Company's business for 2020, 2021 and the six months ended June 30, 2022.

Xiao-i is limited by applicable Chinese foreign exchange laws and regulations. ¶91. One such regulation, Circular 37, imposes registration requirements on Chinese residents that contribute domestic assets or interests to offshore companies, known as special purpose vehicles, as well as on foreign investment enterprises established by way of round-tripping. ¶92.[5]

Prior to and following the IPO, certain of Xiao-I's shareholders who were Chinese residents failed to comply with Circular 37 registration. ¶92. The Registration Statement contained Risk Factors that purported to warn of risks that may occur because of certain of Xiao-I's shareholders' non-compliance with Circular 37 Registration, while simultaneously failing to disclose the true scope and severity of those same risks. ¶93. But as explained herein, the headings and warning language were misleading and contained no specific mention about the Company's potential inability to receive and use the bulk of the IPO proceeds as intended, which would be devastating to the Company. ¶94. Defendants' failure to disclose the true scope and severity of risks that Xiao-I faced due to Chinese shareholders' non-compliance with Circular 37 Registration violated Item 105 of SEC Regulation S-K, 17 C.F.R. § 229.105, which required Xiao-I to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered." *Id.* When Xiao-I filed its 2022 20-F, it revealed for the first time the Company's potential inability to use the IPO proceeds for its intended purposes. ¶95. But these statements were also misleading and in violation of Item 105 of Regulation S-K, particularly given that the 2022 20-F also stated "we intend to use the net proceeds from the offering for research and development … and other capital expenditure, and other general

---

[5] In July 2014, the State Administration of Foreign Exchange promulgated the Circular on Issues Concerning Foreign Exchange Administration over the Overseas Investment and Financing and Roundtrip Investment by Domestic Residents via Special Purpose Vehicles ("Circular 37").

corporate purpose." ¶96.

In the July 27, 2023 SEC Letter, the SEC took issue with these alleged misleading statements and requested more explicit disclosures in the 2022 20-F's Risk Factors section concerning certain of Xiao-I's Chinese shareholders' non-compliance with Circular 37, particularly with respect to the Company's inability to use offering proceeds for its intended business purposes. ¶97. In response to the SEC Letter, the Company filed the Amended 2022 20-F on August 10, 2023, which disclosed that while the Company may be subject to restrictions being imposed on its foreign exchange activities resulting from the Chinese resident shareholders' failure to comply with Circular 37, and that WFOE may be unable to open new capital accounts with banks in China and may be restricted from remitting funds or handling other foreign exchange business until the non-compliance with Circular 37 is remediated, WFOE was able to open a new capital account and transferred most of the IPO proceeds from overseas to WFOE for Shanghai Xiao-i's product development and operations. ¶98. The exchange between Xiao-I and the SEC regarding the Company's Circular 37 risk disclosure cast doubt on the Company's transparency and negatively affected investor confidence, notwithstanding the Company's news, disclosed five months after the IPO, regarding the Company's ability to use the IPO proceeds in the manner intended. ¶99.

## III.    ARGUMENT

### A.    Rule 8(a)'s Pleading Standard Applies to Plaintiff's Securities Act Claims and Is Satisfied as to All Defendants

Rule 8(a)'s pleading standard, which requires plaintiff to offer only a short and plain statement of the claim showing that the pleader is entitled to relief, applies to Plaintiff's Securities Act claims. The Second Circuit recently clarified the pleading standards for complaints alleging both negligence-based and fraud-based securities claims in *Pappas*, 2024 WL 4588491, at *2. In

14

*Pappas*, the court stated that "[a] plaintiff may retain the application of the Rule 8 notice pleading standard by expressly pleading negligence, disclaiming fraud, eschewing language in its Section 11 … claim[] implying fraud or the elements thereof, and separating allegations supporting fraud claims from allegations supporting negligence claims." Plaintiff has done just that. "Plaintiff made more than nominal efforts to distinguish the negligence-based [Securities Act] claims from the [Exchange Act] fraud-based claims." *Id.* The SAC "expressly disclaims fraud [and] scienter [with respect to the negligence claims[6]] … and painstakingly segregates the fraud and negligence claims." *Id.*[7] "Each claim is set forth under its own heading and incorporates only certain factual allegations such that, although all claims follow a general recitation of the factual background, the Securities Act claims expressly do not incorporate [any] allegations … supporting a finding of scienter …."[8] *Pappas*, 2024 WL 4588491, at *2. Thus, Plaintiff has sufficiently alleged Section 11 claims sounding in negligence, to which the Rule 8 pleading standard applies. "Such allegations would be evaluated under Rule 8 if contained in a stand-alone complaint alleging violations only of the Securities Act;" and Plaintiff should "not be held to a higher standard because [she] also exercised [her] right to sue Defendants for securities fraud." *Pappas*, 2024 WL 4588491, at *2.

