**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

QIAO SHIYAO, Individually and on Behalf of
All Others Similarly Situated,

                Plaintiff,

      v.

XIAO-I CORPORATION, HUI YUAN, WEI
WENG, WENJING CHEN, XIAOMEI WU,
JUN XU, ZHONG LIN, H. DAVID
SHERMAN, GREGORY K. LEE, GKL
CORPORATE/SEARCH, INC., AC
SUNSHINE SECURITIES LLC, SBI CHINA
CAPITAL FINANCIAL SERVICES
LIMITED, PRIME NUMBER CAPITAL LLC
and GUOTAI JUNAN SECURITIES (HONG
KONG) LIMITED,

                Defendants.

Case No. 24-cv-7837 (GHW)

**ORAL ARGUMENT REQUESTED**

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION
COMPLAINT**</u>

| | |
|---|---|
| **STINSON LLP** | **FAEGRE DRINKER BIDDLE & REATH LLP** |
| Richard J.L. Lomuscio | Andrew L. Van Houter |
| Nicole Khalouian | Christian J. Clark |
| 140 Broadway, Suite 2330 | 1177 Avenue of the Americas, 43rd Floor |
| New York, New York 10005 | New York, NY 10036 |
| (646) 883-7675 | (212) 248-3140 |
| richard.lomuscio@stinson.com | andrew.vanhouter@faegredrinker.com |
| nicole.khalouian@stinson.com | christian.clark@faegredrinker.com |
| | |
| *Attorneys for Defendants Xiao-I* | *Attorneys for Defendants AC Sunshine Securities* |
| *Corporation, Hui Yuan, Wei Weng,* | *LLC, SBI China Capital Financial Services* |
| *Wenjing Chen, Xiaomei Wu, Jun Xu,* | *Limited, Prime Number Capital LLC and Guotai* |
| *Zhong Lin, and H. David Sherman* | *Junan Securities (Hong Kong) Limited* |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.      PLAINTIFF'S SECTION 11 CLAIMS ARE SUBJECT TO RULE 9(b) ........................... 3

II.     THE SAC FAILS TO MEET RULE 8'S BASIC PLEADING REQUIREMENTS AS TO THE UNDERWRITER DEFENDANTS .................................................................. 6

III.   PLAINTIFF DOES NOT ALLEGE A MATERIAL OMISSION RELATED TO XIAO-I'S COMPLIANCE WITH SECTION 210.03(b)(2) ............................................... 6

IV.  PLAINTIFF DOES NOT ALLEGE THAT THE CIRCULAR 37 STATEMENTS WERE MATERIALLY MISLEADING ........................................................................ 9

V.    PLAINTIFF'S SECTION 10 CLAIMS SHOULD BE DISMISSED ............................... 11

       A.    The SAC Fails to Adequately Plead Reliance ........................................................ 12

       B.    The SAC Fails To Plead Scienter ......................................................................... 12

       C.    The SAC Fails To Plead Loss Causation ............................................................... 15

VI.  THE SAC FAILS TO PLEAD CONTROL PERSON LIABILITY ................................ 15

CONCLUSION ...................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995)......................................................................................................13

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)...............................................................................................................12

*Carpenter v. Oscar Health, Inc.*,
    No. 22-CV-3885 (VSB), 2025 WL 722729 (S.D.N.Y. Mar. 6, 2025)......................................6

*Coronel v. Quanta Capital Holdings Ltd.*,
    No. 07 Civ. 1405(RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ......................................5

*Diabat v. Credit Suisse Group AG*,
    23 Civ. 5874 (CM), 23 Civ. 6023 (CM), 23 Civ. 6039 (CM), 2024 WL
    4252502 (S.D.N.Y. Sept. 19, 2024).......................................................................................15

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...................................................................................................13

*In re Fannie Mae 2008 Sec. Litig.*,
    742 F.Supp.2d 382 (S.D.N.Y. 2010).........................................................................................8

*Fernandes v. Centessa Pharms, PLC*,
    1:22-cv-8805-GHW, 2024 WL 3638254 (S.D.N.Y. Aug. 2, 2024) ..........................................4

*Greco v. Qudian Inc.*,
    1:20-cv-577-GHW, 2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) ........................................14

*Harris v. AmTrust Fin. Servs., Inc.*,
    135 F.Supp.3d 155 (S.D.N.Y. 2015), aff'd, 649 F. App'x 7 (2d Cir. 2016)..........................7, 8

*In re Initial Pub. Offering Sec. Litig.*,
    358 F.Supp.2d 189 (S.D.N.Y. 2004)......................................................................................15

*Iowa Pub. Emp. Ret. Sys. v. MF Global, Ltd.*,
    620 F.3d 137 (2d Cir. 2010)...................................................................................................11

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07 Civ. 0976(LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008).................................3