Defendants argue that the SAC invokes Rule 9(b) by employing certain phrases that are "classically associated with fraud." ECF No. 89 ("MTD.") at 14. However, these phrases have not been incorporated into Plaintiff's Section 11 claim. As such, this argument carries little weight as "plaintiff[] may plead Section 10(b) fraud and Section 11 negligence claims as alternatives, as long as the complaint is organized in a way that allows the court to determine which allegations support

---

[6] ¶31.
[7] *See* SAC's table of contents at i-ii, and *compare* ¶¶1, 3-30, 59-99, 107-21, 144-89, 190-205 (fraud-based claims), *with* ¶¶1-2, 4-143 (negligence-based claims).
[8] ¶¶31, 128, 138, 190, 200.

which claim." *In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at \*3 (S.D.N.Y. Jan. 10, 2017).[9]

The Securities Act Underwriter Defendants also contend that Rule 9(b) applies to Plaintiff's Section 11 claim against them because the Complaint alleges a Section 10(b) claim against Defendants Yuan and Weng; and also alleges the Securities Act Underwriter Defendants "reached understandings with Xiao-I's top executives as to" what disclosures about the Company would be made in the Registration Statement. *See* MTD at 14-15 & n.9; ¶53. Tellingly, they have not cited a single analogous case to support their argument.[10] And because their argument mainly relies on Plaintiff's allegations of fraud against other Defendants, their argument fails. *See In re Orion Sec. Litig.*, 2009 WL 2601952, at \*1-2 (S.D.N.Y. Aug. 20, 2009). Additionally, courts have applied Rule 8 to Section 11 claims against underwriters in cases with similar allegations. *See*, *e.g.*, *In re Chembio Diagnostics Sec. Litig.*, 586 F. Supp. 3d 199, 212, 226 (E.D.N.Y. 2022) (finding Rule 8 applied to Section 11 claim against underwriters where underwriters participated in several meetings where language to be used and disclosures to be made in registration statement

---

[9] *See Pappas*, 2024 WL 4588491, at \*2 (finding district court erred in not applying Rule 8 to Section 11 claim because, in part, the Securities Act claims incorporated only certain factual allegations and expressly did not incorporate any allegations supporting a finding of scienter); *Jumei*, WL 95176, at \*3 (declining to apply Rule 9(b) where Securities Act claims expressly did not include any fraud allegations and did not incorporate certain allegations in support of Exchange Act claims); *Lewy v. Skypeople Fruit Juice, Inc.*, 2012 WL 3957916, at \*9 (S.D.N.Y. Sep. 10, 2012) (same).

[10] The Securities Act Underwriter Defendants rely on *Ladmen Partners, Inc. v. Globalstar, Inc.*, 2008 WL 4449280, at \*12-13 (S.D.N.Y. Sept 30, 2008), in which the court applied Rule 9(b) to the Section 11 claim against the underwriters as "'the allegations [we]re inextricably interwoven with suggestions they deliberately turned a blind eye to known deficiencies.'" MTD at 14 (quoting *Ladmen*). Here, there are no allegations that the underwriters deliberately turned a blind eye to *known* deficiencies. And in *Ladmen*, the court stated that "in a number of allegations of essentially fraudulent conduct, the CSAC makes no effort whatsoever to distinguish the Underwriter Defendants from Globalstar and the Individual Defendants." *Ladmen*, 2008 WL 4449280, at \*12. That is far different from the allegations in the SAC.

were discussed and Section 10(b) claims were alleged against company, officers, and directors). Moreover, underwriters typically reach understandings with issuers regarding the information to be included in the registration statement, including the offering price. *See*, *e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 675 (S.D.N.Y. 2004) (discussing role of underwriters and noting that in another case, the underwriters "attend[ed] due diligence meetings at which the proposed registration statement *was reviewed line by line*").[11] Consequently, Plaintiff's allegation that the Securities Act Underwriter Defendants reached understandings with the Company's top executives does not change a negligence claim against them to a claim sounding in fraud.

The Securities Act Individual Defendants contend that the SAC fails to satisfy Rule 8 as to them because it fails to allege what they knew, what actions they took, or how they participated in the alleged misconduct. MTD at 18. They are wrong. "Section 11 liability extends not only to 'every person who signed the registration statement,' but also to 'every person who, with his consent, is named in the registration statement as being or about to become a director.'" *In re GigaCloud Tech. Inc. Sec. Litig.*, 2025 WL 307378, at *9 (S.D.N.Y. Jan. 27, 2025) (quoting 15 U.S.C. §77k(a)(1), (3)). Section 11 "places a relatively minimal burden on a plaintiff, which is met so long as plaintiffs plausibly allege that the defendant omitted material information that it was required to disclose or made material misstatements" in the Registration Statement. *Winter v. Stronghold Digit. Mining, Inc.*, 686 F. Supp. 3d 295, 306 (S.D.N.Y. 2023). *See*, *e.g.*, *In re CIT Group Inc. Sec. Litig.*, 2010 WL 2365846, at *7-8 (S.D.N.Y. June 10, 2010) (finding plaintiff

---

[11] *See also In re Nio, Inc. Sec. Litig.*, 2023 WL 5048615, at *15 n.15 (E.D.N.Y. Aug. 8, 2023) ("Prior to the IPO, ... the underwriters expressed the opinion that the status of the construction project would matter to investors and therefore impact the price ..., and the ... registration statement was changed to accommodate this belief."); *see* Investing in an IPO, SEC Publ'n No. 133 (2/13), at 4 ("The company and the underwriters make the decision on where to set the offering price…. It is important to understand that the offering price is determined by . . . *negotiation*."), available at https://www.sec.gov/files/ipo-investorbulletin.pdf.