*Lau v. Opera Ltd.*,
    527 F.Supp.3d 537 (S.D.N.Y. 2021)......................................................................................11

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011)...................................................................................................5

*In re Lottery.com, Inc. Sec. Litig.*,
    715 F.Supp.3d 506 (S.D.N.Y. 2024)....................................................................................13

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ...............................................................................................13

*In re N. Telecom Ltd. Sec. Litig.*,
    116 F.Supp.2d 446 (S.D.N.Y. 2000).....................................................................................14

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
    No. 18-cv-9848, 2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ............................................10

*Pappas v. Qutoutiao Inc.*,
    23-1233, 2024 WL 4588491 (2d Cir. Oct. 28, 2024) ...........................................................4, 5

*In re Par Pharm., Inc. Sec. Litig.*,
    733 F. Supp. 668 (S.D.N.Y. 1990) .......................................................................................15

*In re Paysafe f/k/a Foley Trasimene Acquisition Corp. II Sec. Litig.*,
    21-cv-10611 (ER), 2025 WL 1003322 (S.D.N.Y. Mar. 31, 2025)...........................................9

*Pension Plan v. KE Holdings Inc.*,
    718 F.Supp.3d 344 (S.D.N.Y. 2024)................................................................................11, 13

*In re Plug Power, Inc. Sec. Litig.*,
    21-cv-2004 (ER), 2023 WL 5577276 (S.D.N.Y. Aug. 29, 2023)...........................................13

*Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc.*,
    No. 09 Civ. 6966(JGK), 2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) .................................14

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*,
    694 F.Supp.2d 287 (S.D.N.Y. 2010).....................................................................................14

*In re ProShares Tr. Sec. Litig.*,
    889 F.Supp.2d 644 (S.D.N.Y. 2012), *aff'd*, 728 F.3d 96 (2d Cir. 2013) .................................10

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*,
    714 F.Supp.2d 475 (S.D.N.Y. 2010)......................................................................................6

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).................................................................................................4

*Skiadas v. Acer Therapeutics Inc.*,
    1:19-cv-6137-GHW, 2020 WL 3268495 (S.D.N.Y. June 16, 2020) .......................................13

*Washington State Inv. Bd. v. Odebrecht S.A.*,
    17 Civ. 8118 (PGG), 2023 WL 5016787 (S.D.N.Y. Aug. 4, 2023) .........................................7

**Statutes**

15 U.S.C. § 77k..............................................................................1, 2, 3, 4, 5, 6, 8, 10, 12

15 U.S.C. § 77o...............................................................................................................15

15 U.S.C. § 77t................................................................................................................15

15 U.S.C. § 78j..............................................................................1, 2, 3, 4, 8, 11, 12, 13, 15

15 U.S.C. § 78u-4 ...........................................................................................2, 11, 12

**Rules**

17 C.F.R. § 210.5-03.......................................................................................2, 6, 7, 8

17 C.F.R. § 240.10b-5...............................................................................1, 2, 3, 4, 11, 12, 15

17 C.F.R. § 229.105 ........................................................................................................10

17 C.F.R. § 229.503 ........................................................................................................10

Fed. R. Civ. P. 8..............................................................................................5, 6, 14

Fed. R. Civ. P. 9..............................................................................................1, 2, 3, 6

Defendants[1], by and through their undersigned attorneys, respectfully submit this Reply in Further Support of their Motion to Dismiss[2], filed on September 2, 2025. (ECF Nos. 88-90.)

## **PRELIMINARY STATEMENT**

Nothing in Plaintiff's Opposition salvages their twice amended complaint. Plaintiff offers no meaningful response to Defendants' showing that the SAC's fraud allegations trigger Rule 9(b)'s heightened pleading standard for the Section 11 claims. Instead, Plaintiff argues that its fraud language is isolated to certain paragraphs and the Court can ignore that the fraud permeates the factual foundation of Plaintiff's claims. Plaintiff's Section 11 and Section 10(b) claims rest on identical alleged omissions. Plaintiff cannot claim these omissions were negligent for Section 11 purposes while also alleging they were fraudulent for Section 10(b) purposes. This nexus subjects both claims to Rule 9(b).

Nor can Plaintiff identify an actionable misstatement or omission. At bottom, Plaintiff's theory reduces to a dissatisfaction with the level of detail in Defendants' disclosures. Defendants' statements remained consistent throughout. The statements Plaintiff challenges remained consistent throughout. The Amended 2022 20-F did not correct, revise, or contradict anything in the Registration Statement or the original 2022 20-F. Plaintiff also fails to identify any specific legal obligation requiring the cost disclosures she demands, relying instead on general accounting principles that expressly permit Defendants' reasonable judgment. Plaintiff similarly cannot

---

[1] Unless otherwise indicated, defined terms have the same meaning as set forth in Defendants' memorandum of law in support of its motion to dismiss the Second Amended Complaint ("Motion"). "Plaintiff's Opposition" refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion. (ECF No. 91.)