sufficiently pled, under the standard of Rule 8, that each defendant who signed the registration statement violated Section 11 because the company failed to properly disclose certain risks and account for impaired loans in the financial results); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 296 (S.D.N.Y. 2003) ("Plaintiffs have sufficiently pled, under the standard of Rule 8, that all those who signed the registration statement or prospectus violated Section 11 because those documents failed to disclose the fraudulent scheme ...."). Plaintiff's allegations here also satisfy Rule 8. *See* ¶¶1-2, 4-121, 128-37. Moreover, "numerous district courts in this Circuit have explained that plaintiffs are not required to allege that defendants in Section 11 . . . claims knew, or should have known, of any material omitted facts or misstatements at the pleading stage." *Winter*, 686 F. Supp. 3d at 306. The Company also contends that Plaintiff failed to satisfy Rule 8 because "the SAC provides no factual allegations beyond boilerplate assertions that it 'issued' alleging misleading statements." MTD at 18. But this argument is meritless and Xiao-I has not cited a single case to support its argument. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 718 (2d Cir. 2011) ("[P]laintiffs need only satisfy ... Rule 8 [and] [s]o long as plaintiffs plausibly allege that [the company] omitted material information that it was required to disclose or made material misstatements in its offering documents, they meet the relatively minimal burden of stating a claim pursuant to Section[] 11 ...  under which ... [the company's] liability as an issuer is absolute.")

The SAC also meets the notice requirements of Rule 8 as to the Securities Act Underwriter Defendants. It alleges that they served as the underwriters for the IPO; caused the Registration Statement to be filed with the SEC and declared effective; earned over $2.7 million in fees; assisted the Company in planning the IPO and purportedly conducted a reasonable due diligence investigation; reached understandings with the Company's top executives as to strategy, terms of the IPO, including the price at which Xiao-I ADSs would be sold, the language to be used in the

18

Registration Statement, and what disclosures about Xiao-I's business and operations would be made in the Registration Statement; and what responses would be made to the SEC in connection with its review. Plaintiff further alleged that the Registration Statement was negligently prepared, and omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading; and none of Securities Act Underwriter Defendants made a reasonable investigation as to whether the Registration Statement omitted to state such material facts; and a reasonable investigation would have revealed that the Registration Statement omitted to state such material facts. ¶¶32, 49-58. "These allegations are sufficient, when judged against the requirements of Rule 8, to give the Underwriter Defendants 'fair notice of the basis of the claims against them ….'" *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *8 (S.D.N.Y. Mar. 12, 2013). They argue that the SAC fails to satisfy Rule 8 because Plaintiff does not allege what they actually "knew or should have known." But numerous district courts in this circuit have held that plaintiffs are not required to include such allegations. *Winter*, 686 F. Supp. 3d at 306. Additionally, at the pleading stage, additional allegations about their failure to conduct a reasonable due diligence investigation, are not required to satisfy Rule 8. Plaintiff has "provide[d] the grounds upon which [her] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *In re Tufin Software Techs. Ltd. Sec. Litig.*, 2022 WL 596861, at *4 (S.D.N.Y. Feb. 25, 2022) (Woods, J.). Nothing more is required.

**B. Plaintiff Sufficiently Alleged that (i) the Registration Statement Omitted Material Facts Required to Be Stated and Necessary to Make the Statements Therein Not Misleading for Purposes of Plaintiff's Securities Act Claims, and (ii) Defendants Made Materially False and/or Misleading Statements in the Registration Statement and 2022 20-F for Purposes of Plaintiff's Exchange Act Claims**

**1. Material Omissions and Half-Truth Statements Related to Xiao-I's Failure to Comply with Section 210.5-03(b)(2) of Regulation S-X**

The Registration Statement and 2022 20-F failed to disclose Xiao-I's costs of revenues by

19

product or service revenue class, which was an omission in contravention of an affirmative legal disclosure pursuant to Section 210.5-03(b)(2) of Regulation S-X. The information required to be disclosed allows investors to make determinations about an entity's gross margin in each particular product or service line from which it generates substantive revenues. As discussed above, gross margin is an important financial metric to investors because it provides unfiltered insight into whether an entity has the ability to make money from the very thing it purports to be in business to do, and is especially important for EGCs, like Xiao-I. *See* ¶¶73-74. The Company's failure to disclose pertinent gross margin measures by product or service revenue class left investors in the dark as to which of Xiao-I's revenue segments were least/most profitable and called into question whether management and the Board of Directors had been/were being transparent about the direction of the Company. Additionally, the omission of such material facts rendered the Company's affirmative statements regarding "cost of revenues" mere "half-truths" and, therefore, materially misleading. ¶¶11, 89, 103, 119, 154, 159, 164.

Defendants contend that Plaintiff fails to adequately plead that Regulation S-X "created any clear affirmative legal disclosure obligation," MTD at 20, but the SAC explains that the failure to disclose Xiao-I's costs of revenues by product or service revenue class in the Registration Statement and 2022 20-F was an omission in contravention of an affirmative legal disclosure obligation pursuant to Section 210.5-03(b)(2) of Regulation S-X. *See* ¶¶9, 67-72, 76, 76 n.6, 77 n.7, 103, 154, 159, 164. Additionally, Defendants fail to cite any caselaw in support of their argument that Xiao-I may disregard the disclosure requirements set forth in SEC regulations. *See*, *e.g.*, *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 231-32 (S.D.N.Y. 2023) ("Section 11 imposes liability where the plaintiff establishes ... 'a material omission in contravention of an affirmative legal disclosure obligation.' Such affirmative obligations include the requirements set

forth in Items 303 and 105 of Regulation S-K."). Moreover, the SEC took issue with the Company's failure to comply with Section 210.5-03(b)(2) of Regulation S-X, and the Company filed an Amended 2022 20-F and disclosed the required information in response thereto. ¶¶81-83.