[2] While the Corporate Defendants and Underwriter Defendants maintain distinct legal positions, the parties have consolidated their arguments into this single brief for judicial efficiency and to avoid duplicative briefing. The Court granted Defendants leave to file a consolidated Motion on August 28, 2025. (ECF No. 85.)

escape the fact that the Circular 37 disclosures warned of the very risks she claims were omitted, and her attempt to recharacterize forward-looking statements as present fact contradicts the plain language of the challenged disclosures.

Plaintiff fails to plead reliance as not having invoked the fraud-on-the-market presumption and proves only citations to paragraphs alleging various statements were false. Plaintiff's scienter allegations remain generic, describing motives common to most corporate officers that cannot, as a matter of law, establish fraudulent intent, and Plaintiff offers no response to Defendants' loss causation argument. The alleged "corrective disclosures" revealed no fraud: the Amended 20-F provided additional detail while maintaining identical financial results, and the Circular 37 disclosure announced successful resolution of a warned risk, not revelation of a concealed one.

For the reasons set forth in Defendants' Motion and herein, the Motion should be granted and the SAC dismissed with prejudice.

## ARGUMENT

Plaintiff's Opposition does not address the deficiencies in the SAC. *First*, the SAC's fraud allegations subject the Section 11 claims to Rule 9(b)'s heightened pleading requirements, which Plaintiff has not satisfied. *Second*, Plaintiff has not identified a legal obligation requiring separate disclosure of costs by segment under Regulation S-X Section 210.5-03(b)(2), nor demonstrated that any alleged omission was material. *Third*, the Registration Statement and 2022 20-F disclosed the risks associated with Circular 37 non-compliance that Plaintiff claims were omitted, and the challenged statements constitute forward-looking statements protected by the PSLRA's safe harbor. *Finally*, the SAC fails to plead reliance, scienter or loss causation sufficient to support Section 10(b) claims. Each deficiency requires dismissal.

## I.    PLAINTIFF'S SECTION 11 CLAIMS ARE SUBJECT TO RULE 9(B).

Plaintiff characterizes her fraud disclaimer as clear and distinct, but the disclaimer remains boilerplate and superficial, requiring the Court to look beyond labels to the substance of what is alleged. (Opp. at 15.) The flaw in Plaintiff's argument is that the Section 11 and Section 10(b) claims against the Corporate Defendants are based on the exact same alleged misstatements and omissions. For the Section 11 claim, Plaintiff alleges the Registration Statement omitted material facts concerning regulatory compliance, cost of revenues, and use of IPO proceeds. (SAC ¶¶59-127, 128-37.) For the Section 10(b) claim against the Company, CEO Yuan and CFO Weng, Plaintiff alleges materially false and misleading statements in the Registration Statement concerning the exact same topics: regulatory compliance, cost of revenues, and use of IPO proceeds. (SAC ¶¶144-89, 190-99.) The overlap is complete, not incidental. Plaintiff asks this Court to find that the Corporate Defendants negligently omitted certain facts while simultaneously finding they fraudulently concealed those same facts. Plaintiff cannot have it both ways. Where, as here, the Section 11 and Section 10(b) claims against the same defendants are based on identical alleged misstatements, the fraud allegations necessarily taint the negligence claims, and Rule 9(b) applies to both.

The SAC alleges the Company "obfuscated" and "downplay[ed]" information as part of a "scheme to defraud," was "concealing the adverse facts" "from investors," and that Underwriters "reached understandings" with the Company's executives about Registration Statement disclosures. (SAC ¶¶53, 154, 155, 159, 164, 177.) These fraud-based allegations remain inextricably interwoven throughout the complaint. *See Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976(LAP), 2008 WL 4449280, at *12-13 (S.D.N.Y. Sept. 30, 2008). Plaintiff argues that the fraud language cited by Defendants does not appear in the paragraphs incorporated into

3

the Section 11 claim and therefore is irrelevant. (Opp. at 15-16.) Not only is Plaintiff wrong,[3] this misses the point. Courts examine whether fraud allegations permeate the factual foundation of the claims, not whether plaintiffs have artfully segregated paragraph numbers. Both the Securities Act and Exchange Act claims draw from a common pool of fraud-based facts. *See Fernandes v. Centessa Pharms, PLC*, 1:22-cv-8805-GHW, 2024 WL 3638254, at *13 (S.D.N.Y. Aug. 2, 2024). The SAC alleges omissions rendered statements materially misleading as a result of the Corporate Defendants' alleged scheme to defraud. (SAC ¶¶53, 56, 165.) Moreover, as to the Underwriters, Plaintiff seeks to hold Defendants liable for language in the Registration Statement that was allegedly chosen as the result of fraud. That is a fraud claim.