Relying on *Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 617 n.3 (S.D.N.Y. 2021), Defendants argue that the "reported *revenue* was facially accurate, thereby defeating any Section 11 claim *premised on a material omission*." MTD at 20. But *Willard* does not support Defendants' argument. In *Willard*, the court stated plaintiffs abandoned the material misrepresentation assertion "*and, instead, put all of their proverbial eggs in the material-omission basket,*" 527 F. Supp. 3d at 617, which "is just as well because it is well settled that a violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data," *Id.* 617 n.3.[12] Rather, *In re Sturm, Ruger & Co. Sec. Litig.*, 2011 WL 494753, at *6-7 (D. Conn. Feb. 7, 2011), is more analogous to the present case. In *Sturm*, the court found plaintiff had sufficiently alleged that historical numbers were materially misleading, even though their accuracy was not challenged, where plaintiff alleged additional information should have been disclosed to place those numbers in context. Here, that additional information was required pursuant to Regulation S-X.[13]

---

[12] The other cases cited Defendants have a recurring theme and are irrelevant. *See* MTD at 20 n.14. In *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 210 (S.D.N.Y. 2004) ("*IPO*"), the court stated that with respect to Section 11 claims, "the disclosure of accurate historical data does not become misleading *even if less favorable results might be predictable by the company in the future*." The other cases cited by Defendants have similar holdings. But here, there are no allegations that statements were misleading because less favorable results were predictable by the Company in the future. Moreover, in the *IPO* case, and unlike here, the court explained plaintiffs failed to adequately allege how the statements of historical fact were made misleading as a result of the alleged omissions. 358 F. Supp. 2d at 210.

[13] Defendants also present arguments to the extent Plaintiff alleges a violation of Section 11 or 10(b) based on Xiao-I not including technology development services as a separate revenue source in the Registration Statement. MTD at 21. Plaintiff does not make this claim.

### 2.    Materially Misleading Statements Regarding Circular 37

As stated in the Registration Statement and 2022 20-F, the Company was aware that, prior to the IPO, some of its shareholders residing in the PRC were not in compliance with Circular 37, which subjected the Company to various risks. The Registration Statement and 2022 20-F contained materially misleading statements that failed to disclose the true scope and severity of those risks, including the Company's potential inability to use the IPO proceeds for its intended business purposes, such as research and development, which is crucial in the AI business. Additionally, Defendants' failure to disclose the true scope and severity of such risks violated Item 105 of SEC Regulation S-K, which required Xiao-I to provide under the caption "Risk Factors" a discussion of the material factors that make an investment in the Company or offering speculative or risky and concisely explain how each risk affects the Company or the securities being offered. ¶¶14, 90-99, 104-06, 155-157, 160-62.

For example, the heading for the relevant Risk Factor in the Registration Statement purported to warn that ***"[s]ome of our shareholders are not in compliance with the PRC's regulations relating to offshore investment by PRC residents, and as a result, <u>the shareholders</u> may be subject to penalties if we are unable to remediate the non-compliance."*** ¶¶104, 155. But this heading was misleading. As the SEC pointed out in its letter, the heading indicated that a result of non-compliance, certain shareholders may be subject to penalties. ¶108. Additionally, the description of the risks under this heading states:

> Currently, most of our shareholders have completed Circular 37 Registration and are in compliance. Some of our beneficial owners, who are PRC residents, have not completed the Circular 37 Registration…. ***The Chinese resident shareholders' failure to comply with Circular 37 registration may result in restrictions being imposed on part of foreign exchange activities of the offshore special purpose vehicles, including restrictions on its ability to receive registered capital as well as additional capital <u>from Chinese resident shareholders</u> who fail to complete Circular 37 registration.***

¶¶104, 155. This was misleading for a few reasons. First, the phrase "offshore special purpose vehicles" is not a defined term in the Registration Statement and the Company is not identified in the sentence. To the extent this is a reference to the Company, this language implied there might be restrictions on the Company's ability to receive registered capital *and* additional capital *from Chinese resident shareholders who are not in compliance.* Similarly, statements in the Registration Statement that certain PRC residents are currently not in compliance with Circular 37 and "may limit *our PRC subsidiary's* ability to increase its registered capital ... or otherwise expose us to ... penalties under PRC law" and "may be restrict[] ... our ability to contribute additional capital to our PRC subsidiary" (¶¶105, 156), do not put a reasonable investor on notice of the true scope and severity of the risk that the Company may not be able to use the IPO proceeds for their intended use.