The only authority relied on by Plaintiff, *Pappas v. Qutoutiao Inc.*, is inapposite.[4] *See id.*, 23-1233, 2024 WL 4588491, at *1 (2d Cir. Oct. 28, 2024). Unlike here, the complaint in *Pappas* alleged both Section 10(b) and Section 11 claims against an issuer, its officers and directors, and its group of underwriters, respectively. The district court in *Pappas* had dismissed the Section 10(b) claims against all defendants, a ruling the Plaintiff did not challenge on appeal. *See Pappas*, 2024 WL 4588491, at *1. Thus, when *Pappas* came before the Second Circuit, the only operative claims in the case going forward with respect to any defendant were based solely on negligence. This is different from the situation in this case in which the Section 11 negligence allegations

---

[3] The SAC suggests an expansive and deliberate understanding between the Underwriters and Xiao-I, Yuan, and Wen about all aspects of the Registration Statement, including the "Defendants' wrongful acts and omissions" which "left investors in the dark" as discussed in the facts specifically incorporated into the Count I Section 11 claim. (*See* SAC ¶¶11, 26, 89, 103, 119, 128.) These are "averments of fraud," triggering 9(b). *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (explaining that 9(b) "is cast in terms of the conduct alleged and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").

[4] *Pappas* is summary order from the Second Circuit; a fact Plaintiff fails to acknowledge in opposition.

4

themselves include Underwriters' "understandings" with the Company's "top executives," thus intertwining the SAC's fraud and negligence claims. *Pappas* itself instructs that the Rule 8 pleading standard is available to a plaintiff only by "eschewing language in its Section 11 or Section 12(a)(2) claims *implying fraud or the elements thereof, and separating allegations supporting fraud claims from allegations supporting negligence claims*." *Id.* at *2 (emphasis added). This is precisely where the SAC falls short.

Because Plaintiff's Section 11 claim sounds in fraud, Plaintiff must state with particularity facts giving rise to a strong inference of scienter—*i.e.*, that the Corporate Defendants and Underwriter Defendants acted with fraudulent intent. *See Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405(RPP), 2009 WL 174656, at *16 (S.D.N.Y. Jan. 26, 2009). Plaintiff does not even attempt to do so. Instead, she "specifically disclaims any allegation of fraud, scienter, or recklessness" as to the Section 11 Defendants. (SAC ¶31.)

Nor can Plaintiff rely on the identification of each Individual Defendant's title and role to establish that the Corporate or Individuals Defendants face strict liability under Section 11. Plaintiff insists that numerous courts have held that plaintiffs need not allege what defendants knew at the pleading stage (Opp. at 18, 20), but the cases Plaintiff cites involved complaints with substantial factual allegations about defendants' actual conduct, not mere recitations of titles and signatures. Plaintiff offers no meaningful response regarding Xiao-I beyond asserting that issuers face absolute liability. Even under *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 718 (2d Cir. 2011), plaintiffs must "plausibly allege" material omissions or misstatements. Plaintiff has not done so with any factual specificity as to Xiao-I and therefore, has not met its burden to plead a plausible Section 11 claim.

5

## II.    THE SAC FAILS TO MEET RULE 8'S BASIC PLEADING REQUIREMENTS AS TO THE UNDERWRITER DEFENDANTS.

Even if Rule 9(b) did not apply—and it does—the single Section 11 claim against the Underwriter Defendants still fails because Plaintiff offers only conclusory allegations, devoid of any factual support. The SAC merely pleads that the Underwriter Defendants had "access to internal, confidential, [and] current corporate information" but fails to plead that the Underwriter Defendants were privy to any of the purportedly omitted information. (SAC ¶52.) The SAC's assertions that the registration statement was "negligently prepared" and that the Underwriter Defendants failed to make a "reasonable investigation" (SAC ¶¶55-56) are nothing more than legal conclusions not factual allegations. Plaintiff claims that Section 11 places a "minimal burden on a plaintiff" (Opp. at 17), but the Opposition cites no case holding that asserting pure legal conclusions is sufficient to withstand the claim. Conclusory allegations are not enough and Plaintiff's failure to plead any facts as to the Underwriter Defendants dooms her claim even under Rule 8's pleading standard. *See Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*, 714 F.Supp.2d 475, 483 (S.D.N.Y. 2010) (granting underwriter's motion to dismiss where "bare-bones allegations [we]re insufficient to plead a plausible Section 11 claim against Merrill under any theory"); *Carpenter v. Oscar Health, Inc.,* No. 22-CV-3885 (VSB), 2025 WL 722729, at *3 (S.D.N.Y. Mar. 6, 2025) (dismissing Section 11 claim against underwriters under "less stringent pleading standard in Rule 8(a)" and noting that a complaint "must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action.").