The 2022 20-F also contained materially misleading Circular 37 risk disclosures. The heading for the relevant Risk Factor states: ***"Some of our shareholders are not in compliance with the PRC's regulations relating to offshore investments activities by PRC residents, and as a result, currently WFOE [as opposed to the Company] is unable to open a new capital account with banks within China, and may be restricted from remitting funds or handling other foreign exchange businesses within China unless and until we remediate the non-compliance."*** ¶160. This Risk Factor heading does not put a reasonable investor on notice of the true scope and severity of ***the Company's*** Circular 37 risk. The description of the risks under that heading states that the PRC residents' failure to comply with Circular 37 Registration "***may result in restrictions being imposed on part of foreign exchange activities of the offshore special purpose vehicles, including restrictions on its ability to receive registered capital as well as additional capital from Chinese resident shareholders who fail to complete Circular 37 registration."*** *Id.* Again, this was

23

misleading. The phrase "offshore special purpose vehicles" is not a defined term in the 2022 20-F and the Company is not identified in the sentence. To the extent this is a reference to the Company, this language implied there might be restrictions on the Company's ability to receive registered capital *and* additional capital *from Chinese resident shareholders who are not in compliance.* The second to last statement in this risk disclosure states: ***"Currently, we are unable to use most of the IPO proceeds []for product development and company operations because we are unable to transfer the funds from Xiao-I Corporation to WFOE and then to the VIE due to WFOE's inability to open a new capital account as discussed above."*** *Id.* But this too was misleading and the SEC called attention to the language used to describe these risks. The SEC stated that "the description of the risks may imply that restrictions on foreign exchange activities and ability to receive registered capital are limited to interactions between the WFOE and the shareholders that failed to complete Circular 37 registration. Please revise this risk factor and throughout your filing to clarify the risks and potential impact to the company and the PRC operating entities as a result of PRC resident shareholders that do not comply with Circular 37 registration, ***including explicit discussion of the potential inability to use offering proceeds for business development and operations as intended***." ¶108. The 2022 20-F also stated: ***"We intend to use the net proceeds from the [IPO] offering for research and development, investment in technology infrastructure, marketing and branding, and other capital expenditure, and other general corporate purpose."*** ¶161. But this too was misleading because the Company was unable at the time to use most of the IPO proceeds for the intended product development and company operations. The SEC instructed the Company to revise this disclosure "to prominently disclose that you are currently unable to use most of the IPO proceeds ... because you are unable to transfer the funds from Xiao-I Corporation

24

to the WFOE and then to [Shanghai Xiao-i]." ¶108.[14]

"Viewed in their totality, and drawing all inferences in [Plaintiff's] favor, the ... risk disclosures plausibly gloss[ed] over the relevant risk, focus[ed] investors' attention elsewhere, and thereby le[d] them down some primrose path." *Lian v. Tuya Inc.*, 2024 WL 966263, at \*14 (S.D.N.Y. Mar. 5, 2024).

### 3.    Neither the PSLRA's Safe Harbor Nor the Bespeaks Caution Doctrine Protects the Circular 37 Statements

Defendants contend that the Circular 37 statements[15] are protected by the PSLRA's safe harbor for forward-looking statements (*see* MTD at 25), but they are wrong. The safe harbor provides that "a defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010). "[A] statement may contain some elements that look forward and others that do not, and forward-looking elements may be severable from non-forward-looking elements." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016).

Here, neither the PSLRA's safe harbor nor the bespeaks caution doctrine is applicable because Plaintiff alleged the Registration Statement and 2022 20-F contained materially misleading statements that failed to disclose the true scope and severity of risks that Xiao-I faced due to certain of its Chinese shareholders' non-compliance with Circular 37 Registration. ¶14. In

---

[14] Defendants argue that because the Company was ultimately able to navigate through the Circular 37 problems *months after the IPO*, Plaintiff failed to adequately plead materiality with respect to these misleading risk factors. MTD at 28. They are wrong. First, Plaintiff alleges that Defendants themselves included the Circular 37 statements in the "Risk Factors" section of the Registration Statement and 2022 20-F, which, pursuant to Item 105 of SEC Regulation S-K, includes a discussion of *the material factors* that make an investment in the Company or offering speculative or risky. *See* ¶¶14, 93-96. Additionally, any risk factor that purports to address the Company's ability to use IPO proceeds for their intended use are obviously material to investors.
[15] ¶¶104-05, 155-56, 160-61.

the Second Circuit, courts have consistently held that neither the PSLRA's safe harbor, nor the bespeaks-caution doctrine, protects statements alleged to have omitted material information. *In re Axsome Therapeutics, Inc. Sec. Litig.*, 2025 WL 965265, at *6 (S.D.N.Y. Mar. 31, 2025); *Rudani v. Ideanomics, Inc.*, 2020 WL 5770356, at *6 (S.D.N.Y. Sept. 25, 2020); *see Bazzelle v. NovoCure Ltd.*, 2025 WL 843668, at *19 n.22 (S.D.N.Y. Mar. 18, 2025) (Woods, J.).[16]

Additionally, "statements about present or historical fact, whose accuracy can be determined at the time they were made" are not forward-looking statements. *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *13 (S.D.N.Y. Mar. 25, 2013); *In re Romeo Power Inc. Sec. Litig.*, 2022 WL 3701095, at *2-3 (S.D.N.Y. Aug. 25, 2022). Here, the Registration Statement and 2022 20-F stated that certain PRC shareholders are *currently* not in compliance with Circular 37 Registration, which subjected the Company to various risks.[17] One of the most material risks – the Company's potential inability to use the IPO proceeds for their intended use – was an identifiable risk when the challenged statements were made. In fact, Defendants contend this potential penalty was clearly set forth in the Registration Statement and 2022 20-F. MTD at 21-23.

For these reasons, their argument fails.