## III.    PLAINTIFF DOES NOT ALLEGE A MATERIAL OMISSION RELATED TO XIAO-I'S COMPLIANCE WITH SECTION 210.03(B)(2).

Contrary to Plaintiff's contention, Section 210.5-03(b) of Regulation S-X does not create an affirmative legal obligation upon Defendants to separately disclose costs of revenues by product or service class on the face of the financial statements. (Opp. at 19-21.) Plaintiff relies on ASC

6

220, Income Statement – Reporting Comprehensive Income (SAC ¶¶73-75) for the proposition that cost breakdowns are required.[5] (Opp. 8-9, 20.) It is axiomatic that alleged deviations from accounting standards, without more, are insufficient to establish a material omission. Accounting standards "tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Harris v. AmTrust Fin. Servs., Inc.*, 135 F.Supp.3d 155, 171 (S.D.N.Y. 2015), aff'd, 649 F. App'x 7 (2d Cir. 2016). In *Harris,* the plaintiff alleged that the defendant violated GAAP by misclassifying loss and loss adjustment expenses during consolidation, converting underwriting losses into non-underwriting losses on different line items. *Id.* at 164. The court dismissed the claim, holding that the plaintiff failed to identify any specific provision of GAAP allegedly violated and "provide[d] no support for the notion that the way [defendant] classified its loss and loss adjustment expenses violated GAAP." *Id.* at 171-72, n.28.[6] Here, the SAC fails to articulate how the omission of granular cost breakdowns constitutes an omission in contravention of an affirmative legal disclosure obligation. Section 210.5-03(b)(2) establishes broad cost categories but does not mandate that these categories precisely mirror every revenue line item a company chooses to disclose. Moreover, the SEC's response confirms no mandatory requirement was violated. The SEC merely requested that Xiao-I consider Section 210.5-03(b)(2) when providing additional detail, not that the Company had violated the regulation or failed to satisfy an affirmative

---

[5] To the extent ASC 280, Segment Reporting, governs this guidance, segment information is typically disclosed in the notes to financial statements, not as line items on the face of the income statement. ASC 280 requires segment-level costs only if they are included in the measure of segment profit or loss reviewed by the chief operating decision maker or are otherwise regularly provided to the chief operating decision maker. The SAC alleges no facts that Xiao-I's management reviewed or used segment-level cost data in this manner.

[6] *see also Washington State Inv. Bd. v. Odebrecht S.A.*, 17 Civ. 8118 (PGG), 2023 WL 5016787, at *13 (S.D.N.Y. Aug. 4, 2023) (dismissing GAAP violation claim where plaintiff cited only general accounting guidance on common practice rather than specific Brazilian GAAP provision defendant allegedly violated)

legal disclosure obligation. *See In re Fannie Mae 2008 Sec. Litig.,* 742 F.Supp.2d 382, 408 (S.D.N.Y. 2010) (complaint failed to allege a GAAP violation or inference that defendant's judgment was unreasonable where federal regulators never claimed any violation or required a restatement). Plaintiff's disagreement with Xiao-I's business judgment about how to classify and present costs for integrated software offerings is "insufficient to allege that [Xiao-I] misstated facts in its consolidated financial statements in violation of [Section 10 or Section 11]." *Harris*, 135 F.Supp.3d at 171. Plaintiff has not articulated how Section 210.5-03(b) created an affirmative legal obligation to provide the cost breakdown she demands, and thus the SAC fails to allege an actionable omission.

Even if Plaintiff could establish an affirmative disclosure obligation, the alleged omissions with respect to Section 210.5-03 are not material or misleading. Plaintiff contends the omitted information provided insight into Xiao-I's business lines and profitability by segment. (Opp. at 8-12, 20.) But Xiao-I already disclosed segment revenues in its financial statements, providing investors with information about the Company's revenue mix and business focus. The alleged omissions concern only internal cost allocation across segments (granular detail about how management chose to categorize expenses), not information about actual business performance or profitability. The Company's total gross profit was accurately disclosed and unchanged. Plaintiff's theory improperly conflates "additional detail" with "material information." The fact that more data might be interesting or useful does not make its absence materially misleading when the overall financial picture is accurately disclosed.[7]

---

[7] *See e.g., Stadnick v Vivant Solar, Inc.* 861 F.3d 31, 38 (2d Cir. 2017) (total revenue and income are accurate indicators of a company's performance); *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2020 WL 1508748, at *9 (S.D.N.Y. Mar. 30, 2020) (declining to find a material misstatement where "some of the figures swing quite dramatically between the original statement and the 2019 restatement," but "when placed into the context of [the company's] operations, the