### 4. Plaintiff Adequately Alleged that the Exchange Act Individual Defendants' SOX Certifications Were Materially False or Misleading

Plaintiff alleged that the Exchange Act Individual Defendants' Sarbanes-Oxley ("SOX") certifications appended to the 2022 20-F were false or misleading. ¶163. As this Court found in

---

[16] Defendants cite to *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 412 (S.D.N.Y. 2020), which they claim "protect[s] forward-looking statements about intended regulatory compliance and use of IPO proceeds" (MTD at 25), but their reliance is misplaced. *Sogou* specifically states that "[t]his is not a case where a [risk] disclosure ... disproportionately communicated the severity of the risk posed" (*Sogou*, 465 F. Supp. 3d at 411), as here, and the *Sogou* opinion does not address statements about the use of IPO proceeds or include any forward-looking statement analysis.

[17] ¶¶93-95, 104-05, 155-56, 160.

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at \*12 (S.D.N.Y. Apr. 14, 2020) (Woods, J.), SOX certifications are "material, as investors may have relied on [the] certifications in deciding whether to invest in [the Company]." The Exchange Act Individual Defendants fail to directly address these allegations. As such, they waived any argument that the SOX certifications constitute inactionable opinion. *Lozada v. TaskUs, Inc.*, 710 F. Supp. 3d 283, 307 (S.D.N.Y. 2024). Moreover, even if they had raised the argument, the SOX certifications are actionable because the Exchange Act Individual Defendants' scienter is adequately alleged. *See infra* pp. 28-30; ¶¶165-75; *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 655 (S.D.N.Y. 2017).

## C.     The Exchange Act Defendants' Reliance Argument Fails

The Exchange Act Defendants argue that Plaintiff's securities fraud claim should be dismissed because Plaintiff is not entitled to either (i) the presumption of reliance under the fraud-on-the-market doctrine "because there was no misrepresentation" and "the market was informed of the risks and financial performance ... negating any price impact from the alleged omissions," or (ii) the *Affiliated Ute* presumption, because it does not apply to half-truth statements (which resulted from the Company's failure to comply with Section 210.5-03(b)(2) of Regulation S-X). MTD at 32. Here, Plaintiff is entitled to the presumption of reliance under the fraud-on-the-market doctrine. *See* ¶¶187-88. The SAC sets forth a number of alleged statements that were materially false or misleading. *See* ¶¶152-53, 155-56, 158, 160-61, 163; Ex. A. Half-truth statements are actionable misleading statements. *Tufin*, 2022 WL 596861, at \*6. Indeed, in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024), the Supreme Court described half-truths as the failure to disclose information "necessary to ensure that statements already made are clear and complete." And the Supreme Court has long held that plaintiffs may

be entitled to the fraud-on-the market presumption in connection with materially misleading statements. *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). For these reasons, the Exchange Act Defendants' reliance argument fails.

## D.    Scienter Is Adequately Alleged

Scienter is sufficiently pled for purposes of Plaintiff's Section 10(b) claim against the Exchange Act Defendants. The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2)(A). "A plaintiff may satisfy the scienter requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness" (*Axsome*, 2025 WL 965265, at *8), but a plaintiff "need not rely exclusively on one of these theories" (*Skiadas v. Acer Therapeutics Inc.*, 2020 WL 4208442, at *4 (S.D.N.Y. July 21, 2020) (Woods, J.)). A strong inference of scienter arises if "a reasonable person would deem the inference of scienter … at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324-26 (2007). "The question is 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter ….'" *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *9 (S.D.N.Y. June 16, 2020) (Woods, J.) ("*Skiadas I*") (quoting *Tellabs*, 551 U.S. at 313) (emphasis in original). "At the motion to dismiss stage, a tie on scienter goes to the plaintiff." *Id.* at *10 (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012)).

The Complaint alleges that Xiao-I required huge sums of money for R&D to compete in the AI industry and was in dire straits and desperate for a capital infusion prior to the IPO. ¶¶166-

28

69.[18] The financials in the Registration Statement show that as of June 30, 2022, Xiao-I had only $1.52 million in cash and cash equivalents, approximately $60.3 million in total liabilities, and an accumulated deficit of $72 million. For the six months ended June 30, 2022, the Company incurred negative cash flows from operations of $6.8 million. *The Company concluded that there was substantial doubt about its ability to continue as a going concern for a period of one year from the date that these interim financial statements were issued*. ¶166. In other words, the Exchange Act Defendants "admitted in [the Registration Statement] that they needed to raise funds for [Xiao-I] to remain viable." *Skiadas I*, 2020 WL 3268495, at *11.

The Company's 2022 20-F, filed after the IPO, also shows Xiao-I was desperate for capital *prior to* the IPO. The 2022 20-F states that as of December 31, 2021, and 2022, the Company had only $1.31 million and $1.03 million in cash and cash equivalents, respectively. For the years ended December 31, 2021, and 2022, the Company incurred negative cash flows from operations of $11.9 million and $10.9 million, respectively. ¶169. Additionally, as of December 31, 2021, and 2022, the Company had an accumulated deficit of $72.6 million and $78.5 million, respectively. *Id.*

District courts, including this Court, "have found allegations of motive adequate where the compan[ies] needed to fundraise to survive." *Skiadas I*, 2020 WL 3268495, at *11. *See also Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 350 (E.D. Pa. 2014) (finding plaintiff sufficiently alleged scienter by alleging that defendant was "sufficiently short on cash at the time of the alleged misrepresentations that it could not afford to finance an additional clinical trial as

---

[18] Indeed, on September 25, 2023, the Company filed a Form 6-K with an attached press release stating that for the six months ended June 30, 2023, research and development expenses "*grew by 708% year over year*" (from $3,669,196 for the six months ended June 30, 2022 to $29,649,703). ¶172.

the FDA had recommended, heightening its need for a lucrative stock sale"); *Voulgaris v. Array Biopharma Inc.*, 2020 WL 8367829, at \*24 (D. Colo. Nov. 24, 2020) (finding plaintiffs adequately alleged motive where, prior to the offering, defendant company had "amassed an accumulated deficit of $801.4 million and needed additional operating capital to ensure its ability to continue operations"). Moreover, the IPO proceeds were so important to the Company that top management – CEO Yuan and CFO Weng – had to be aware of its importance to the Company's operation. *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at \*5 (S.D.N.Y. Feb. 5, 2024).