## IV.    PLAINTIFF DOES NOT ALLEGE THAT THE CIRCULAR 37 STATEMENTS WERE MATERIALLY MISLEADING.

Plaintiff's Circular 37 allegations are premised on the nondisclosure of information that was actually disclosed. Initially, Plaintiff argues for the first time in opposition that the phrase "offshore special purpose vehicles" was undefined and therefore misleading. (Opp. at 23-24.) This allegation appears nowhere in the SAC and should be disregarded. Plaintiff's Circular 37 theory otherwise rests on cherry-picking portions of risk disclosures while ignoring their full context and relying on the SEC's request for clarification as evidence that the disclosures were false or misleading. (Opp. at 23-24.) Plaintiff focuses on risk factor headings and selected phrases, arguing the Registration Statement and 2022 20-F did not adequately warn that non-compliance with Circular 37 could restrict the Company's ability to use IPO proceeds for their intended purposes. (Opp. at 22-24.) Courts, however, do not evaluate disclosure adequacy based on headings or isolated phrases divorced from context. *See In re Paysafe f/k/a Foley Trasimene Acquisition Corp. II Sec. Litig.*, 21-cv-10611 (ER), 2025 WL 1003322, at *18 (S.D.N.Y. Mar. 31, 2025) (risk disclosures not misleading where company disclosed regulatory changes could impact it both positively and negatively and plaintiffs cherry-picked language ignoring full context). The Company warned that Chinese shareholders' non-compliance with Circular 37 "may result in restrictions being imposed on part of foreign exchange activities of the offshore special purpose vehicles, including restrictions on its ability to receive registered capital." (SAC ¶¶104, 160.) The Registration Statement further stated that "our PRC subsidiary may be prohibited from distributing its profits and proceeds from any reduction in capital, share transfer or liquidation to us, and we

---

magnitude of these changes greatly diminishes"); *Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 27 (2d Cir. 2013) (summary order) ("Plaintiffs have failed to plead any reason why a reasonable investor would consider revenue from this one region standing alone material when making an investment decision.").

may be restricted in our ability to contribute additional capital to our PRC subsidiary" if shareholders failed to complete Circular 37 registration. (SAC ¶105.) The 2022 20-F disclosed that the Company "intend[s] to use the net proceeds from the [IPO] for research and development, investment in technology infrastructure, marketing and branding, and other capital expenditure, and other general corporate purpose" (SAC ¶161), that "some of our shareholders are not in compliance with the PRC's regulations relating to offshore investment activities by PRC residents" and warned that "WFOE is unable to open a new capital account with relevant banks within China according to their internal control policies and may be restricted from remitting funds or handling other foreign exchange businesses within China unless and until we remediate the non-compliance" and thus "are unable to use most of the IPO proceeds (for product development and company operations)." (SAC ¶¶155-156, 160.) These disclosures warned of exactly what Plaintiff contends were omitted; potential restrictions on the Company's ability to access and use capital, including IPO proceeds, due to Circular 37 non-compliance. *See In re ProShares Tr. Sec. Litig.*, 889 F.Supp.2d 644, 655 (S.D.N.Y. 2012), *aff'd*, 728 F.3d 96 (2d Cir. 2013) (dismissing Section 11 claim where it was "not possible to read the registration statements . . . without understanding that the ETFs were particularly risky and speculative…."). Nor does the SEC's comment letter establish that the disclosures constituted or materially misleading statements.

Plaintiff's arguments concerning Item 105 fail for similar reasons. Item 105 requires disclosure of "the most significant factors that make the offering speculative or risky", and an explanation of "how the risk affects the company and/or the securities being offered." *Panther Partners Inc. v. Jianpu Tech. Inc.*, No. 18-cv-9848, 2020 WL 5757628, at *7 (S.D.N.Y. Sept. 27, 2020) (citing 17 C.F.R. § 229.503(c)). Defendants satisfied their disclosure obligation when the Registration Statement warned of potential restrictions; the 2022 20-F disclosed when they

10

materialized; the Amended 2022 20-F disclosed successful resolution. *See Lau v. Opera Ltd.*, 527 F.Supp.3d 537, 551 (S.D.N.Y. 2021) ("[Defendants are] not required to disclose a fact merely because a reasonable investor would very much like to know that fact.").

As "statements whose truth cannot be ascertained until some time after they are made," the Circular 37 statements made in the Registration Statement, and the 2022 20-F are forward-looking statements. *Saskatchewan Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*, 718 F.Supp.3d 344, 386 (S.D.N.Y. 2024). "A forward-looking statement (accompanied by cautionary language) expresses the issuer's inherently contingent prediction of risk or future cash flow; a non-forward-looking statement provides an ascertainable or verifiable basis for the investor to make his own prediction." *Iowa Pub. Emp. Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 143 (2d Cir. 2010). Here, the challenged statements warned what "may result" from Circular 37 non-compliance; predictions about contingent future regulatory consequences whose truth could not be ascertained when made. To the extent Plaintiff argues these are not forward-looking statements because they concern current non-compliance with PRC regulations, this argument misses the mark. (Opp. at 26.) The allegedly misleading aspect of the statements is not the disclosure of present non-compliance, which the Company disclosed, but rather the predicted consequences of that non-compliance, specifically the potential inability to use IPO proceeds. The consequences are forward-looking. Plaintiff cannot escape the PSLRA's safe harbor by recharacterizing forward-looking statements about the potential future ability to use IPO proceeds as statements of present fact.