Given that the Company concluded that there was substantial doubt about its ability to continue as a going concern, Yuan and Weng had different incentives from a generic corporate insider. ¶170. Indeed, they knew they were at risk of losing their jobs without a successful IPO. ¶170. *See Skiadas I*, 2020 WL 3268495, at \*11 ("An executive at a company that will go belly up if it fails to fundraise has different incentives from a generic corporate insider. One salient difference is that the ... executive has a stronger incentive to bet the farm in a reckless gamble because the alternative is certain failure."). "[Plaintiff] has alleged that Defendants had that incentive .... [and] [t]hat allegation supports [Plaintiff's] theory of scienter." *Id.*; *see* ¶175. Moreover, Plaintiff alleges "a concrete and personal benefit" to Yuan and Weng resulting from the fraud. *Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at \*2 (2d Cir. May 16, 2023).

Additionally, the fact that the Registration Statement (signed by Yuan and Weng) and the 2022 20-F (signed by Yuan), contained misleading Circular 37 risk warnings means that the Exchange Act Defendants were aware of the potential problems stemming from Circular 37, including the potential inability to use the IPO proceeds. Indeed, the Exchange Act Defendants misled investors as to the true risk concerning potential problems stemming from Circular 37, and rolled the dice and hoped for the best. ¶175.

Moreover, the fact that the Company disclosed the revenue information for its products and services lines of business as required by Section 210.5-03(b)(1) of Regulation S-X in both the Registration Statement and 2022 20-F (signed by CEO Yuan) but failed to disclose the costs of revenues by product or service revenue class as required by (b)(2), shows that the Exchange Act Defendants considered both Sections 210.5-03(b)(1) *and* (b)(2) of Regulation S-X prior to the IPO, and intentionally or recklessly chose not to comply with Section 210.5-03(b)(2) by not including the costs of revenues by product or service revenue class in both the Registration Statement and 2022 20-F. ¶174.

### E.    Loss Causation Is Sufficiently Alleged as to Plaintiffs' Section 10(b) Claim

"Under the prevailing practice in this District, loss causation need not be pleaded with particularity." *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2025 WL 368717, at *4 (S.D.N.Y. Jan. 31, 2025) (*Canaccord I*), *R. & R. adopted*, 2025 WL 934319 (S.D.N.Y. Mar. 26, 2025) (Woods, J.) (*Canaccord II*). "A short and plain statement in accordance with Rule 8 ... is sufficient." *Id.* "The Second Circuit has not determined whether [the notice requirements of Rule 8 or] Rule 9(b)'s heightened pleading standard applies to allegations of loss causation, but it has explained that, regardless of which pleading standard applies, the plaintiff's pleading burden is not a heavy one." *Canaccord II*, 2025 WL 934319, at *6. The complaint "must simply give Defendants some indication of the actual loss suffered and of a plausible causal link between the loss and the alleged misrepresentations." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187 (2d Cir. 2015). A plaintiff may adequately plead loss causation "by alleging [ ] the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud." *Sask. Healthcare Emp's. Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 393 (S.D.N.Y. 2024) (Woods, J.); *see also New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 53 (2d Cir. 2023).

Plaintiff has satisfied this standard. Plaintiff alleged that when the truth about the Company was revealed to the market, the price of Xiao-I ADSs dropped. The decline removed the inflation from the price of Xiao-I ADSs, causing real economic loss to investors who had purchased Xiao-I ADSs during the Exchange Act Class Period. The decline in the price of Xiao-I ADSs, when the corrective disclosures came to light, was a direct result of the nature and extent of the Exchange Act Defendants' materially false and/or misleading statements being revealed to investors and the market. ¶¶114, 120, 178-79. The disclosures that corrected the market price to eliminate the inflation caused by the Exchange Act Defendants' materially false and/or misleading statements are as follows:

As detailed in ¶¶99, 109-14, the Company filed its Amended 2022 20-F and response to the SEC Letter on August 10, 2023. The Amended 2022 20-F afforded newfound insight into the Company's gross margins by revenue class, information not otherwise known or discernible by investors for the periods presented. It revealed that the gross margins for the Company's technology development services line of business were significantly lower than the gross margins for its sale of software products for the periods presented – information that was not otherwise or previously known, and which could not have been known but for the disaggregation of the products-type and service-type revenues (and costs of revenues) embedded in the single line item "sale of software products and service." For example, the gross margin for the sale of software products was 94.82% for 2021 compared to 52.52% for technology development services for the same period. Investors likely viewed the Amended 2022 20-F and the Company's August 10, 2023 letter as a shift in part regarding the Company's expected primary revenue sources – from a higher margin products line of business to a lower margin services line of business, and wondered whether management and the Board had been/were being transparent about the direction of the Company.