## V.     PLAINTIFF'S SECTION 10 CLAIMS SHOULD BE DISMISSED.

The Section 10(b) claims fail because Plaintiff has not adequately alleged either reliance, scienter, or loss causation. Plaintiff has not invoked the fraud-on-the-market presumption and fails to allege actual reliance. Plaintiff's motive theory relies on circumstances common to all corporate

11

officers and cannot establish fraudulent intent. Additionally, the alleged corrective disclosures did not reveal any fraud, precluding loss causation.

### A.   The SAC Fails to Adequately Plead Reliance.

Plaintiff has not invoked the fraud-on-the-market presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and therefore, must plead actual reliance. Plaintiff attempts to satisfy the reliance element by pointing to "a number of alleged statements that were materially false or misleading" (Opp. at 27 (citing ¶¶152-53, 155-56, 158, 160-6)), but simply labeling statements as false or misleading does not make them so. The reliance element requires Plaintiff to allege facts demonstrating that the alleged misstatements actually influenced her investment decision. Plaintiff has alleged no such facts. This is yet another example of Plaintiff's malleable approach to pleading. When convenient for Section 11, Plaintiff disclaims fraud and characterizes the alleged omissions as products of negligence. Similarly, Plaintiff labels the Circular 37 statements as omissions when arguing the PSLRA safe harbor does not apply. (Opp. at 25-26.) But when confronted with the reliance requirement for Section 10(b), Plaintiff pivots to characterize the same conduct as misstatements worthy of securities fraud liability. Plaintiff cannot adopt whatever theory is convenient for their argument to make that point. Plaintiff's failure to invoke the fraud-on-the-market presumption is fatal. Without that presumption, actual reliance must be pled with specificity. A block citation to thirty paragraphs alleging some statements were false does not meet this standard. Plaintiff must allege facts showing she was aware of specific statements and that those statements caused her to purchase the securities.

### B.   The SAC Fails To Plead Scienter.

Plaintiff's Exchange Act claims should be dismissed because the Plaintiff's allegations fail to raise the requisite strong inference of scienter. Plaintiff's scienter theory that Xiao-I needed capital to survive and that CEO Yuan and CFO Weng faced potential job loss without a successful

IPO (Opp. at 28-30) describes motives "common to most corporate officers" that "do not constitute 'motive' for purposes of" scienter. *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). As this Court has held, "allegations concerning Defendants' alleged desire to maintain the 'artificial' high price of the stock and to be profitable is not sufficient to plead scienter." *Saskatchewan Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*, 718 F.Supp.3d 344, 390 (S.D.N.Y. 2024). Merely relying on the Section 10 Defendants' role and involvement in company operations is insufficient. *Id.* Every emerging growth company needs capital. Poor financial performance does not amount to an intent to defraud. If such universal circumstances could establish scienter, "virtually every company in the United States that experiences a downturn . . . would be forced to defend securities fraud actions." *In re Lottery.com, Inc. Sec. Litig.*, 715 F.Supp.3d 506, 554 (S.D.N.Y. 2024) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995)).

Plaintiff's reliance on *Skiadas v. Acer Therapeutics Inc.*, 1:19-cv-6137-GHW, 2020 WL 3268495 (S.D.N.Y. June 16, 2020) is misplaced. (*See* Opp. at 28-29.) *Skiadas* involved a pharmaceutical company that allegedly made misrepresentations that the FDA had agreed to approve its drug without additional clinical development, when in fact the FDA had never made such an agreement. *Id.* at *11-12. The Court found plaintiffs adequately alleged that Defendants deliberately or recklessly misrepresented that the FDA agreed that it would approve the drug to keep the company afloat and that this constituted a calculated gamble. *Id.* at *12 (*citing Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) (Posner, J.)). Here, Plaintiff alleges no comparable misrepresentation, concealment of bad news, or "reckless gamble". The alleged omissions concern accounting presentation choices and risk disclosure detail, not false statements about regulatory approvals. *See In re Plug Power, Inc. Sec. Litig.*, 21-cv-2004 (ER),