The exchange between Xiao-I and the SEC regarding the Company's Circular 37 risk disclosures also clarified those risks, cast doubt on the Company's transparency, and negatively affected investor confidence notwithstanding the news about the Company's ability to use the IPO proceeds in the manner intended months after the IPO. In response to the disclosures in these SEC filings, Xiao-I's ADS price fell $3.07 per ADS over the following two trading days, or 38%, to close at $4.97 per ADS on August 14, 2023.

As detailed in ¶¶115-20, on September 25, 2023, the Company filed a Form 6-K along with a press release announcing its unaudited and unreviewed financial results for the first half of 2023. These disclosures show that while Xiao-I reported higher revenues from services such as "technology development services" than in "sales of software products," the gross margin was significantly higher in "sales of software products." The Company's failure to disclose the information required by Section 210.5-03(b)(2) of Regulation S-X prior to amending its 2022 20-F as of and for the year ended December 31, 2022, as well as filing its results for the six months ended June 30, 2022, and 2021, on September 25, 2023, made the financial statements included in the Registration Statement and 2022 20-F misleading to investors because it left them without required transparency, confusion about the direction of the Company with respect to its varied revenue streams, and an unduly favorable picture of the Company's business. The gross margin for software products was 87.81% for the six months ending June 30, 2022, compared to 57.73% for technology development services for the same period. Given that Section 210.5-03(b)(2) of Regulation S-X required the Company to separately disclose the costs of revenues for its products and services, and there is a large disparity in the costs of revenues across Xiao-I's varied revenue streams, investors would have considered this information to be material in making investment decisions about the Company. The Company's failure to disclose material gross margin measures

33

and metrics (that would otherwise be considered key performance indicators for a company, especially an EGC) left investors in the dark as to which of Xiao-I's revenue segments were least/most profitable and called into question whether management and the Board had been/were being transparent about the direction of the Company. Additionally, the omission of such material facts rendered the Company's affirmative statements regarding "cost of revenues" misleading as half-truth statements. On this news, Xiao-I's ADS price fell $0.30 per ADS, or 14.22%, to close at $1.81 per ADS on September 25, 2023.[19]

### F.    Plaintiff States a Claim under Both Sections 15 and 20(a)

The Securities Act Individual Defendants and the Exchange Act Individual Defendants contend that because Plaintiff failed to adequately plead predicate Sections 10(b) and 11 violations, Plaintiff's claims under Sections 20(a) and 15, respectively, should be dismissed. MTD at 35. However, because Plaintiff has adequately pled such predicate violations, their argument fails. *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *10 (S.D.N.Y. May 24, 2018); *FDIC v. Chase Mortg. Fin. Corp.*, 2013 WL 5434633, at *10 (S.D.N.Y. Sep. 27, 2013). The Exchange Act Individual Defendants also argue that with respect to the Section 20(a) claim, Plaintiff failed to allege that they were culpable participants in the alleged fraud. MTD at 35. However, for the reasons set for above regarding "the scienter element of the Section 10(b) claim,

---

[19] Defendants' brief includes a chart summarizing three loss causation arguments. MTD at 33. They contend "Alternative Market Factors: no isolation of price movement from broader market conditions or company-specific news" as to both corrective disclosures dates; and with respect to the August 10, 2023 corrective disclosure, there was "[m]ixed [i]nformation." *Id.* But these arguments are inappropriate at the pleading stage. They argue Plaintiff "cannot establish that the alleged omissions caused [Plaintiff's] losses" because the Company's financial difficulties continued after the alleged fraud was discovered and was unrelated to the alleged Circular 37 omissions or any fraudulent motivations. MTD at 34-35. However, the Company's financial difficulties after the Class Period are irrelevant for purposes of assessing whether loss causation was adequately pled. They also argue that with respect to the alleged September 25, 2023 corrective disclosure, the information was not corrective. MTD at 33. However, as explained above, Plaintiff adequately alleges how it was corrective.

the [SAC] plausibly alleges the relevant parties' culpable participation under Section 20." *Wang*, 661 F. Supp. 3d at 238. Additionally, Plaintiff alleged that the Exchange Act Individual Defendants signed the SEC filings that contained the misleading statements at issue in this action. ¶¶34-35, 151, 158. At the pleading stage, Plaintiff has adequately alleged Section 20(a) claims against them. *In re Arqit Quantum Inc. Sec. Litig.*, 774 F. Supp. 3d 505, 553 (E.D.N.Y. 2025).

## CONCLUSION

For all the above reasons, Defendants' motion should be denied in its entirety.

Dated: October 7, 2025

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Brenda Szydlo*
Jeremy A. Lieberman
Brenda Szydlo
Dean P. Ferrogari
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
bszydlo@pomlaw.com
dferrogari@pomlaw.com

*Attorneys for Lead Plaintiff Qiao Shiyao and the Proposed Classes*

**HAO & HAN LAW FIRM**
Junbo Hao
12B05, Tower A
Ocean Express Building
Chaoyang District, Beijing
People's Republic of China
Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for Lead Plaintiff Qiao Shiyao*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel*

## CERTIFICATION OF SERVICE

I, Brenda Szydlo, hereby certify that I filed a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: October 7, 2025

*/s/ Brenda Szydlo*
Brenda Szydlo