13

2023 WL 5577276, at *17 (S.D.N.Y. Aug. 29, 2023) (holding that SEC comment letters do not support scienter inference where letters were resolved, primarily addressed non-GAAP presentation metrics, and SEC did not suggest fraud or ask further questions). Contrary to Plaintiff's contention, CEO Yuan and CFO Weng's officer positions and roles as signatories to the Registration Statement did not give them different incentives from generic corporate insiders or establish intent to defraud. "Accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F.Supp.2d 287, 300 (S.D.N.Y. 2010); *Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc.*, No. 09 Civ. 6966(JGK), 2011 WL 1198712, at *21 (S.D.N.Y. Mar. 30, 2011) ("[m]ere allegations that defendants signed various SEC filings" insufficient). The SAC alleges no stock sales or pecuniary gain beyond ordinary compensation— "inconsistent with an intent to defraud shareholders." *In re N. Telecom Ltd. Sec. Litig.*, 116 F.Supp.2d 446, 462 (S.D.N.Y. 2000); *Greco v. Qudian Inc.*, 1:20-cv-577-GHW, 2022 WL 4226022 at *25 (S.D.N.Y. Sept. 13, 2022) (executive compensation tied to stock value insufficient without more).

Contrary to Plaintiff's assertion, Defendants did not waive any arguments with respect to the Individual Defendants. Defendants' Motion argued that the SAC fails to satisfy even Rule 8's pleading standard because it contains no allegations about what these individuals knew, what actions they took, or how they participated in the alleged misconduct beyond their ministerial act of signing disclosure documents. (Motion at 17-18.) In any event, the SOX certifications are statements of opinion, not fact, and therefore do not establish fraudulent intent. CEO Yuan and CFO Weng certified that the Company's reports were accurate based on their knowledge, and as explained above and in Defendants' Motion, without scienter the SOX certifications cannot

support Plaintiff's Section 10 claims. *See Diabat v. Credit Suisse Group AG*, 23 Civ. 5874 (CM), 23 Civ. 6023 (CM), 23 Civ. 6039 (CM), 2024 WL 4252502 at *63 fn.19 (S.D.N.Y. Sept. 19, 2024).

### C.      The SAC Fails To Plead Loss Causation.

Plaintiff's loss causation theory fails because the alleged corrective disclosures did not reveal fraud. The August 10, 2023 Amended 2022 20-F and the September 25, 2023 Form 6-k provided additional cost detail while maintaining identical total revenues and costs. Plaintiff neglects to address that Xiao-I's actual financial performance was unchanged. (SAC ¶¶109-110.) This is presentation enhancement, not correction of fraud. "The disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *In re Initial Pub. Offering Sec. Litig.*, 358 F.Supp.2d 189, 210 (S.D.N.Y. 2004). Regarding Circular 37, Plaintiff points only to the SEC's comment letter and the Company's response as allegedly corrective. (Opp. at 33.) The SEC Letter requested clarification, not correction, and the Plaintiff concedes that the Company's response announced successful resolution of the warned-of risk. (Opp. at 33.) Finally, Plaintiff cannot isolate alleged fraud from other causes especially where Plaintiff hinges much of the SAC on the allegation that Xiao-I disclosed substantial doubt about its ability to continue on the same day that the Company filed its Form 6-K. (Opp. at 29, fn.18.)

## VI.     THE SAC FAILS TO PLEAD CONTROL PERSON LIABILITY.

Plaintiff's control person claims under Sections 20(a) and 15 fail because she has not adequately pled primary violations of Sections 10(b) or 11, respectively. Without a viable underlying claim, derivative control person liability cannot exist. Moreover, contrary to Plaintiff's contention, the fact that the Section 10 Individual Defendants signed SEC filings is insufficient to establish that they were "in some meaningful sense culpable participants in the fraud." *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 679 (S.D.N.Y. 1990).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Plaintiff's Second Amended Complaint in its entirety and with prejudice.


Dated: New York, New York
      October 28, 2025

Respectfully submitted,


 */s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio
Nicole Khalouian
**STINSON LLP**
140 Broadway, Suite 2330
New York, New York 10005
Phone: 646.883.7675
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Xiao-I Corporation, Hui Yuan, Wei Weng, Wenjing Chen, Xiaomei Wu, Jun Xu, Zhong Lin, and H. David Sherman*

 */s/ Andrew L. Van Houter*
Andrew L. Van Houter
Christian J. Clark
**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 43rd Floor
New York, NY 10036
(212) 248-3140
andrew.vanhouter@faegredrinker.com
christian.clark@faegredrinker.com

*Attorneys for Defendants AC Sunshine Securities LLC, SBI China Capital Financial Services Limited, Prime Number Capital LLC and Guotai Junan Securities (Hong Kong) Limited*

## CERTIFICATE OF COMPLIANCE

I, Richard J.L. Lomuscio, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c), that the foregoing Memorandum of Law was prepared using Microsoft Word and does not exceed 15 pages pursuant to Judge Woods's Order granting Defendants' leave to file a consolidated Motion. (ECF No. 85.)

Dated: New York, NY
       October 28, 2025

                                        */s/ Richard J.L. Lomuscio*

17